# BOSTON CITY CHARTER



Prepared and distributed by the Boston City Council
July 2007

# THE CHARTER OF THE CITY OF BOSTON

The Boston City Charter is not contained within a single document.  It is "a series of State statutes and not a single code."  <u>City Council of Boston v. Mayor of Boston</u>, 383 Mass. 716, 719 (1981).  It has also been referred to as "a patchwork of special acts whose application requires consideration of their evolution [and scrutiny of the legislative history]."  <u>City Council of Boston v. Mayor of Boston</u>, 24 Mass.App.Ct. 663, 664 (1987).  The modern charter is a collection of laws consisting of the surviving portions of the charter approved by the Massachusetts Great and General Court (the legislature) in 1909 (Acts of 1909, Chapter 486) as significantly amended with broad strokes in 1948 (Acts of 1948, Chapter 452) and 1951 (Acts of 1951, Chapter 376).

The modern charter has been further amended with finer strokes throughout the past century, and several of the most significant pieces of legislation include the following: Chapter 849 of the Acts of 1969 changed the fiscal year of Boston and all other municipalities to begin on July first; Chapter 190 of the Acts of 1982 ("Tregor Bill") made major changes to the financial operations of the city and to the budgetary powers of the Mayor and City Council (furthermore, major amendments to this Act of 1982 appear as Chapter 701 of the Acts of 1986); Chapter 605 of the Acts of 1982 increased the number of City Councillors from nine to thirteen and provided that four of the Councillors shall be elected at-large while nine of the Councillors shall be elected from equally populous districts; Chapter 108 of the Acts of 1991 replaced the elected School Committee with a Mayor-appointed board of seven members serving four-year terms; and Chapter 233 of the Acts of 1993 addressed vacancies in the office of District City Councillor.  The charter is also comprised of or affected by general laws affecting all municipalities, local options supplied by the General Court/Governor and approved by the municipal officers, and all home rule legislation/home rule petitions passed by the Mayor, the City Council, the General Court, and the Governor.

Practitioners and scholars should take care when using nomenclature associated with Boston's charter.  Although the charter is commonly referred to as a "Plan A" form of government, the City of Boston does <u>not</u> operate under the provisions of Plan A contained in General Laws Chapter 43.  Although they share the "strong mayor" designation, the City of Boston's form of government pre-dates and differs from the several plans in the General Laws, and this minor confusion has been an unfortunate by-product of the publication of plans of government in M.G.L..

The following pages do <u>not</u> contain every special law impacting the governance of the City of Boston.  Instead, they contain a selection of the most-often sought currently operative portions of the charter.  Generally, these selections relate to public spending, organization of city departments, general powers of the Mayor and City Council, and procedures relating to elections.  Furthermore, these pages endeavor to be true to the substance of the underlying laws, but they should <u>not</u> be considered to be a primary source of law.  Instead, they should be corroborated with the original citations and the language of the underlying Acts.

Several appendices support the contents of the selections, and a Table of Authorities listing more than the ingredients of these pages may prove useful to readers.  Two other works containing (and indexing) many of the various laws which are part of Boston's historical charter may be valuable to scholars: "Special Laws Relating to the City of Boston Enacted Prior to January 1, 1938" and "City of Boston Code (1975)."  Both of these books are out of print but are available in libraries.

--D. Paul Koch, Jr., Legislative Director
July 2007

# DEDICATION

This publication is dedicated to all of the people that have served, are serving, and will serve as Boston City Councillors.  The Councillors, past and present, have devoted substantial portions of their lives to the service of the residents of, workers in, and visitors to the City of Boston and its neighborhoods, and the future Councillors inevitably expect to vigilantly continue this tireless tradition.  The Councillors embody these laws, exercise these laws, supplement these laws, amend these laws, and bring these laws to life every day of their call to public service with their actions to continuously improve the growing and evolving community that is the City of Boston.

# ACKNOWLEDGMENTS

This collection of pages owes its existence to the countless hours of work of dedicated Legal Interns of the Boston City Council's summer programs.  Kelly M. Neumann (New England School of Law '04), Kristen R. Green (Suffolk University Law School '04), Steven Archibald (New England School of Law '04), Ian N. Ackerman (Boston University School of Law '06), Victoria E. Bembenista (Boston College Law School '06), Timothy J. Durken (Vanderbilt University Law School '06), Stefanie Marazzi (Boston University School of Law '07), Kristen J. Graves (New England School of Law '07), Ian Smith (Boston University School of Law '08), and Rebecca Hermanowicz (Boston University School of Law '08) plumbed the depths of their patience to pursue the minutiae of research, endure the endless scanning and re-formatting of documents, wrestle with uncountable schemes for organization of the raw material, and particularize the construction of a reader-friendly plain language interpretation of the Byzantine text. They indefatigably exercised their insight and sound judgment to generate this coherent document. Without their industriousness, determination, and attention to mind-numbing detail, this snapshot of the Boston City Charter would be considerably more confusing and infinitely less complete.  Wherever their lives and careers have taken them, I hope that they accept my thanks and the appreciation of all who read and/or reference this work.

--D. Paul Koch, Jr., Legislative Director
July 2007

# TABLE OF CONTENTS

The Charter of the City of Boston ................................................................................. 1

Dedication .......................................................................................................................... 2

Acknowledgments ............................................................................................................ 2

Table of Contents ............................................................................................................. 3

General Provisions ........................................................................................................... 4

Form of Government: Modified Plan A ........................................................................ 5

General Powers of Mayor and City Council ............................................................... 6

City Districts ................................................................................................................... 12

Procedures Relating to Elections ................................................................................. 12

Organization of City Departments .............................................................................. 19

The Finance Commission .............................................................................................. 22

Public Spending .............................................................................................................. 23

The City Clerk and The City Auditor ......................................................................... 25

Fiscal Responsibilities ................................................................................................... 26

Public Facilities Commission and Surplus Property ................................................ 28

Miscellaneous Provisions .............................................................................................. 30

The School Committee and Superintendent .............................................................. 32

Appendices ...................................................................................................................... 38

    Appendix A Ballot Questions -- 1909, 1948, 1996 ...................................................... 39

    Appendix B Statement of Candidacy ......................................................................... 44

    Appendix C Nomination Petition ................................................................................ 45

    Appendix D Form for Election Ballots ....................................................................... 48

    Appendix E Certificate of Appointment for Heads of Departments ..................... 49

    Appendix F Electoral Districts in the City of Boston CBC 2-9.2 ............................ 50

    Appendix G Map of Electoral Districts in the City of Boston CBC 2-9.2 ............. 51

    Appendix H Official Seal, Standard, and Flag of the City of Boston CBC 1-2 ..... 53

    Appendix I Plain Language Version of The Boston City Charter ........................... 54

    Appendix J Oath of Mayor/City Councillor ............................................................. 76

    Appendix K Calendar for Election Cycle ................................................................... 77

Table of Authorities ....................................................................................................... 78

# GENERAL PROVISIONS

SECTION 1.     *Definitions.*   The following words as used in this act shall, unless the context otherwise requires, have the following meanings:

"City", the city of Boston.

"Board of election commissioners", the board of election commissioners of the city of Boston.

"Regular municipal election", the biennial election held for electing officers of the city as provided in this act.

"Preliminary election", the election held for the purpose of nominating candidates whose names shall appear on the official ballot at a municipal election.

"Proportional representation", any proportional representation method of election authorized by chapter fifty-four A of the General Laws.

"Present form of city government", the form of city government in effect in the city when it first adopts one of the three optional plans of government provided in this act.

[Acts of 1948, c. 452, s. 1]


SECTION 2.     *Optional Plans of Government.*   The city, in the manner hereinafter prescribed, may adopt from time to time at any regular municipal election any one of the optional plans of government provided in this act and shall thereafter be governed by the provisions of the plan so adopted until said provisions are superseded by the adoption of another plan under this act.   The inhabitants of the city shall continue to be a municipal corporation under the name existing at the time of the adoption of any plan provided in this act, and shall have, exercise and enjoy all the rights, immunities, powers and privileges, and be subject to all the duties, liabilities and obligations provided for in this act, or otherwise pertaining to or incumbent upon said city as a municipal corporation.

None of the legislative powers of the city shall be abridged or impaired by this act; but all such legislative powers shall be possessed and exercised by such body as shall be the legislative body of the city under this act.

Whenever one of the plans provided for in this act shall be adopted, all ordinances, resolutions, orders or other regulations of the city or of any authorized body or official thereof, existing at the time when the city adopts such plan, and not inconsistent with the provisions of the plan adopted, shall continue in full force and effect until repealed, modified, suspended or superseded, and all acts and parts of acts relating to the city, so far as inconsistent with the plan adopted shall be inoperative.   [Acts of 1948, c. 452, s. 2]


SECTION 3.     *Selecting a New Plan of Government.*   A petition, as hereinafter described, addressed to the board of election commissioners and signed by qualified voters of the city to a number equal at least to ten per cent of the registered voters at the state election next preceding the filing of the petition may be filed with the board of election commissioners not later than five o'clock of the afternoon of the first Wednesday in July next preceding the regular municipal election at which the

question proposed by the petition is to be submitted to a vote of the voters, and such petition shall set forth any one of the following questions: [*See* Appendix A].  [Acts of 1948, c. 452, s. 3]

SECTION 4.        Reserved.

SECTION 5.        Reserved.

SECTION 6.        *Time Requirement for a New Plan.*  Whenever one of the plans provided in this act shall be adopted, it shall continue in force for a period of at least four years from the beginning of the terms of office of the officials elected thereunder; and no petition proposing another of said plans shall be filed until after three years from the beginning of said terms of office.  [Acts of 1948, c. 452, s. 6]

SECTION 7.        *Other Requirements for a New Plan.*  The mayor, the city council, the board of election commissioners and the city clerk in office when any plan set forth in this act has been adopted, or is proposed for adoption, shall comply with all the requirements of this act relating to such proposed adoption and to the election of the officers specified in said plan, in order that all things necessary for the nomination and election of the officers first to be elected under the provisions of this act and of the plan so adopted may be done.  [Acts of 1948, c. 452, s. 7]

SECTION 8.        *Terms of Office.*  Whenever one of the plans provided in this act shall be adopted, the terms of office of all elective officers in office, and the position of city manager if there be one, shall terminate at ten o'clock in the forenoon on the first Monday of January following the first municipal election held in accordance with the provisions of the plan so adopted.  [Acts of 1948, c. 452, s. 8]

SECTION 9.        *Fiscal and Municipal Year.*  The fiscal year of the city shall begin on July first and shall end on June thirtieth next following; and the municipal year thereof shall begin on the first Monday in January and shall continue until the first Monday of the January next following.  [Acts of 1948, c. 452, s. 9 as amended by Acts of 1969, c. 849]

# FORM OF GOVERNMENT: MODIFIED PLAN A

## Government by Mayor, City Council, and School Committee, Elected at-large with Preliminary Elections

*Practitioners and scholars should take care when using nomenclature associated with Boston's charter.  Although the charter is commonly referred to as a "Plan A" form of government, the City of Boston does <u>not</u> operate under the provisions of Plan A contained in General Laws Chapter 43; the City of Boston's form of government pre-dates the several plans in the General Laws, and this confusion has been an unfortunate by-product of the publication of plans of government in M.G.L..*

SECTION 10.      *Plan A.*  The form of government provided in [these] sections ... shall constitute and be known as Plan A under this act.  [Acts of 1948, c. 452, s. 10 as amended by Acts of 1951, c. 376, s. 1.10]

SECTION 11.     *Three Branches of City Government.*  There shall be in the city a mayor who shall be the chief executive officer of the city, a city council of nine members which shall be the legislative body of the city, and a school committee ... which shall have the powers and duties conferred and imposed by law.  [Acts of 1951, c. 376, s. 1.11]  [Without amending this specific section, the number of city council members was increased to thirteen (nine district councillors and four at-large councillors) by Acts of 1982, c. 605, s. 1.  The school committee was reorganized by Acts of 1991, c. 108.]

SECTION 11A.     *Oaths of Office.*  Every person elected mayor and every person elected or chosen city councillor or school committeemember shall, before entering upon the duties of his office, take, and subscribe in a book to be kept by the city clerk for the purpose, the oath of allegiance and oath of office prescribed in the constitution of this commonwealth and an oath to support the constitution of the United States.  Such oaths shall be administered, to a person elected mayor, by a justice of the supreme judicial court, a judge of a court of record commissioned to hold such court within the city or a justice of the peace, and to a person elected or chosen city councillor or school committeemember, by the mayor or any of the persons authorized to administer said oaths to a person elected mayor.  [Acts of 1951, c. 376, s. 1.11A as amended by Acts of 1983, c. 342, s. 1]  [*See* Appendix J]

SECTION 11B.     *Provisions for an Acting Mayor.*  Whenever the mayor is absent from the city or unable from any cause to perform his duties, and whenever there is a vacancy in the office of mayor from any cause, the president of the city council, while such absence, inability or vacancy continues, shall perform the duties of mayor.  If there is no president of the city council or if he also is absent from the city or unable from any cause to perform such duties, they shall be performed, until there is a mayor or president of the city council or the mayor or president of the city council returns or is able to attend to said duties, by such member of the city council as that body by a vote which, for the purposes of section seventeen D, shall be deemed to be a vote electing an official, may elect, and until such election by the city clerk.  The person upon whom such duties shall devolve shall be called "acting mayor" and he shall possess the powers of mayor only in matters not admitting of delay, but shall have no power to make permanent appointments.  [Acts of 1951, c. 376, s. 1.11B]

# GENERAL POWERS OF MAYOR AND CITY COUNCIL

SECTION 12.     *Term of Office for Mayor.*  [A]t every second regular municipal election after a regular municipal election at which a mayor is elected, a mayor shall be elected at-large to hold office for the four municipal years following the municipal year in which he is elected and thereafter until his successor is elected and qualified.  [Acts of 1948, c. 452, s. 12 as amended by Acts of 1951, c. 376 s. 1.12]

SECTION 13.     *Vacancy in the Office of Mayor Requiring Special Municipal Election.*  If a vacancy occurs in the office of mayor within sixteen weeks prior to a regular municipal election other than a regular municipal election at which a mayor is elected, or within sixteen months after a regular municipal election, or if there is a failure to elect a mayor or a person elected mayor resigns or dies before taking office, the city council shall forthwith adopt an order calling a special municipal election for the purpose of electing at-large a mayor for the unexpired term, which election shall be held on such Tuesday, not less than one hundred and twenty days nor more than one hundred and forty days after the adoption of such order, as the city council shall in such order fix.  If a vacancy occurs in the office of

mayor at any other time, a mayor shall be elected at-large at the next regular municipal election to hold office for a term expiring at ten o'clock in the forenoon on the first Monday of the fifth January following his election.  A person elected mayor under either of the foregoing provisions shall take and subscribe the oaths required by section eleven A as soon as conveniently may be after the issuance to him of his certificate of election.  Such person shall hold office from the time of taking and subscribing such oaths until the expiration of his term and thereafter until his successor is elected and qualified.  The provisions of this section shall not apply if a vacancy occurs in the office of mayor in the period beginning on the date of a regular municipal election at which a new mayor is elected and ending at the time he takes office.  [Acts of 1948, c. 42, s. 13 as amended by Acts of 1951, c. 376, s. 1.13 as further amended by Acts of 1996, c. 328, s. 1]

SECTION 13A.   *Salary of the Mayor.*   The mayor shall be paid an annual salary ... as may from time to time be fixed by ordinance.  The mayor shall not receive for his services any other compensation or emolument whatever; nor shall he hold any other office of emolument under the city government.  [Acts of 1951, c. 376, s. 1.13A -- *See* CBC 2-7.11 and M.G.L. c. 39, s. 6A[1]]

SECTION 14.   *Terms of Office for City Councillors.*   There shall be in the city of Boston, a city council to consist of nine members elected from equally populous districts and four members elected at-large.  [Acts of 1982, c. 605, s. 1]   [Each councillor shall] hold office for the two municipal years following the municipal year in which he is elected.  [Acts of 1951, c. 376, s. 1.14]

SECTION 15.   *Vacancy in the Office of City Councillor-at-large.*   If at any time a vacancy occurs in the office of city councillor-at-large for any cause, the city clerk shall within twenty-one calendar days notify the city council thereof; and within fifteen days after such notification, the remaining city councillors shall choose, as city councillor-at-large for the unexpired term, whichever of the defeated candidates for the office of city councillor-at-large at the regular municipal election at which city councillors-at-large were elected for the term in which the vacancy occurs, who are eligible and willing to serve, received the highest number of votes at such election, or, if there is no such defeated candidate eligible and willing to serve, a registered voter of the city duly qualified to vote for a candidate for the office of city councillor-at-large.  If the remaining city councillors fail to choose as hereinbefore provided within fifteen days after the notification of the city council by the city clerk, the choice shall be made by the mayor, or, if there is no mayor, by the president of the city council.  [Acts of 1948, c. 452, s. 15 as amended by Acts of 1952 c. 190 as amended by Acts of 1993, c.233, s.1.15 as amended by Acts of 2004, c. 476, s. 2]

---

[1] M.G.L. c. 39, s. 6A Municipal Salaries; Increases and Decreases; Procedure.  Notwithstanding the provisions of any city charter to the contrary, the mayor and the members of the city council, or other legislative body of a city, shall receive for their services such salary as the city council or other legislative body of a city shall by ordinance determine, and shall receive no other compensation from such city, except that a member of a city council of said city may receive a salary for serving as an instructor in a municipal college of such city, except that a member of a city or town council in a municipality with a city or town council form of government may receive a salary for serving as a municipal employee of said municipality in lieu of receiving compensation for serving as a member of said council and except that, in accordance with the provision of the seventh paragraph of section twenty of chapter two hundred and sixty-eight A, any elected municipal official, other than a mayor, may choose to receive either the compensation for such service or compensation for service as an employee of a housing authority in such municipality, but may not receive both.  No increase or reduction in such salaries shall take effect during the year in which such increase or reduction is voted, and no change in such ordinance shall be made between the election of a new council or other legislative body and the qualification of the new council or other legislative body.  Such ordinance shall be subject to the provisions of sections forty-two, forty-three and forty-four of chapter forty-three.

SECTION 15A.   *Vacancy in the Office of District City Councillor.*   If a vacancy occurs in the office of district city councillor more than one hundred and eighty days prior to a regular municipal election, the city clerk shall forthwith notify the city council thereof; and at the first city council meeting after the notice has been read, the city council shall forthwith adopt an order calling a special preliminary election for the purpose of nominating a district city councillor for the unexpired term, which election shall be held on a Tuesday, not less than sixty-two nor more than seventy-six days after the adoption of such order, as the city council shall in such order fix.  The two candidates for district city councillor receiving the greatest number of votes at the special preliminary election shall be deemed nominated and their names shall be placed on the ballot for the special municipal election, which election shall be held twenty-eight days following the special preliminary election.  [Acts of 1948, c. 452, s. 15 as amended by Acts of 1952, c. 190 as amended by Acts of 1993, c. 233, s. 1.15A]

SECTION 15B.   *Special Preliminary Elections.*   A call for a special preliminary election as provided in section fifteen A shall be in effect upon vote of the city council and no such vote shall be presented to the mayor for his approval notwithstanding the provisions of section seventeen D.  All such special elections as provided in section fifteen A shall be governed by the provisions of this act except: (a) the subscription required by section [twenty-four] shall be done within ten days of the call, (b) no nomination petition shall be issued by the election commission before the seventh day following the call, (c) the nomination petition shall be signed, in the case of a district city councillor in a special preliminary election by the same number of signatures as provided in section [twenty-five] for a district city councillor candidate in a regular preliminary election, (d) all nomination petitions shall be filed with the election commission before five o'clock in the afternoon on the fifteenth day following the adoption of the order calling a special preliminary election, (e) no candidate for district city councillor shall withdraw his name from nomination after the last day to file objections to nomination petitions, (f) the election commission shall complete the certification required by section [twenty-six] within two weeks of the last day of the refiling of nomination petitions, (g) a nomination petition which has been filed and is in apparent conformity with the law shall be valid unless written objection thereto is made by a registered voter of the city.  Such objection shall be filed with the election commission within three days excluding Saturdays, Sundays and legal holidays following the certification of signatures, (h) no candidate shall be substituted as provided for in section [twenty-six B], and (i) notwithstanding the provisions of any General Law to the contrary, a petition for recount may be filed with the election commission before five o'clock in the afternoon on the third day following the certification of a special preliminary election for nominating a district city councillor.  [Acts of 1948, c. 452, s. 15 as amended by Acts of 1952, c. 190 as amended by Acts of 1993, c. 233, s. 1.15B]

SECTION 16.   *Salary of the City Councillors.*   Every city councillor shall be paid an annual salary ... and no other sum shall be paid from the city treasury for or on account of any personal expenses directly or indirectly incurred by or in behalf of any city councillor.  [Acts of 1948, c. 452, s.15 as amended by Acts of 1951, c. 376, s. 1.16 -- *See* CBC 2-8.1 and M.G.L. c. 39, s. 6A[2]]

SECTION 17.   *Election of City Council President.*   The city council shall be the judge of the election and qualifications of its members; shall elect from its members by vote of a majority of all the members a president who when present shall preside at the meetings thereof; and shall from time to time

---

[2] The text of M.G.L. c. 39, s. 6A is provided in a previous footnote.

establish rules for its proceedings.  The member eldest in years shall preside until the president is chosen, and in case of the absence of the president, until a presiding officer is chosen.  [Acts of 1948, c. 452, s. 17 as amended by Acts of 1951, c. 376, s. 1.17]

SECTION 17A.   *Mayor May Summon City Council.*  The mayor may, whenever in his judgment the good of the city requires it, summon a meeting or meetings of the city council although said council stands adjourned to a more distant day, and shall cause suitable written notice of such meeting or meetings to be given to the city councillors.  [Acts of 1951, c. 376, s. 1.17A]

SECTION 17B.   *Creation of Offices by City Council.*  The city council may, subject to the approval of the mayor, from time to time establish such offices, other than that of clerk, as it may deem necessary for the conduct of its affairs and at such salaries as it may determine, and abolish such offices or alter such salaries; and without such approval may fill the offices thus established and remove the incumbents at pleasure.  The city clerk shall act as clerk of the city council.  [Acts of 1951, c. 376, s. 1.17B]

SECTION 17C.   *Voting Procedures for Elections by City Council.*  All elections by the city council under any provision of law, including the choosing of a city councillor under section fifteen, shall be made by a *viva voce* vote, each member who is present answering to his name when it is called by the clerk or other proper officer, and stating the name of the person for whom he votes, or declining to vote, as the case may be; and the clerk or other proper officer shall record every such vote.  No such election shall be valid unless it is made as aforesaid.  [Acts of 1951, c. 376, s. 1.17C]

SECTION 17D.   *Mayoral Approval of City Council Actions.*  Every order, ordinance, resolution and vote of the city council (except special municipal election orders adopted under section thirteen, votes relating to the internal affairs of said council, resolutions not affecting legal rights, votes electing officials, and votes confirming appointments by the mayor) shall be presented to the mayor for his approval.  If he approves it, he shall sign it; and thereupon it shall be in force.  If he disapproves it, he shall, by filing it with the city clerk with his objections thereto in writing, return it to the city council which shall enter the objections at-large on its records.  Every order, ordinance, resolution and vote authorizing a loan or appropriating money or accepting a statute involving the expenditure of money, which is so returned to the city council, shall be void, and no further action shall be taken thereon; but the city council shall proceed forthwith to reconsider every other order, ordinance, resolution and vote so returned, and if, after such reconsideration, two thirds of all the city councillors vote to pass it notwithstanding the disapproval of the mayor, it shall then be in force; but no such vote shall be taken before the seventh day after the city council has entered the objections at-large on its records.  Every order, ordinance, resolution or vote required by this section to be presented to the mayor which, within fifteen days after such presentation, is neither signed by him nor filed with his written objections as hereinbefore provided, shall be in force on and after the sixteenth day following such presentation.

Every order, ordinance, resolution or vote required by this section to be presented to the mayor shall be approved as a whole or disapproved as a whole; except that, if the same authorizes a loan or appropriates money, the mayor may approve some of the items in whole or in part and disapprove other of the items in whole or in part; and such items or parts of items as he approves shall, upon his signing the same, be in force and such items or parts of items as he disapproves by filing with the city clerk his written objections thereto shall be void, and such items or parts of items as he neither signs nor so

disapproves within fifteen days after the order, ordinance, resolution or vote shall have been presented to him shall be in force on and after the sixteenth day following such presentation.  [Acts of 1951, c. 376, s. 1.17D]

SECTION 17E.  *Mayoral Recommendations via Ordinances and Loan Orders.*  The mayor from time to time may make to the city council in the form of an ordinance or loan order filed with the city clerk such recommendations as he may deem to be for the welfare of the city.  The city council shall consider each ordinance or loan order so presented and shall either adopt or reject the same within sixty days after the date when it is filed as aforesaid.  If such ordinance or loan order is not rejected within said sixty days, it shall be in force as if adopted by the city council unless previously withdrawn by the mayor.  Nothing herein shall prevent the mayor from again presenting an ordinance or loan order which has been rejected or withdrawn.  The city council may originate an ordinance or loan order and may reduce or reject any item in any loan and, subject to the approval of the mayor, may amend an ordinance.  All sales of land other than school lands, all appropriations for the purchase of land, and all loans voted by the city council shall require a vote of two thirds of all the city councillors and shall be passed only after two separate readings and by two separate votes, the second of said readings and votes to be had not less than fourteen days after the first, except that in the case of loan orders for temporary loans in anticipation of taxes the second of said readings and votes may be had not less than twenty-four hours after the first.  No amendment increasing the amount to be paid for the purchase of land, or the amount of loans, or altering the disposition of purchase money or of the proceeds of loans shall be made at the time of the second reading and vote.  If a petition signed by three city councillors requesting that action be taken forthwith upon a loan order presented by the mayor is filed in the office of the city clerk not earlier than fourteen days after the presentation of such loan order, action shall be taken by the yeas and nays on the question of the adoption of such loan order at the next meeting of the council, or, if one vote has already been taken thereon, at the next meeting after the expiration of the required interval after such vote; provided, that such action thereon has not sooner been taken or such loan order has not been withdrawn by the mayor.  [Acts of 1951, c.376, s.1.17E, amended by Acts of 1966, c. 642, s. 14]

SECTION 17F.  *Requests for Specific Information.*  The city council at any time may request from the mayor specific information on any municipal matter within its jurisdiction, and may request his presence to answer written questions relating thereto at a meeting to be held not earlier than one week from the date of the receipt of said questions, in which case the mayor shall personally, or through a head of a department or a member of a board, attend such meeting and publicly answer all such questions.  The person so attending shall not be obliged to answer questions relating to any other matter.  The mayor at any time may attend and address the city council in person or through the head of a department, or a member of a board, upon such subject as he may desire.  [Acts of 1951, c. 376, s. 1.17F]

SECTION 17G.  *Restrictions on the Making of Contracts.*  Except as otherwise provided in chapter four hundred and eighty-six of the acts of nineteen hundred and nine, neither the city council nor any member, committee, officer or employee thereof shall directly or indirectly on behalf of the city or of the county of Suffolk take part in the employment of labor, the making of contracts, or the purchase of materials, supplies or real estate; nor in the construction, alteration, or repair of any public works, buildings, or other property; nor in the care, custody, or management of the same; nor in the conduct of the executive or administrative business of the city or county; nor in the appointment or removal of any city or county employee; nor in the expenditure of public money except such as may be necessary for

the contingent and incidental expenses of the city council.  Any person violating any provision of this section shall be punished by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or both.  [Acts of 1951, c.376, s.1.17G]

No contract for lighting the public streets, parks, or alleys, or for the collection, removal, or disposal of refuse, extending over a period of more than one year from the date thereof, shall be valid without the approval of the mayor and the city council after a public hearing held by the city council, of which at least seven days' notice shall have been given in the City Record.  [Acts of 1909, c. 486, s. 6]

The provisions of this section shall not affect the powers or duties of the city council as the successor of the present board of aldermen relative to state or military aid and soldiers' relief.  [Acts of 1909, c. 486, s. 8]

It shall be unlawful for the mayor or for a member of the city council or for any officer or employee of the city or of the county of Suffolk or for a member of the finance commission directly or indirectly to make a contract with the city or with the county of Suffolk, or to receive any commission, discount, bonus, gift, contribution or reward from or any share in the profits of any person or corporation making or performing such contract, unless such mayor, member of the city council, officer, or employee or member of the finance commission immediately upon learning of the existence of such contract or that such contract is proposed, shall notify in writing the mayor, city council, and finance commission of such contract and of the nature of his interest in such contract and shall abstain from doing any official act on behalf of the city in reference thereto.  In case of such interest on the part of an officer whose duty it is to make such contract on behalf of the city, the contract may be made by any other officer of the city duly authorized thereto by the mayor, or if the mayor has such interest by the city clerk: *provided, however,* that when a contractor with the city or county is a corporation or voluntary association, the ownership of less than five per cent of the stock or shares actually issued shall not be considered as being an interest in the contract within the meaning of this act, and such ownership shall not affect the validity of the contract, unless the owner of such stock or shares is also an officer or agent of the corporation or association, or solicits or takes part in the making of the contract.  [Acts of 1909, c. 486, s. 8]

A violation of any provision of this section shall render the contract in respect to which such violation occurs voidable at the option of the city or county.  Any person violating the provisions of this section shall be punished by a fine of not more than one thousand dollars, or by imprisonment for not more than one year, or both.  [Acts of 1909, c. 486, s. 8]

SECTION 17H.   *Restrictions on City Employment.*  No city councillor nor any person elected city councillor shall, during the term for which he is elected or chosen, be appointed to, or hold, any office or position which is under the city government or the salary of which is payable out of the city treasury except the office of city councillor and any office held ex officio by virtue of being a member, or president, of the city council; provided, however, that nothing herein contained shall prevent a city councillor or any person elected city councillor from, during the term for which he is elected or chosen, being appointed by the governor, with or without the advice and consent of the council, to, and holding, any such office or position if before entering upon the duties of such office or position he resigns as city councillor or city councillor elect.  [Acts of 1951, c. 376, s. 1.17H]

SECTION 17I.    *Power to Summons and Subpoena.*  Witnesses may be summoned to attend and testify and to produce books and papers at a hearing before a city council, ... a licensing board or licensing authorities, as defined in section one of chapter one hundred and thirty-eight [of the General Laws], ... the police commissioner or election commissioners of Boston, ... as to matters within their authority; and such witnesses shall be summoned in the same manner, be paid the same fees and be subject to the same penalties for default, as witnesses in civil cases before the courts.  The presiding officer of such council ... or a member of any such committee, board or commission, or any such commissioner, may administer oaths to witnesses who appear before such council, branch thereof, committee, board, commission or commissioner, respectively.  [General Laws c. 233, s. 8]

# CITY DISTRICTS

SECTION 18.    *District Boundaries.*  [T]he respective district lines shall be the same for the city council and the school committee.  Each such district shall be compact and shall contain, as nearly as may be, an equal number of inhabitants as determined by the most recent state decennial census, shall be composed of contiguous existing precincts, and shall be drawn with a view toward preserving the integrity of existing neighborhoods.  [Acts of 1982, c. 605, s. 3]  [The ordinance containing the definition and boundaries of the districts is found at CBC 2-9.2 and the text of that ordinance is included as Appendix F.  A map of the districts is included as Appendix G.]

Said districts shall continue in force until redrawn by the city council as provided herein.  The council shall redraw the districts for the purpose of city council and school committee representation as specified in this section on or before (a) ninety days from the date that the nineteen hundred and eighty-five state census, including census figures for the city of Boston, is properly certified by the state secretary; and (b) on or before August first, nineteen hundred and ninety-six and on or before said August first every subsequent tenth year.  [Acts of 1986, c. 343, s. 1]

SECTION 19.    *District Requirements.*  In the year nineteen hundred and eighty-five, and each subsequent year, the city of Boston shall not be required to make a new division of its territory into wards as required by section one of chapter fifty-four of the General Laws.  [Acts of 1982, c. 605, s. 3]

SECTION 20.    *Habitation Requirements for Representation.*  Every city councillor ... who is elected to represent an individual district shall have been an inhabitant of a place within the district for which he is chosen for at least one year immediately preceding his election, and he shall cease to represent such district when he shall cease to be an inhabitant thereof.  [Acts of 1982, c. 605, s. 6]

# PROCEDURES RELATING TO ELECTIONS

SECTION 21.    *Biennial Municipal Election.*  Beginning in the year nineteen hundred and twenty-five, the municipal election in said city shall take place biennially in every odd numbered year on the Tuesday after the first Monday in November.  [Acts of 1909, c. 486, s. 32, amended by Acts of 1914, c. 730, s. 1, amended by Acts of 1921, c. 288, s. 1, and further amended by Acts of 1924, c.479, s. 4]  [*See* Appendix K]

SECTION 22.     *Provisions for Different Types of Elections.*  Every municipal officer required by sections twelve, thirteen, [and] fourteen … to be elected at-large shall be elected at a biennial municipal election, or, in the case of a mayor for an unexpired term, at a special municipal election, after, in either case, nomination at a preliminary municipal election, except as otherwise provided in section [twenty-six C].  In sections [twenty-two] to [thirty-three], inclusive, the term "regular election" shall be construed to refer to the biennial municipal election or the special municipal election, as the case may be, and the term "preliminary election" to the preliminary municipal election held for the purpose of nominating candidates for election at such regular election.  Every preliminary election shall, unless dispensed with under said section [twenty-six C], be held on the sixth Tuesday preceding the regular election.  [Acts of 1948, c. 452, s. 53, amended by Acts of 1951, c. 376, s. 2.53]

SECTION 23.     *Petition for Nomination.*  Any person who is a registered voter of the city duly qualified to vote for a candidate for an elective municipal officer therein may be a candidate for nomination to such office, provided, that a petition for the nomination of such person is obtained, signed and filed as provided in sections [twenty-four], [twenty-four A], and [twenty-five], and signatures of petitioners thereon, to the number required by section [twenty-five], certified as provided in section [twenty-six] by the board of election commissioners, in sections [twenty-four] to [thirty-three], inclusive, called the election commission.  [Acts of 1948, c. 452, s. 54, amended by Acts of 1951, c. 376, s. 2.54]

SECTION 24.     *Statement of Candidacy.*  A nomination petition shall be issued only to a person subscribing after the twenty-third Tuesday, and before the nineteenth Tuesday at 5:00 P.M., preceding the preliminary election, in a book kept for the purpose by the election commission, a statement of candidacy in substantially the following form: [*See* Appendix B]  [Acts of 1948, c. 452, s. 55, amended by Acts of 1951, c. 376, s. 2.55, amended by Acts of 1983, c. 342, s. 3, and further amended by Acts of 2004, c.476, ss. 3, 4]

SECTION 24A.     *Format of Nomination Petition.*  A nomination petition shall be issued by the election commission not later than twelve o'clock noon on the second day (Saturdays, Sundays and legal holidays excluded) after the subscription of a statement of candidacy, except that no such petition shall be issued before the twenty-first Tuesday preceding the preliminary election nor after 5:00 P.M. on the nineteenth.  A nomination petition shall not relate to more than one candidate nor to more than one office.  A nomination petition may state the elective public offices which the candidate holds or has held under the government of the commonwealth, the county of Suffolk or the city of Boston or in congress as a representative or senator from the commonwealth; provided that such statement shall not exceed eight words and shall with respect to each such office, consist solely of the title, as hereinafter given, of such office, preceded, if the candidate is the then incumbent thereof, by the word "Present", otherwise, but the word "Former".

For the purposes of such statement, the titles of the elective public offices which may be stated shall be deemed to be as follows: city councillor-at-large, district city councillor, ... mayor, district attorney, sheriff, register of deeds, register of probate, county clerk of superior (criminal) court, county clerk of superior (civil) court, county clerk of supreme judicial court, state representative, state senator, governor's councillor, attorney general, state auditor, state treasurer, state secretary, lieutenant governor, governor, congressman, and United States senator.

If the candidate is a veteran as defined in section twenty-one of chapter thirty-one of the General Laws, his nomination petition may contain the word "Veteran", which, in the case of a candidate holding or having held elective public office as aforesaid, shall, for the purposes of this section and sections [twenty-four], [twenty-seven] and [thirty-one], be counted as part of the statement concerning the elective public offices held by him, and, in the case of a candidate who does not hold and has never held elective public office as aforesaid, shall, for the purposes of said sections, be deemed to be a statement concerning the elective public offices held by him.

A nomination petition may consist of one or more sheets; but each sheet shall be in substantially the following form: [*See* Appendix C]. Every nomination petition sheet shall, before issuance, be prepared by the election commission by printing or inserting thereon the matter required by the first two paragraphs of the foregoing form. Not more than three hundred nomination petition sheets shall be issued to any candidate for nomination to the office of mayor under Plan A and not more than one hundred and fifty such sheets shall be issued to any candidate for nomination to the office of city councillor-at-large ... . Not more than twenty nomination sheets shall be issued to any candidate for nomination to the office of district city councillor ... . No nomination petition sheet shall be received or be valid unless prepared and issued by the election commission; nor shall any such sheet be received to be valid unless the written acceptance of the candidate thereby nominated is endorsed thereon, anything in section three A of chapter fifty of the General Laws to the contrary notwithstanding. [Acts of 1948, c. 452, s. 55A, amended by Acts of 1951, c. 376, s. 2.55A, amended by Acts of 1983, c. 342, s. 4, and further amended by Acts of 2004, c. 476, ss. 5, 6]

SECTION 25.     *Signature Requirements for Nomination Papers.*  The city council shall adopt an ordinance providing for signature requirements for nomination papers for candidates for city council or school committee but in no event shall these requirements exceed two percent of the vote cast in the preceding mayoral election in the respective district.  [Acts of 1982, c. 605, s. 3]  [The ordinance containing the signature requirements is found at CBC 2-9.1[3].]

The nomination petition shall be signed, in the case of a candidate for mayor, by at least three thousand registered voters of the city qualified to vote for such candidate; in the case of a candidate for city councillor-at-large ... by at least five hundred registered voters; and in the case of a candidate for district city councillor, ... by at least the number of voters residing in the district as shall be set in ordinance by the city council and mayor, in accordance with the last paragraph of section three of chapter six hundred and five of the acts of nineteen hundred and eighty-two.

Every voter signing a nomination petition shall sign in person, with his name as registered, and shall state his residence on January first preceding, or his residence when registered if subsequent thereto, and the place where he is then living, with the street and number, if any; but any voter who is prevented by physical disability from writing may authorize some person to write his name and residence in his

---

[3] CBC 2-9.1 Signature Requirements for Candidates for District Elective Positions in Municipal Elections.  Nomination petitions as provided for in St. 1948, c. 452, s. 55A, as inserted by St. 1951, c. 376, s. 2, shall be signed in the case of candidates for City Councillor elected from a District, and School Committee member elected from a District, by at least two hundred (200) registered voters of the City, qualified by their residence and otherwise, to vote for such candidate; provided however, if in any district, two hundred (200) exceeds two (2%) percent of the vote cast for Mayor in the preceding mayoral election, then the petition shall be required to contain signatures in a number equal to two (2%) percent of said vote cast.  (Ord. 1983 c. 5)

presence.  No voter may sign as a petitioner more than one nomination petition for the office of mayor or district city councillor ... nor more than four nomination petitions of the office of city councillor-at-large ... .  If the name of any voter appears as petitioner on more nomination petitions for an office than prescribed in this section, his name shall, in determining the number of petitioners, be counted, in the case of the office of mayor, district city councillor ... only on the nomination petition sheet bearing his name first filed with the election commission, and in the case of the office of city councillor-at-large ... only on the four nomination petition sheets bearing his name first filed with the commission.  If the name of any voter appears as petitioner on the same nomination petition more than once, it shall be deemed to appear but once.  The signature of any petitioner which is not certified by the circulator of the sheet as provided in the form set forth in section fifty-five A shall not be counted in determining the number of petitioners.

The separate sheets of a nomination petition may be filed all at one time or in lots of one or more from time to time, but shall all be filed with the election commission at or before five o'clock in the afternoon on the eighteenth Tuesday preceding the preliminary election.  Every nomination petition sheet shall be filed by a responsible person, who shall sign such sheet and, if he is other than the candidate, add to his signature his place of residence, giving street and number, if any; and the election commission shall require satisfactory identification of such person.

The names of candidates appearing on nomination petitions shall, when filed, be a matter of public record but no nomination petition shall be open to public inspection until the signatures on all nomination petitions for the same office have been certified.  [Acts of 1948, c. 452, s. 56, amended by Acts of 1951, c. 376, s. 2.56, amended by Acts of 1983, c. 342, s. 5, and further amended by Acts of 2004, c. 476, s. 7]

SECTION 26.    *Certification of Signatures.*  Upon the filing of each nomination petition sheet the election commission shall check each name to be certified by it on such sheet and shall certify thereon the number of signatures so checked which are the names of registered voters of the city qualified to sign the same; provided, however, that said commission shall not certify, in connection with a single nomination petition, a greater number of names than required by section [twenty-five] with twenty per cent of such number added thereto.  Names not certified in the first instance shall not thereafter be certified on the same nomination petition.  All nomination petitions not containing names certified pursuant to this section, to the number required by said section [twenty-five], shall be invalid.  The election commission shall complete the certification required by this section at or before five o'clock in the afternoon on the thirteenth Tuesday preceding the preliminary election. [Acts of 1948, c. 452, s. 57, amended by Acts of 1951, c. 376, s. 2.57, amended by Acts of 1983, c. 342, s. 6, and further amended by Acts of 2004, c. 476, s. 8]

SECTION 26A.    *Objections to the Validity of a Nomination Petition.*  A nomination petition which has been filed and is in apparent conformity with law shall be valid unless written objection thereto is made by a registered voter of the city.  Such objection shall be filed with the election commission at or before five o'clock in the afternoon of the twelfth Tuesday preceding the preliminary election.  Objections filed with the election commission shall forthwith be transmitted by it to the Boston ballot law commission.  Certification pursuant to [section twenty-six] shall not preclude a voter from filing

objections to the validity of a nomination petition.  [Acts of 1948, c. 452, s. 57A, amended by Acts of 1951, c. 376, s. 2.57A, and further amended by Acts of 2004, c. 476, s. 9]

SECTION 26B.   *Withdrawing or Substituting a Name for Nomination.*   Any candidate may withdraw his name from nomination by a request signed and duly acknowledged by him; provided, however, that all withdrawals shall be filed with the election commission at or before five o'clock in the afternoon on the twelfth Tuesday preceding the preliminary election.  If a candidate so withdraws his name from nomination before five o'clock in the afternoon of the twelfth Tuesday preceding the preliminary election, or is found to be ineligible or dies, the vacancy may be filled by a committee of not less than five persons or a majority thereof, if such committee be named and so authorized in the nomination petition; provided, however, that all certificates of substitution, except any certificate of substitution for a deceased candidate for mayor under Plan A, shall be filed with the election commission at or before five o'clock in the afternoon on the day following the twelfth Tuesday.

The certificate of substitution for a deceased candidate for mayor under Plan A shall be filed with the election commission (a) at or before five o'clock in the afternoon on the first Tuesday preceding the preliminary election if he dies on or before the second Friday preceding the preliminary election (b) at or before five o'clock in the afternoon on the first Friday following the preliminary election if he dies after the second Friday preceding such election and before the closing of the polls at such election (c) at or before five o'clock in the afternoon on the Tuesday preceding the regular election if he dies after the closing of the polls at the preliminary election and on or before the second Friday preceding the regular election, and (d) at or before five o'clock in the afternoon on the first Friday following the regular election if he dies after the second Friday preceding such election and before the closing of the polls at such election; provided, however, that no certificate of substitution for such a deceased candidate shall be filed after the closing of the polls at the preliminary election unless such a candidate, if living, would be deemed under either section [twenty-six C] or [thirty] to have been nominated for the office of mayor under Plan A.

If a certificate of substitution for a deceased candidate for mayor under Plan A is filed at or before five o'clock in the afternoon on the first Tuesday preceding the preliminary election, the ballots for use at such election shall be printed with the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased; and the voting machine ballot labels for use at such election, if not previously printed, shall be printed with the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased; and the voting machine ballot labels for use at such election, if not previously printed, shall be printed with the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased, and, if previously printed shall have a slip containing the name, residence and ward of the substitute pasted over the name, residence and ward of the deceased.  If such a certificate is filed after five o'clock in the afternoon on the first Tuesday preceding the preliminary election, all ballots and voting machine ballot labels for use as such election shall bear the name, residence and ward of the deceased but shall be deemed as a matter of law to bear the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased, and a vote for the deceased at such election shall be counted as a vote for the substitute.  If such a certificate is filed at or before five o'clock in the afternoon on the first Tuesday preceding the regular election, the ballots for use at such election other than absent voting ballots shall be printed with the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased; and the absent voting ballots for use at such election, if not previously printed, shall be printed

with the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased and, if previously printed, shall be deemed as a matter of law to bear the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased so that a vote thereon for the deceased shall be counted as a vote for the substitute; and the voting machine ballot labels for use at such election, if not previously printed, shall be printed with the name, residence and ward of the substitute in the place of the name, residence and ward of the deceased, and, if previously printed, shall have a slip containing the name, residence and ward of the substitute pasted over the name, residence and ward of the deceased.  If a candidate for mayor under Plan A in whose nomination petition a committee of not less than five persons or a majority thereof is authorized to fill a vacancy dies after the second Friday preceding the regular election and a certificate of substitution is not filed at or before five o'clock in the afternoon on the first Tuesday preceding such election, so far, but only so far, as it is for the purpose of electing a person for the office of mayor shall be postponed for four weeks and no vote cast for any candidate for mayor at the originally scheduled election shall be counted.

Every certificate of substitution shall state: (1) the name of the substitute, (2) his residence, with street and number, if any, and ward, (3) the office for which he is to be a candidate, (4) the name of the original candidate, (5) the fact of his death, withdrawal or ineligibility, and (6) the proceedings had for making the substitution.  The chairman and secretary of the committee shall sign and make oath to the truth of the certificate; and it shall be accompanied by the written acceptance of the candidate substituted.  A certificate of substitution shall be open to objection in the same manner, so far as is practicable, as a nomination petition.  [Acts of 1948, c. 452, s. 57B, amended by Acts of 1951, c. 376, s. 2.57B, and further amended by Acts of 2004, c. 476, ss. 10,11,12]

SECTION 26C.  *Public Posting of Candidates for Nomination.*  On the first day, other than a legal holiday or Saturday or Sunday, following the expiration of the time for filing withdrawals and the final disposition of any objections filed, the election commission shall post in a conspicuous place in city hall the names, residences and districts of the candidates for nomination for mayor and for city councillor-at-large ... who have duly qualified as such candidates, as they are to appear on the official ballots to be used in the preliminary election or special preliminary election for filling an unexpired term of mayor, except to the order of the names.  The election commission shall also post in city hall the names, addresses and districts of all candidates for nomination as district city councillors, ... the lists grouped by numerical identifying district and showing names of candidates duly qualified to appear on the official ballots to be used at the preliminary election to fill a district vacancy.  In at least one place in a public building in each of the districts the election commission shall cause to be posted the names and addresses of all candidates for district office in the respective district office in the respective district and the names, addresses and districts of at-large candidates.  If there are so posted the names of not more than two candidates for the office of mayor or district city councillor, ... the candidates whose names are so posted shall be deemed to have been nominated for said office and the preliminary election for the purpose of nominating candidates thereof shall be dispensed with; if there are posted the names of not more than eight candidates for the office of city councillor-at-large, ... the candidates whose names are so posted shall be deemed to have been nominated for said office, and the preliminary election to nominate candidates therefor shall be dispensed with.  [Acts of 1948, c. 452, s. 57C, amended by Acts of 1951, c. 376, s. 2.57C, and further amended by Acts of 1983, c. 342, s. 7]

SECTION 27.  *Printing of Election Ballots.*  On the day of the posting provided for by section [twenty-six C], or as soon thereafter as conveniently may be, the election commission shall draw by lot

the position of the candidates on the ballot.  Each candidate shall have an opportunity to be present at such drawing in person or by one representative.  As soon as conveniently may be after such drawing, the election commission shall cause the ballots to be printed.  Said ballots shall, in addition to the directions and numbers provided for by section [twenty-eight], contain, in the order drawn by the election commission, the names posted as aforesaid (except those of candidates deemed under section [twenty-six C] to have been nominated), and no others, with a designation of residence and district and the title and term of the office for which the person named is a candidate, and the statement, if any, contained in his nomination petition concerning the elective public officers held by him.  Said ballots shall be official and no others shall be used at the preliminary election.  Said ballots shall be headed as follows: [*See* Appendix D].  [Acts of 1948, c. 452, s. 58, amended by Acts of 1951, c.376, s. 2.58, and further amended by Acts of 1983, c. 342, s. 8]

SECTION 28.     *Drawing of Names for Position on Ballot.*  At every preliminary election, and every regular election under Plan A, each voter shall be entitled to vote for not more than one candidate for the office of mayor, district city councillor ... and not more than four candidates for the office of city councillor-at-large ... .  On the ballots and voting machine ballot labels for use at each of said elections, there shall, as a direction to the voter, be printed in capital letters, near the title of each office to be voted for, the words "VOTE FOR UP TO (*here insert in words the number of candidates specified in this section with respect to such office).*"  The election commission, when drawing under section [twenty-seven] the position on the ballot of the candidates for nomination at every preliminary election, shall draw the positions of all candidates for mayor, if any are to be drawn, before drawing the position of any candidate for city councillor ... and shall draw the positions of all candidates for city councillor, if any are to be drawn ... .  The election commission immediately prior to drawing positions for mayor, if such office is to be contested, shall announce and deposit in alphabetical order in the receptacle from which names are to be drawn cards bearing the names and addresses of candidates for nomination or for election for the office.  Names then drawn shall determine the order of appearance on the ballot.  After the drawing for mayor has been completed, the election commission shall announce and deposit in alphabetical order in the receptacle from which names are to be drawn, cards bearing the names and addresses of all candidates for election to the city council, whether for at-large or district seats.  Cards for candidates for city councillor-at-large shall have no other marking; provided, however, that each card for a candidate for district city councillor shall bear the number of the district in which the candidate is running.  After all cards have been deposited the election commission shall proceed to draw names, the order of drawing to determine the sequence each name will have on its respective at-large or district ballot.  [Acts of 1948, c. 452, s. 59, amended by Acts of 1951, c. 376, s. 2.59, amended by Acts of 1983, c. 342, s. 9, and further amended by Acts of 2004, c. 476, s. 13]

SECTION 29.     *Counting of Ballots.*  The election officers shall, immediately upon the closing of the polls at preliminary elections, count the ballots and ascertain the number of votes cast in the several voting places for each candidate, and forthwith make return thereof upon the total vote sheets or, if voting machines are used, the general or precinct record sheets, as the case may be, to the election commission which shall forthwith canvass said returns and, subject to the provisions of the first sentence of section one hundred and thirty-seven of chapter fifty-four of the General Laws, determine and declare the result thereof, publish said result in one or more newspapers in the city, and post the same in a conspicuous place in the city hall.  [Acts of 1948, c. 452, s. 60, amended by Acts of 1951, c. 376, s. 2.60]

SECTION 30. *Votes Needed for Nomination.* The two persons receiving at a preliminary election under Plan A the highest number of votes for nomination for the office of the mayor [or] district city councillor ... shall be deemed to have been nominated for said office; and the eight persons receiving at such election under Plan A the highest number of votes for nomination for the office of city councillor-at-large ... shall be deemed to have been nominated for such office. If a preliminary election under Plan A or D results in a tie vote among candidates for nomination receiving the lowest number of votes, which, but for said tie vote, would entitle a person receiving the same to be deemed to have been nominated, all persons participating in said tie vote shall be deemed to have been nominated, although in consequence there be printed on the official ballot to be used at the regular election names to a number exceeding twice the number to be elected. [Acts of 1948, c. 452, s. 61, amended by Acts of 1951, c. 376, s. 2.61, and further amended by Acts of 1983, c.342, s. 10]

SECTION 31. *Printing of Names on Ballots.* The name of every person deemed under section [twenty-six C] or section [thirty] to have been nominated, together with his residence and district and the title and term of the office for which he is a candidate, and the statement, if any, contained in his nomination petition concerning the elective public offices held by him, shall, in addition to the directions provided for by section [twenty-eight], be printed on the official ballots to be used at the regular election; and said persons shall be the sole candidates whose names may be printed on such ballots. As soon as conveniently may be after the sixth Tuesday preceding every regular election, the election commission shall draw by lot the position of said names on said ballots; and said names shall be printed on such ballots in the order so drawn. Each candidate shall have an opportunity to be present at such drawing in person or by one representative. [Acts of 1948, c. 452, s. 62, amended by Acts of 1951, s. 376, s. 2.62, and further amended by Acts of 1983, c. 342, s. 11]

SECTION 32. *Ballots Must Be Free of References to Political Parties.* No ballot used at any preliminary or regular election shall have printed thereon any party or political designation or mark, and there shall not be appended to the name of any candidate any such party or political designation or mark or anything showing how he was nominated or indicating his views or opinions. [Acts of 1948, c. 452, s. 63, amended by Acts of 1951, s. 376, s. 2.63]

SECTION 33. *Blank Spaces for Write-in Votes.* On every ballot to be used at a preliminary or regular election, there shall be left, at the end of the list of candidates for each office, blank spaces equal to the number for which a voter may vote for such office, in which blank spaces the voter may insert the name of any person not printed on the ballot for whom he desires to vote for such office. [Acts of 1948, c. 452, s. 64, amended by Acts of 1951, c. 376, s. 2.64]

# ORGANIZATION OF CITY DEPARTMENTS

SECTION 34. *Organization of Departments and Agencies.* The city council with the approval of the mayor may from time to time make by-laws or ordinances for any or all of the following purposes: (a) to create a new department or agency; (b) to abolish, in whole or in part, any department or agency; (c) to reorganize, in whole or in part, any department or department head or any agency or agency head; (d) to confer or impose on any department or agency any power or duty of the city not appertaining at the time of the making of the by-law or ordinance to any department or agency; (e) to transfer any or all of the powers, duties and appropriations of any division of any department or agency to another division

of the same department or agency; (f) to transfer any or all of the powers, duties and appropriations of any department or division thereof or of any agency or division thereof either to another department or division thereof or to another agency or division thereof; and (g) to increase, reduce, establish or abolish the salary of any department or agency head.  Every department or agency head created by, or resulting from a reorganization effected by, a by-law or ordinance made under this section shall, unless ex officio, be appointed by the mayor without confirmation by the city council for a term expiring on the first Monday of the January following the next biennial municipal election at which a mayor is elected or, in the case of a person serving without compensation or of a person serving on the board of appeal, the board of examiners, the board of examiners of gasfitters or other like board, for such other term as the by-law or ordinance may prescribe.  Every person holding an office or position subject to the civil service laws and rules shall, if the office or position is abolished by a by-law or ordinance made under this section and the by-law or ordinance so provides, be reappointed without civil service examination or registration to a similar office or position with similar status in any new department or agency, or division of either, thereby created or in any department or agency, or division of either, not thereby abolished; and every such person shall upon such reappointment, retain all rights to retirement with pension that shall have accrued or would thereafter accrue to him; and his services shall be deemed to have been continuous to the same extent as if such abolition had not taken place.  As used in this section, the term "agency" shall be construed to mean any office in charge of a board or officer not subject to the direction of a department head.  Nothing in this section shall authorize any action in conflict with the civil service laws or rules except as expressly provided herein; nor shall any by-law or ordinance made under this section affect in any way the school committee or any board or officer of the school committee or school department, or the board of commissioners of school buildings or the superintendent of construction, or the board of trustees of the teachers' retirement fund or the board of trustees of the permanent school pension fund, or the Boston retirement board, or the city clerk, or the board of election commissioners, or the Boston traffic commission, or any board or officer appointed by the governor.  [Acts of 1909, c.486, s.5, amended by Acts of 1936, c. 152, s. 1, and further amended by Acts of 1953, c.473, s.1]

SECTION 35.     *Appointment of Heads of Departments.*  All heads of departments and members of municipal boards, including the board of street commissioners, as their present terms of office expire (but excluding the school committee and those officials by law appointed by the governor), shall be appointed by the mayor without confirmation by the city council.  They shall be recognized experts in such work as may devolve upon the incumbents of said offices, or persons specially fitted by education, training or experience to perform the same, and (except the election commissioners, who shall remain subject to the provisions of existing laws) shall be appointed without regard to party affiliation or to residence at the time of appointment except as hereinafter provided.  [Acts of 1909, c. 486, s. 9]

SECTION 36. *Certification of Appointments of Heads of Departments.*  In making such appointments the mayor shall sign a certificate in the following form: [*See* Appendix E].  The certificate shall be filed with the city clerk, who shall thereupon forward a certified copy to the civil service commission.  The commission shall immediately make a careful inquiry into the qualifications of the nominee under such rules as they may, with the consent of the governor and council, establish, and, if they conclude that he is a competent person with the requisite qualifications, they shall file with the city clerk a certificate signed by at least a majority of the commission that they have made a careful inquiry into the qualifications of the appointee, and that in their opinion he is a recognized expert, or that he is qualified by education, training or experience for said office, as the case may be, and that they approve the

appointment.  Upon the filing of this certificate the appointment shall become operative, subject however to all provisions of law or ordinance in regard to acceptance of office, oath of office, and the filing of bonds.  If the commission does not within thirty days after the receipt of such notice file said certificate with the city clerk the appointment shall be void.  [Acts of 1909, c. 486, s. 10]

SECTION 37.    *Expenses of Civil Service Commission.*    The civil service commission is authorized to incur in carrying out the foregoing provisions such reasonable expense as may be approved by the governor and council; the same to be paid by the commonwealth, which upon demand shall be reimbursed by the city of Boston.  [Acts of 1909, c. 486, s. 11]

SECTION 38.    *Vacancy of Heads of Departments.*    A vacancy in any office to which the provisions of section [thirty-five] of this act apply, shall be filled by the mayor under the provisions of said section and pending a permanent appointment he shall designate some other head of a department or member of a board to discharge the duties of the office temporarily.  [Acts of 1909, c. 486, s. 12]

SECTION 39.    *Terms of Office of Heads of Departments.*    Members of boards shall be appointed for the terms established by law or by ordinance.  Heads of departments shall be appointed for terms of four years beginning with the first of May of the year in which they are appointed and shall continue thereafter to hold office during the pleasure of the mayor.  [Acts of 1909, c. 486, s. 13; *see also* Acts of 1953, c. 473]

SECTION 40.    *Removal from Office of Heads of Departments.*    The mayor may remove any head of a department or member of a board (other than the election commissioners, who shall remain subject to the provisions of existing laws) by filing a written statement with the city clerk setting forth in detail the specific reasons for such removal, a copy of which shall be delivered or mailed to the person thus removed, who may make a reply in writing, which, if he desires, may be filed with the city clerk; but such reply shall not affect the action taken unless the mayor so determines.  The provisions of this section shall not apply to the school committee, the public facilities commission, or any official by law appointed by the governor.  [Acts of 1909, c. 486, s. 14, amended by Acts of 1966, c. 642, s. 11]

SECTION 41.    *Civil Service Laws not to Apply to Certain Appointments.*    The civil service laws shall not apply to the appointment of the mayor's secretaries, nor of the stenographers, clerks, telephone operators and messengers connected with his office, and the mayor may remove such appointees without a hearing and without making a statement of the cause for their removal.  [Acts of 1909, c. 486, s. 15]

SECTION 42.    *Expenditures Not to Exceed Appropriation.*    No official of said city, except in case of extreme emergency involving the health or safety of the people or their property, shall expend intentionally in any fiscal year any sum in excess of the appropriations duly made in accordance with law, nor involve the city in any contract for the future payment of money in excess of such appropriation, except as provided in section [17G] of this act.  Any official who violates the provisions of this section shall be personally liable to the city for any amounts expended intentionally in excess of an appropriation to the extent the city does not recover such amounts from the person to whom paid.  The trial court of the commonwealth or a single justice of the supreme judicial court shall have jurisdiction to adjudicate claims brought by the city hereunder and to order such equitable relief as the court may find appropriate to prevent further violations of this section.  Any official who shall violate

the provisions of this section shall be punished by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or both.  [Acts of 1909, c. 486, s. 16, amended by Acts of 1982, c. 190, s. 17]

SECTION 42A.   *Contracting without an Appropriation.*   Anything in section [forty-nine] or section [forty-two] to the contrary notwithstanding, city and county officers who are authorized to make expenditures, and the school committee, may, during any fiscal year, at the time of, or after, contracting for the performance or delivery during the remainder of such year of any work, services or supplies of a constantly recurrent nature, contract, without an appropriation, upon like or more favorable terms and conditions, for the performance or delivery of such work, services or supplies for the whole or any part of the first three months of the next fiscal year; provided, that in no event shall the average monthly liability incurred with respect to the next fiscal year exceed the average monthly liability for such work, services or supplies during the last nine months of the then current fiscal year.  [Acts of 1948, c. 452, s. 16A, amended by Acts of 1951, c. 182]

# THE FINANCE COMMISSION

SECTION 43.   *Appointment of a Finance Commission.*   Within sixty days after the passage of this act the governor with the advice and consent of the [governor's] council shall appoint a finance commission to consist of five persons, inhabitants of and qualified voters in the city of Boston, who shall have been such for at least three years prior to the date of their appointment, one for the term of five years, one for four years, one for three years, one for two years, and one for one year, and thereafter as the terms of office expire in each year one member for a term of five years.  Vacancies in the commission shall be filled for the unexpired term by the governor with the advice and consent of the council.  The members of said commission may be removed by the governor with the advice and consent of the council for such cause as he shall deem sufficient.  The chairman shall be designated by the governor.  His annual salary ... shall be paid in monthly installments by the city of Boston.  The other members shall serve without pay.  [Acts of 1909, c. 486, s. 17; *but see* Acts of 1964, c. 740, s. 3[4]]

SECTION 44.   *Duty to Investigate.*   It shall be the duty of the finance commission from time to time to investigate any and all matters relating to appropriations, loans, expenditures, accounts, and methods of administration affecting the city of Boston or the county of Suffolk, or any department thereof, that may appear to the commission to require investigation, and to report thereon from time to time to the mayor, the city council, the governor, or the general court.  The commission shall make an annual report in January of each year to the general court.  [Acts of 1909, c. 486, s. 18]

SECTION 45.   *Investigation of Pay Rolls, Bills, etc.*   Whenever any pay roll, bill, or other claim against the city is presented to the mayor, city auditor, or the city treasurer, he shall, if the same seems to him to be of doubtful validity, excessive in amount, or otherwise contrary to the city's interest, refer it to

---

[4] "Subject to section two of this act and except as required by the constitution of the commonwealth, so much of each provision of the General Laws and of any special law as requires the advice and consent of the council to any appointment in the executive department, or to the fixing of any salary, or other compensation for services rendered, in the executive department, or to the removal of any person holding office in the executive department, including without limitation, any person appointed prior to the effective date of this act, is hereby repealed."  [Acts of 1964, c. 740, s. 3]

the finance commission, which shall immediately investigate the facts and report thereon; and pending said report payment shall be withheld.  [Acts of 1909, c. 486, s. 19]

SECTION 46.    *Employment of Experts.*  The said commission is authorized to employ such experts, counsel, and other assistants, and to incur such other expenses as it may deem necessary, and the same shall be paid by said city upon requisition by the commission, not exceeding in the aggregate in any year the sum of twenty-five thousand dollars, or such additional sums as may be appropriated for the purpose by the city council, and approved by the mayor.  A sum sufficient to cover the salary of the chairman of the commission and the further sum of at least twenty-five thousand dollars to meet the expenses as aforesaid shall be appropriated each year by said city.  The commission shall have the same right to incur expenses in anticipation of its appropriation as if it were a regular department of said city. [Acts of 1909, c. 486, s. 20]

SECTION 47.    *Powers of the Finance Commission.*  For the purpose of enabling the said commission to perform the duties and carry out the objects herein contemplated, and to enable the mayor, the city council, the governor or the general court to receive the reports and findings of said commission as a basis for such laws, ordinances, or administrative orders as may be deemed met, the commission shall have all the powers and duties enumerated in chapter five hundred and sixty-two of the acts of the year nineteen hundred and eight[5] and therein conferred upon the commission designated in said act; but counsel for any witness at any public hearing may ask him any pertinent question and may offer pertinent evidence through other witnesses subject to cross-examination by the commission and its counsel.  [Acts of 1909, c. 486, s. 21]

# PUBLIC SPENDING

SECTION 48.    *Creation and Approval of the Municipal Budget.*  All appropriations, excepting those for school purposes, to be met from taxes, revenue, or any source other than loans, shall originate with the mayor.  The mayor, not later than the second Wednesday in April of each year, shall submit to the city council the annual budget of the current expenses of the city and county for the forthcoming fiscal year, and may submit thereafter such supplementary appropriation orders as he may deem necessary.  The city council may reduce or reject any item but, except upon the recommendation of the mayor, shall not increase any item in, nor the total of, a budget, nor add any item thereto, nor shall it originate a budget.  The city council shall take definite action on any supplementary appropriation order and any order for a transfer of appropriations by adopting, reducing or rejecting it within sixty days after it is filed with the city clerk; and in the event of their failure to do so, such supplementary appropriation order or transfer as submitted by the mayor shall be in effect as if formally adopted by the city council

---

[5] St. 1908, c. 562, s. 1: "... to examine into all matters pertaining to the finances of the said city, including appropriations, debt, loans, taxation, expenditures, bookkeeping, administration and other matters ... is hereby given authority to prosecute the said investigation, to inquire into the management of the business of said city, and to inform itself as to the manner and methods in which the same is or has been conducted."  St. 1908, c. 562, s. 2: "... the commission shall have the power to require the attendance and testimony of witnesses and the production of all books, papers, contracts and documents relating to any matter within the scope of the said investigations, or which may be material in the performance of [its] duties ... the chairman may administer oaths."  St. 1908, c. 562, s. 3: "... [apply to] a justice of the supreme judicial court or of the superior court [to] issue an order requiring such person to appear.  Any failure to obey such order of the court may be punished by such court as a contempt thereof."  St. 1908, c. 562, s. 4: for refusal, the commission may impose a fine not exceeding fifty dollars or by imprisonment for not more than thirty days or both.

and approved by the mayor.  Nor later than the second Wednesday in June, the city council shall take definite action on the annual budget by adopting, reducing or rejecting it, and in the event of their failure to do so, the items and the appropriation orders in the budget as recommended by the mayor shall be in effect as if formally adopted by the city council and approved by the mayor.  It shall be the duty of the city and the county officials when requested by the mayor, to submit to the mayor forthwith in such detail as the mayor may require estimates for the next fiscal year of the expenditures of the department or office under their charge, which estimates shall be transmitted to the city council; provided, however, that the mayor shall neither submit, nor thereafter reduce, the appropriations for the city council at or to a level below that which existed for the previous fiscal year, nor shall the city council reduce the appropriations for the mayor's office below that which existed for the previous fiscal year.  [Acts of 1909, c. 486, s. 3, amended by Acts of 1974, c. 276, s. 53, amended by Acts of 1982, c. 190, s. 15, and further amended by Acts of 1986, c. 701, s. 2]

SECTION 49.     *Special Appropriations.*  In the period after the expiration of any fiscal year, and before the regular appropriations have been made by the city council and the school committee, city and county officers who are authorized to make expenditures, and the school committee, may incur liabilities in carrying on the work of the several departments and offices entrusted to them, and payments therefor shall be made from the treasury from any available funds therein and charged against the next annual appropriation, or special appropriation, if any is made; provided, that the liabilities incurred during such interval for regular employees do not exceed in any one month the average monthly expenditure of the last three months of the preceding fiscal year, and that the total liabilities incurred during said interval do not exceed in any one month the sums spent for similar purposes during any one month of the preceding fiscal year; and provided, further, that said officers who are authorized to make expenditures may expend in any one month for any new officer or board lawfully created an amount not exceeding one twelfth of the estimated cost for the current fiscal year; and provided, further, that until a regular or special appropriation has been made for snow removal, expenditures may be made for that purpose to an amount not exceeding the average of the annual expenditures for snow removal in the five preceding fiscal years.  Notwithstanding the foregoing limitations upon the authority of city officers to incur liabilities during said interval, such officers may incur liabilities to such extent as may be necessary for the purpose of compensating first assistant assessors for their regular duties.  [Acts of 1909, c. 486, s. 3A, amended by Acts of 1941, c. 604, s. 1, and further amended by Acts of 1947, c.120]

SECTION 50.     *Transfers of Appropriations.*  After an appropriation of money has been made by the city for any specific purpose, or for the needs and expenditures of any city department or county office, no transfer of any part of the money thus appropriated, between such department or office and another department or office, shall be made, except in accordance with and after the written recommendation of the mayor to the city council, approved by a yea or nay vote of two-thirds of all the members of the city council, provided that the city auditor, with the approval in each instance of the mayor, may make transfers, other than for personal service, from any item to any other item within the appropriations for a department, division of a department or county office.  After the close of the fiscal year, the city auditor may, with the approval of the mayor in each instance, apply any income, taxes and funds not disposed of and make transfers from any appropriation to any other appropriation for the purpose only of closing the accounts of such fiscal year, provided further that the city auditor within seventy days after the close of the fiscal year, shall transmit to city council and the city clerk a report listing what income, taxes or funds were applied and what transfers were made and the reasons therefor.

[Acts of 1909, c. 486, s. 3, amended by Acts of 1982, c.190, s.23, and further amended by Acts of 1986, c. 701, s. 3]

SECTION 51.     *Grants and Gifts; Acceptance and Expenditure.*  An officer or department of any city or town, or of any regional school or other district, may accept grants or gifts of funds from the federal government and from a charitable foundation, a private corporation, or an individual, or from the commonwealth, a county or municipality or an agency thereof, and in the case of any grant or gift given for educational purposes may expend said funds for the purposes of such grant or gift with the approval of the school committee, and in the case of any other grant or gift may expend such funds for the purposes of such grant or gift with the approval of the mayor and city council.  Notwithstanding the provisions of M.G.L. c. 44, s. 53, any amounts so received shall be deposited with the treasurer and held as a separate account and may be expended as aforesaid by such officer or department receiving the grant or gift without further appropriation.  If the express written terms or conditions of the grant agreement so stipulate, interest on the grant funds may remain with and become a part of the grant account and may be expended as part of the grant by such officer or department receiving the grant or gift without further appropriation.  Any grant, subvention, or subsidy for educational purposes received from the federal government may be expended by the school committee of such city, town or district without including the purpose of such expenditure in, or applying such amount to, the annual or any supplemental budget or appropriation request of such committee; provided, however, that this sentence shall not apply to amounts so received to which M.G.L. c. 71, s. 26C and Acts of 1953, c. 621, as amended, and Acts of 1958, c. 664, as amended, apply; and, provided further, that notwithstanding the foregoing provision, this sentence shall apply to amounts so received as grants under the Elementary and Secondary Education Act of 1965, (Public Law 89–10).  After receipt of a written commitment from the federal government approving a grant for educational purposes and in anticipation of receipt of such funds from the federal government, the treasurer, upon the request of the school committee, shall pay from the General Fund of such municipality compensation for services rendered and goods supplied to such federal grant programs, such payments to be made no later than ten days after the rendition of such services or the supplying of such goods; provided, however, that the provisions of such federal grant would allow the treasurer to reimburse the General Fund for the amounts so advanced.  [General Laws c. 44, s. 53A]

# THE CITY CLERK AND THE CITY AUDITOR

SECTION 52.     *Term of Office for City Clerk.*  In the year nineteen hundred and eleven, and every third year thereafter, a city clerk shall be elected by a majority of the members of the city council, to hold office until the first Monday in February in the third year following his election, and thereafter until his successor has been duly chosen and qualified, unless sooner removed by due process of law.  The city clerk shall act as clerk of the city council established by this act.  [Acts of 1909, c. 486, s. 22]

SECTION 53.     *Accounts Subject to Inspection by Auditor.*  All accounts rendered to or kept in the departments of the city of Boston or county of Suffolk shall be subject to the inspection and revision of the city auditor, and shall be rendered and kept in such form as he shall prescribe.  The auditor may require any person presenting for settlement an account or claim against the city or county to make oath before him in such form as he may prescribe as to the accuracy of such account or claim.  The wilful making of a false oath shall be perjury and punishable as such.  The auditor may disallow and refuse to

pay, in whole or in part, any claim on the ground that it is fraudulent or unlawful and in that case he shall file a written statement of his reasons for the refusal.  [Acts of 1909, c. 486, s. 23]

SECTION 54.     *Statement of Unexpended Balances to be Furnished.*   The auditor shall furnish monthly to each head of department a statement of the unexpended balance of the appropriation for that department, and he shall furnish to the mayor and city council a statement of the unexpended balances of all the departments.  He shall furnish quarterly to the city council an itemized statement showing the amount of money expended by the mayor and the city council for contingent expenses.  [Acts of 1909, c. 486, s. 25]

SECTION 55.     *Appointment of Audit Committee.*   There shall be appointed by the mayor subject to confirmation by the city council, an audit committee of five members, all residents of the city of Boston, whose members shall serve for five years ... .  Members shall serve without compensation but may be reimbursed for expenses necessarily incurred, and shall be deemed special municipal employees for the purposes of chapter two hundred and sixty-eight A of the General Laws.

The city shall retain the services of an independent, certified public accounting firm which shall annually audit the accounts of the city.  The audit committee shall monitor the progress of such audit and shall meet with the accounting firm at least quarterly.  The said committee shall review the recommendations of the firm and shall present to the mayor and city council such recommendations as it may have.  [Acts of 1982, c. 190, s. 14]

# FISCAL RESPONSIBILITIES

SECTION 56.     *Establishment of Reserve Fund.*   To provide for extraordinary and unforeseen expenditures, the city of Boston shall, prior to the date when the tax rate for a fiscal year is fixed, include in the appropriations for such fiscal year as a segregated reserve fund a sum not less than two and one-half per cent of the preceding year's appropriations for city and county departments, excepting the school department; provided, however, that the amount required to be appropriated for such reserve fund in any fiscal year may be reduced by the amount, if any, remaining in the reserve fund established for the preceding fiscal year after all transfers have been made therefrom as hereinafter authorized and such remaining amount shall be retained in the reserve fund provided for such fiscal year.  The mayor, with the approval of the city council, may make direct drafts or transfers against such fund before the close of the fiscal year, provided that no such drafts or transfers may be made before June first in any fiscal year.

Each transfer recommended by the mayor to the city council shall be accompanied by written documentation detailing the amount of such transfer and an explanation of the reason for the transfer.  If the reserve fund for a fiscal year beginning on or after July first, nineteen hundred and eighty-six is exhausted through transfer and the city incurs an appropriation or revenue deficit in such fiscal year, the reserve fund appropriation requirement shall increase by fifty per cent for the fiscal year following such fiscal year ... .

Notwithstanding any general or special law to the contrary, in the city of Boston, the segregated reserve fund established by this section shall be deemed to satisfy the requirement of section fourteen of chapter sixty-four J of the General Laws that a city accepting said chapter sixty-four J shall establish a

segregated reserve fund.  The reserve fund established pursuant to this section shall become effective for the fiscal year beginning July first, nineteen hundred and eighty-six.

Notwithstanding any general or special law to the contrary, effective for the fiscal year beginning July first, nineteen hundred and eighty-six, the school department shall establish a segregated reserve fund of not less than one percent of the current fiscal year's appropriation to the school department within ten days of final approval of such appropriations.  No expenditures may be made from this fund before May first in any fiscal year.  Expenditures from this fund shall require the approval of the mayor and the city council.  If the reserve fund for a fiscal year is exhausted through transfers and the school department incurs an appropriation deficit in such fiscal year, the reserve fund requirement shall increase by fifty per cent for the fiscal year next following such fiscal year, provided that, in no event shall the school department be required to maintain a segregated reserve fund greater than two and one-half per cent of the current fiscal year's school department appropriations.  [Acts of 1982, c. 190, s. 17A, amended by Acts of 1986, c. 701, s. 7]

SECTION 57.    *Requirement of Allotment Schedule from Departments.*  On or before August first of each year, or within ten days after the approval of the city council and the mayor of the annual appropriation order for such fiscal year, whichever shall occur later, the city or county officials in charge of departments or agencies, including the superintendent of schools for the school department, shall submit to the city auditor, with a copy to the city clerk, in such form as the city auditor may prescribe, an allotment schedule of the appropriations of all personnel categories included in said budget, indicating the amounts to be expended by the department or agency for such purposes during each of the fiscal quarters of said fiscal year.

The allotment specified by the school department for the first fiscal quarter in each fiscal year may not exceed twenty per cent of the total appropriations of all personnel categories for said fiscal year, and the allotment specified for any one of the remaining three quarters may not exceed in such quarter thirty percent of the total appropriation.

The allotment specified for each of the departments and agencies, except for the school department, for either the first or second fiscal quarter in each fiscal year may not exceed thirty per cent of the total appropriations of all personnel categories in said fiscal year, and the allotment specified for each of the departments and agencies, except for the school department, for both the third and fourth fiscal quarter in each fiscal year may not be less than twenty-one per cent of the total appropriations of all personnel categories in said fiscal year.

Whenever the city auditor determines that any department or agency, including the school department, will exhaust or has exhausted its quarterly allotment and any amounts unexpended in previous quarters, he shall give notice in writing to such effect to the department head, the mayor and the city clerk, who shall transmit the same to city council.

The mayor, within seven days after receiving such notice, shall determine whether to waive or enforce such allotment.  If the allotment for such quarter is waived or not enforced by the mayor, as provided above, the department or agency head shall reduce the subsequent quarter's allotments appropriately and the director of administrative services, within seven days, shall state in writing to the city council and the city clerk what reductions in each subsequent quarter's allotment will be taken or what reallocations or transfers will be made to support the spending level in each subsequent quarter's allotment.  If the allotment for such quarter is enforced or not waived, thereafter the department shall terminate all personnel expenses for the remainder of the quarter.  All actions taken pursuant to this

section shall be reported to the city council and the city clerk.  All reports provided for in this section shall be transmitted to the city council and the city clerk within seven days.

No personnel expenses earned or accrued, within any department, shall be charged to or paid from such department's or agency's allotment of a subsequent quarter without approval by the mayor, except for subsequently determined retroactive compensation adjustments.  Approval of a payroll for payment of wages, or salaries or other personnel expenses which would result in an expenditure in excess of the allotment shall be a violation by the department or agency head, including the superintendent of schools and the school committee of section sixteen of chapter four hundred and eighty-six of the acts of nineteen hundred and nine.  If the continuation of operations is not approved in a quarter where a department has exhausted the quarterly allotment or allotments as specified above, or, in any event, if a department has exceeded its entire appropriation for a fiscal year, the city shall have no obligation to pay any personnel cost or expense arising after such allotment or appropriation has been exhausted. Notwithstanding the provisions of any general or special law to the contrary, every collective-bargaining agreement entered into by the city, the school department, or the county shall be subject to and shall expressly incorporate the provisions of this section.

To insure that the overall city and county spending program remains in balance, the mayor may reallocate no more than three million dollars of nonpersonnel appropriations other than school appropriations during a fiscal year to other departmental purposes provided that in no department from which appropriations have been reallocated in accordance with this section shall any transfers be made under section three B of chapter four hundred and eighty-six of the acts of nineteen hundred and nine from personal services to non-personal services, except with the approval of a two-thirds vote of the city council, if such transfer would require the layoff of departmental personnel, who have been permanently appointed to a position in the department under the provisions of chapter thirty-one of the General Laws. No reallocation may be made under this section after April fifteenth in any fiscal year.  A list of each reallocation made by the mayor shall be transmitted to the city council and the city clerk by the city auditor by April thirtieth in any fiscal year.  In each case the report shall state the accounts from which the transferred funds were taken and the accounts to which the funds were reallocated, and the reasons therefor.  [Acts of 1982, c. 190, s. 18, amended by Acts of 1986, c. 701, ss. 8, 9]

SECTION 58.      *Hospitalization and Insurance Accounts.*  To further insure that the overall city and county spending program remains in balance, the mayor and city council shall appropriate for the hospitalization and insurance account an amount not less than the average of the past three years actual expenditures from those accounts.  The city auditor shall certify, in writing to the board of assessors, that adequate funds are provided in the operating budget for existing collective bargaining contracts.  This certification shall be received by the board no later than ten business days before the proposed tax rate is submitted to the department of revenue for approval.  [Acts of 1982, c. 190, s. 18A, amended by Acts of 1986, c. 701, s. 10]

# PUBLIC FACILITIES COMMISSION AND SURPLUS PROPERTY

SECTION 59.      *Authority of the Public Facilities Commission to Acquire Land for Municipal Purposes.*  Without obtaining the consent of any board or officer or further authority than that contained in this act, the public facilities commission, in the name of the city, may acquire by purchase, lease, gift, devise or otherwise for any municipal purpose a fee simple absolute or any lesser interest in any land,

public or private, within the limits of the city, including air rights and riparian rights, and may take by eminent domain under chapter seventy-nine or chapter eighty A of the General Laws any such fee or interest except in parks and playgrounds and except also, unless there be express consent, in lands belonging to or covered by contract with the United States, the commonwealth, the Boston Housing Authority, or the Boston Redevelopment Authority.  Whenever the price proposed to be paid for any land to be acquired for any municipal purpose is more than twenty-five per cent higher than its average assessed valuation during the previous three years, such land shall not be acquired by purchase, but shall be taken by eminent domain.  No land shall be taken until an appropriation by loan or otherwise for the general purpose for which land is needed shall have been made by the mayor and city council by a two-thirds vote of all its members; nor shall a price be paid in excess of the appropriation, unless a larger sum is awarded by a court of competent jurisdiction.  Nothing in this section shall affect in any way the powers and duties of the real property board under chapter four hundred and seventy-four of the acts of nineteen hundred and forty-six as now or hereafter amended, or of the public improvement commission as successor in function to the board of street commissioners under chapter four hundred and thirty-seven of the acts of eighteen hundred and ninety-three or chapter four hundred and twenty-six of the acts of eighteen hundred and ninety-seven or chapter three hundred and ninety-three of the acts of nineteen hundred and six, as severally now or hereafter amended, or acts in addition thereto.  [Acts of 1909, c. 486, s. 31; Acts of 1966, c. 642, s. 12; *see also* Acts of 1983, c. 643, s. 11]

   SECTION 60.   *Authority of the Public Facilities Commission to Shift Municipal Purposes of Land.*   Without obtaining the consent of any board or officer other than the mayor, and without interdepartmental payment, the public facilities commission, without further authority, may transfer any land now or hereafter belonging to the city, except parks and playgrounds, but including school lands and land acquired by foreclosure of tax title, from the municipal purpose, if any, to which it is devoted at the time of such transfer to any other specific municipal purpose, and may also transfer the care, custody, management and control of any such land, except parks and playgrounds, but including school land and land acquired by foreclosure of tax title, from such board or officer, including itself, as at the time of such transfer may have the same to such other board or officer, including itself, as it may determine.  [Acts of 1909, c. 486, s. 31; Acts of 1966, c. 642, s. 12]

   SECTION 61.   *Authority of Public Facilities Commission to Lease or Sell Land.*   Without obtaining the consent of any board or officer other than the mayor, the public facilities commission, without further authority, may, for such rent or price and upon such terms as said commission may deem appropriate, lease or sublease or sell, grant, and convey any surplus land, as hereinafter defined, to the federal government or any agency thereof, the commonwealth or any political subdivision or authority thereof or, if notice of intent to lease or sell such land or buildings together with a statement of when and where written details of such proposed lease or sale may be examined shall first have been publicly advertised in the City Record once a week for two successive weeks, to any person, firm, corporation or trust.  "Surplus land", as used in this section, shall be deemed to mean land, buildings and real estate now or hereafter belonging to the city and in the care, custody, management and control of said commission (except parks and playgrounds) which at the time of such lease or sale are or have been used for school purposes, or which have been acquired by foreclosure of tax titles or acquired under section eighty of chapter sixty of the General Laws, or which, irrespective of the manner or time of acquisition, are not held by the city for a specific purpose, or which have been transferred to the commission by the city council.  [Acts of 1909, c. 486, s. 31, amended by Acts of 1966, c. 642, s. 12]

SECTION 62.    *Establishment of the Surplus Property Disposition Fund.*  Notwithstanding the provisions of any general or special law to the contrary the proceeds from the disposition of any surplus property other than that acquired through tax title foreclosure shall be deposited in a separate fund which shall be set up on the books of the city and shall be known as the Surplus Property Disposition Fund, and shall be used only as follows:

(1)  The amount equivalent to the debt incurred, and interest paid or payable thereon, as a result of the acquisition or improvement from time to time of the property shall be used only for purposes for which the city is authorized to incur debt for a period of ten years or more;

(2)  All proceeds in excess of such amount shall be credited to the capital fund of the city unless the city council by a majority vote determines with the approval of the mayor to credit such proceeds to the general fund of the city.

[Acts of 1909, c. 486, s. 3, amended by Acts of 1941, c. 604, s. 1, amended by Acts of 1954, c. 24, amended by Acts of 1982, c. 190, s. 24, and further amended by Acts of 1986, c. 701, s. 4]


SECTION 63.    *Authority of the Public Facilities Commission to Dispose of Off-Street Parking Structures.*  Notwithstanding the provisions of chapter four hundred and seventy-four of the acts of nineteen hundred and forty-six or any other general or special law to the contrary, the public facilities commission of the city of Boston may dispose of any or all of the off-street parking structures, including the real estate related thereto, owned by the city of Boston, as surplus property in accordance with sections thirty-one B and thirty-one C of chapter four hundred and eighty-six of the acts of nineteen hundred and nine, only when transferred to the commission by a majority vote of the city council.  [Acts of 1909, c. 486, s. 3, amended by Acts of 1941, c. 604, s. 1, amended by Acts of 1954, c. 24, amended by Acts of 1982, c. 190, s. 24, and further amended by Acts of 1986, c. 701, s. 4]

# MISCELLANEOUS PROVISIONS

SECTION 64.    *Loans Issued by the City.*  All loans issued by the city after the passage of this act shall be made payable in annual installments in the manner authorized by section thirteen of chapter twenty-seven of the Revised Laws as amended by section one of chapter three hundred and forty-one of the acts of the year nineteen hundred and eight.  No sinking fund shall be established for said loan.  All bonds shall be offered for sale in such a manner that the effect of the premiums, if any, shall be to reduce the total amount of bonds issued.  No city or county money shall be deposited in any bank or trust company of which any member of the board of sinking fund commissioners of said city is an officer, director, or agent.  [Acts of 1909, c. 486, s. 26]


SECTION 65.    *List of Department Employees.*  Every officer and board in charge of a department of the city of Boston or county of Suffolk shall, on or before the sixth day of February in each year, prepare and furnish to the city auditor a list of the officials and employees under said officer or board and paid by the city or county on the first day of such February.  Such list shall give the name, residence by street and ward, designation, compensation, and date of election or appointment of each of said officials and employees and the date when each first entered the employ of the city or county.  It shall be the duty of the city auditor to verify said lists by the pay rolls and to keep a copy of said lists open for public inspection, and to prepare and publish in the City Record on or before the tenth day of April in each year a comparative table containing the number of such officials and employees holding office or

employed in each such department or board and paid by the city or county on the compilation date in each of the ten years next preceding such publication.  The term "compilation date", as herein used, shall be construed to mean ... the first day of February.  [Acts of 1909, c. 486, s. 27, amended by Acts of 1938, c. 263, s. 1, and further amended by Acts of 1951, c. 111]

SECTION 66.     *Establishment of the Board of Street Commissioners.*  The jurisdiction [exercised by the board of alderman prior to the passage of the Acts of 1909, c. 486] concerning the naming of streets, the planting and removal of trees in the public ways, the issue of permits or licenses for coasting, the storage of gasoline, oil, and other inflammable substances or explosive compounds and the use of the public ways for any permanent or temporary obstruction or projection in, under, or over the same, including the location of conduits, poles, and posts for telephone, telegraph, street railway, or illuminating purposes, is hereby vested in the board of street commissioners, to be exercised by said board with the approval in writing of the mayor; and the mayor and city council shall have authority to fix by ordinance the terms by way of cash payment, rent, or otherwise, upon which permits or licenses for the storage of gasoline or oil, or other inflammable substances or explosive compounds, and the construction or use of coal holes, vaults, bay windows, and marquises, in, under, or over the public ways shall be issued.  [Acts of 1909, c. 486, s. 28]

SECTION 67.     *Publication of City Record.*  [T]here shall be published at least once a week and distributed and sold under the direction of the mayor and on terms to be fixed by the city council and approved by the mayor a paper to be known as the "City Record."  All advertising with reference to the sale of property for non-payment of taxes shall appear exclusively in the City Record.  All other advertising, whether required by law or not, with reference to the purchase or taking of land, contracts for work, materials or supplies, and the sale of bonds, shall appear in said paper, and in such newspaper or newspapers as the mayor, in his discretion, may order; a list of all contracts of one thousand dollars or more, as awarded, with the names of bidders, and the amount of the bids; appointments by the mayor; and changes in the number and compensation of employees in each department, shall be published in the City Record.  Failure to publish in such newspaper or newspapers as the mayor may order shall not invalidate any purchase, contract or sale made or action taken by the city.  The proceedings of the city council and school committee together with all communications from the mayor shall be published in the City Record; provided, that the substance of debates by and among the members of the city council shall not be so published or published elsewhere at the expense of said city.  [Acts of 1909, c. 486, s. 29, amended by Acts of 1934, c. 185, s. 1, and further amended by Acts of 1947, c. 447, s. 1]

SECTION 68.     *Certain Contracts to be Made in Quintuplicate.*  Every officer or board in charge of a department in said city and every, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of said city, when authorized to erect a new building or to make structural changes in an existing building, shall make contracts therefor, not exceeding five, each contract to be subject to the approval of the mayor; and when about to do any work or make any purchase, the estimated cost of which alone, or in conjunction with other similar work or purchase which might properly be included in the same contract, amounts to or exceeds ten thousand dollars, shall, unless the mayor gives written authority to do otherwise, invite proposals therefor by advertisements in the City Record.  Such advertisement shall state the time and place for opening the proposals in answer to said advertisement, and shall reserve the right to the officer or board to reject any or all proposals.  No authority to dispense with advertising shall be given by the mayor unless the said officer or board furnishes him with a signed

statement which shall be published in the City Record giving in detail the reasons for not inviting bids by advertisement.  [Acts of 1909, c. 486, s. 30, amended by Acts of 1955, c. 60, s. 2, and further amended by Acts of 1992, c. 373, s. 2]

SECTION 69.     *Contracts to be Accompanied by Sureties.*  All contracts made by any department of the city of Boston or by any officer, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of said city, shall, when the amount involved is $10,000 or more, or when the contract comes within section [sixty-eight], be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing and the auditor of said city has certified thereon that an appropriation is available therefor or has cited thereon the statute under authority of which the contract is being executed without an appropriation.  All such contracts shall be accompanied by a suitable bond or deposit of money or other security for the faithful performance of such contracts, and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer, board or official making the contract, with the approval of the mayor affixed thereto.  [Acts of 1890, c. 418, s. 6, amended by Acts of 1939, c. 156, s. 2, and further amended by Acts of 1998, c. 262, s. 1]

# THE SCHOOL COMMITTEE AND SUPERINTENDENT

SECTION 70.     *Establishing a School Committee.*  Subject only to the provisions of [chapter one hundred and eight of the acts of the year nineteen hundred ninety-one] the school committee of the city of Boston shall consist of seven appointed members.  The mayor of Boston shall have the power to appoint the seven members of the school committee subject to the provisions governing the nominating panel as set forth in [chapter one hundred and eight of the acts of the year nineteen hundred ninety-one]. The members of the school committee shall at all times during their terms of office be Boston residents. The mayor shall strive to appoint individuals who reflect the ethnic, racial and socioeconomic diversity of the city of Boston and its public school population.  [Acts of 1991, c. 108, s. 2]

SECTION 71.     *Terms of Office for School Committeemembers.*  The term of office of the members of the school committee shall be four years and shall commence on the first day of the municipal year ... .  The office of each member shall expire upon the expiration of the term of said member and shall become vacant.  Any member whose term of office shall expire may be considered for reappointment, but only if renominated by the nominating panel.  A president of the school committee shall be elected annually by its members at the first meeting in each municipal year.  [Acts of 1991, c. 108, s. 4]

SECTION 72.     *Establishing a Superintendent.*  The school committee of the city of Boston shall, by majority vote of the whole number of its members, elect and contract with a superintendent of schools for any period of time not to exceed six years.  The school committee exclusively shall fix the compensation of such superintendent, which sum shall be in full for all services rendered to said city. The school committee may remove the superintendent for just cause by a vote of three-fifths of the whole number of its members after proper notice and public hearing.  The superintendent shall upon taking employment become, and during such employment remain, a resident of said city as the term

resident may be defined by ordinance.  Failure to maintain such residence shall be deemed a voluntary termination of employment.

The superintendent of schools shall be the executive officer of the school committee in all matters pertaining to the powers and duties of the school committee.  The school committee shall take no action on any particular matter without first receiving the superintendent's recommendation thereon.  The superintendent shall give his recommendation before or during the regularly scheduled meeting of the school committee next following the meeting at which the particular matter is raised and at which the superintendent is asked to prepare a recommendation thereon; provided, however, that the superintendent in his sole discretion may elect to present any such recommendation at the school committee meeting at which the particular matter is raised or thereafter but prior to the next regularly scheduled school committee meeting.  Any such recommendation of the superintendent shall include the superintendent's estimate of the cost or savings involved, if any, and if the superintendent estimates that there are costs involved, the recommendation shall identify available budgeted funding sources or new funding sources.  If the superintendent fails to make a recommendation on a particular matter when raised at such next regularly scheduled school committee meeting, the school committee may take action thereon without receiving the superintendent's recommendation.

The superintendent of schools shall at the beginning of the term for which he was appointed, submit to the school committee a management plan for all administrators and community and deputy superintendents serving at the discretion of said superintendent.  The school committee of said city, in the year nineteen hundred and eighty-nine and every sixth year thereafter or in the year when a superintendent is appointed shall vote by a two-thirds majority to accept or reject the management plan submitted by the superintendent of schools.  The school committee shall accept a management plan of the superintendent on or before September first in the year that the superintendent is appointed to term. [Acts of 1906, c. 231, s. 1, amended by Acts of 1986, c. 701, s. 1, and further amended by Acts of 1987, c. 613]

SECTION 73.   *Superintendent's Authority over School Department Positions.*  For the purposes of this section, all individuals engaged to render services and paid pursuant to the school department's budget shall be deemed to be school department employees and their positions shall be deemed to be school department positions.

The superintendent of schools shall have the exclusive authority to make appointments and promotions for all school department positions except for the positions of community superintendent, an election or appointment of a chairman, secretary or treasurer of the school committee, of school committee administrative assistants appointed pursuant to chapter four hundred and sixty-five of the acts of nineteen hundred and sixty-four, and of special assistant corporation counsels.  Prior to making an appointment or promotion to the position of community superintendent, the superintendent of schools shall present his recommendation thereon to the school committee at a regularly scheduled meeting. Any such appointment or promotion shall be deemed approved by the school committee on the sixth business day following the presentation of said superintendent's recommendation, unless a majority of the whole number of the school committee's members file with the secretary of the school committee a written objection to the intended appointment or promotion within five business days following the presentation of said superintendent's recommendation; in which case, the appointment or promotion shall be approved only upon majority vote of the whole number of the members of the school committee.

Any general or special law to the contrary notwithstanding, a vote of the school committee shall not be required for the appointment or promotion of any school department employee except as provided in section one A.  [Acts of 1906, c. 231, s. 1, amended by Acts of 1986, c. 701, s. 1, and further amended by Acts of 1987, c. 613]

Except as may be required by any collective bargaining agreement or by the provisions of chapter thirty-one and chapter one hundred and fifty E of the General Laws, and, subject to appropriation, the superintendent of schools shall have the exclusive authority to fix the compensation of all school department employees with the exception of school committee members; provided, however, that the school committee shall fix the compensation of the superintendent as provided in section [seventy-two] and shall fix the compensation of school committee administrative assistants appointed pursuant to chapter four hundred and sixty-five of the acts of nineteen hundred and sixty-four.  [Acts of 1991, c. 108, s. 5]

The superintendent of schools shall have the exclusive authority to assign, reassign, suspend, lay-off, demote, remove and dismiss any school department employees except school committee members and administrative assistants appointed pursuant to chapter four hundred and sixty-five of the acts of nineteen hundred and sixty-four.  Any general or special law to the contrary notwithstanding, the actions of the superintendent of schools pursuant to this subsection shall be deemed to be the actions of the school committee under the General Laws.  In exercising his authority under this subsection, the superintendent shall have the authority and powers, and be subject to the limitations, otherwise applicable to the school committee, including but not limited to the terms of any collective bargaining agreement imposed by chapter one hundred and fifty E of the General Laws.  In the case of actions taken pursuant to this subsection as to which notice or hearing, or both, would otherwise be afforded to the subject school department employee by the school committee, such notice or hearing, or both, shall be afforded instead by the superintendent of schools or his designee.  In the event that said superintendent delegates to a designee the conduct of a hearing for an affected school department employee, said superintendent shall base his decision upon the evidence presented at such hearing.  This section shall not affect the rights of teachers under sections forty-two, forty-three A and forty-three B of chapter seventy-one of the General Laws.

The superintendent of schools shall have the authority to supervise and direct school department employees except school committee members and administrative assistants appointed pursuant to chapter four hundred and sixty-five of the acts of nineteen hundred and sixty-four, and special assistant corporation counsels to the extent that their legal work is directed and supervised by the corporation counsel of the city of Boston.

Except as specifically provided herein, nothing in this section shall be construed or interpreted so as to limit in any way the existing employment rights of school employees, including rights of tenure and seniority as provided by chapter seventy-one and chapter thirty-one of the General Laws as well as those employment rights provided under applicable collective bargaining agreements and chapter one hundred and fifty E of the General Laws.  [Acts of 1906, c. 231, s. 1, amended by Acts of 1986, c. 701, s. 1, and further amended by Acts of 1987, c. 613]

SECTION 74.    *Fiscal Responsibilities of Superintendent.*  The school committee may delegate, in whole or in part, to the superintendent of schools the authority to approve for the school department the acceptance and expenditure of grants or gifts of funds from the federal government, charitable foundations, private corporations, individuals, or from the commonwealth, its counties, municipalities or

an agency thereof, the provisions of section fifty-three A of chapter forty-four of the General Laws notwithstanding.

The superintendent of schools shall provide to the school committee, the city auditor and the city office of budget and program evaluation of the city of Boston a report, detailing the source, purpose and balance on hand of all funds received or expended pursuant to [the above paragraph], quarterly.

The superintendent of schools shall submit to the school committee for approval an annual budget of the school department for the forthcoming fiscal year no later than the first Wednesday in February prior to the beginning of such fiscal year.  The school committee may adopt, reject, reduce or increase any item in the recommended budget; provided, however, that if the school committee fails to take definite action on the annual budget on or before the fourth Wednesday in March of each year, the annual budget as recommended by the superintendent shall be deemed approved as if formally approved by the school committee.  After approval of an annual budget by the school committee, said superintendent shall submit said approved budget to the mayor who may approve or reduce the total recommended budget. Thereafter, not later than the second Wednesday in May of each year, the mayor shall submit said annual budget to the city council for an appropriation of funds.  Said superintendent shall not approve the appointment of any person except to a budgeted position.

For the purposes of section sixteen of chapter four hundred and eighty-six of the acts of nineteen hundred and nine, members of the school committee and the superintendent of schools shall be deemed to be the officials responsible for the expenditures of the school department, the provisions of section eighteen of chapter one hundred and ninety of the acts of nineteen hundred and eighty-two to the contrary notwithstanding.

Subject to appropriations therefor, the superintendent of schools shall have the exclusive authority to make on behalf of the school committee contracts, or amendments to contracts, for the purchase or rental of equipment, materials, goods or supplies, leases of property, alterations and repairs of school property, and for professional or other services, with the exception of collective bargaining agreements and contracts for the transportation of students.  All school department contracts or amendments to contracts shall otherwise conform to the requirements of the city charter of the city of Boston.

With respect to all contracts, agreements or amendments thereto made or entered into by the school department, the superintendent shall be responsible for establishing procedures for auditing and monitoring the compliance of the parties with the terms and obligation of such contracts, agreements or amendments thereto.  [Acts of 1906, c. 231, s. 1, amended by Acts of 1986, c. 701, s. 1, and further amended by Acts of 1987, c. 613]

SECTION 75.    *Appropriation for Support of the Public Schools.*   The city of Boston shall annually provide an amount of money sufficient for the support of the public schools as required by law; provided, however, that said city shall not be required to provide more money for the support of the public schools than is appropriated in accordance with the provisions of chapter four hundred and eighty-six of the acts of nineteen hundred and nine, as amended.  In acting on appropriations for educational costs, the city council shall vote on the total amount of the appropriations requested by the mayor, but neither the mayor nor the city council shall allocate appropriations among accounts or place any restriction on such appropriations.   The appropriation of said city shall establish the total appropriation for the support of the public schools, but may not limit the authority of the school committee to determine expenditures within the total appropriation; provided, however, that if the city auditor determines that school department expenditures in any fiscal year are projected to be in excess of

total budgeted expenditures for that fiscal year, as supported by appropriation and other available funding, then the school committee shall not reallocate or transfer funds from any item in the budget for that fiscal year to fund any such projected additional expenditures.

After the fourth Wednesday of March of any fiscal year, the school committee shall not initiate or authorize any new or additional programs or categories of expenditures requiring additional unbudgeted expenditures unless such programs or categories have been incorporated and fully funded in the budget for the subsequent fiscal year.  If such programs or categories have not been incorporated or fully funded in the budget for the subsequent fiscal year, they shall not be initiated or authorized until the school committee shall have amended its budget submission for the subsequent fiscal year to reduce or eliminate other costs, programs or categories in amounts equal to the projected annualized costs of the new or additional programs or categories of expenditures.

The superintendent of schools shall prepare and submit to the school committee, the city auditor and the city office of budget and program evaluation, a monthly budget update report which shall detail and itemize year-to-date and projected school department expenditures and budget transfers.

The superintendent may, after the fourth Wednesday in March, but prior to the annual appropriation, enter into contracts with the publishers or suppliers of instructional materials and books for the timely purchase and delivery of the same to be used in the schools of the school department of the city of Boston for the school year commencing during the fiscal year for which a recommended appropriation has been submitted but not yet approved; provided, however, that such contracts for the supply and delivery of said instructional materials and books shall be charged to the appropriation of the next fiscal year, and provided further that the total amount of funds obligated for such instructional materials and books ordered prior to the annual appropriation shall be limited to the amount appropriated for such expenditures in the then current annual budget and shall not exceed that amount.  Pending the final annual appropriation for the school department, the city auditor may approve such contracts for the purchase and delivery of instructional materials and books, provided, however, that such contracts shall in all other respects conform to the requirements of the city charter of said city.  [Acts of 1936, c. 224, s. 2, amended by Acts of 1986, c. 701, s. 5, and further amended by Acts of 1987, c. 613, s. 2]

SECTION 76.    *Provision for Administrative Assistant.*  Notwithstanding any special or general law to the contrary, the members of the school committee appointed pursuant to this act shall not have the authority to hire personal staff; provided, however, that a paid administrative assistant may be appointed by the president of the school committee.  [Acts of 1991, c. 108, s. 5]

SECTION 77.    *Nominating Panel for Appointment of School Committee.*  There shall be in the city of Boston a nominating panel composed of thirteen members whose sole function shall be to nominate persons for consideration by the mayor for appointment to the school committee. Representation on the panel and the selection of said members shall be as follows:

(1) Four parents of children in the Boston public school system as follows: (i) one parent who shall be selected by the citywide parents council; (ii) one parent who shall be selected by the citywide educational coalition; (iii) one parent who shall be selected by the Boston special needs parent advisory council; and (iv) one parent who shall be selected by the bilingual education citywide parent advisory council.

(2) One teacher in the Boston public school system who shall be selected by the Boston teachers union from its membership.

(3) One headmaster or principal in the Boston public school system who shall be selected by the Boston association of school administrators and supervisors from its membership.

(4) One representative from the Boston business community as follows: one representative each shall be selected by the private industry council, the Boston municipal research bureau, and Boston chamber of commerce from their respective memberships. Such representatives shall serve on a rotating basis as follows: the representative from the private industry council shall serve for the first year of the first term of the nominating panel; the representative from the Boston municipal research bureau shall serve for the second year of the first term of the nominating panel; the representative from the Boston chamber of commerce shall serve for the first year of the second term of the nominating panel; and so forth.

(5) One president of a public or private college or university who shall be selected by the chancellor of higher education of the commonwealth.

(6) One person shall be the commissioner of education of the commonwealth.

(7) Four persons who shall be appointed by the mayor. The members of the nominating panel shall be selected from time to time no later than September thirtieth and shall serve for a term of two years, except as otherwise provided in this section. In the event that any member does not complete his or her term for any reason, the person or entity who selected such member shall select another person in like manner to complete the unexpired term.

[Acts of 1991, c. 108, s. 6]


SECTION 78.    *Nomination of the School Committee.*  The nominating panel annually shall from among its membership elect a chairman who shall forthwith file a list of the names and addresses of the members of the panel with the city clerk. The panel shall meet in public for the sole purpose of deliberating upon, hearing public comment with respect to, and finally selecting a list of nominees to be presented to the mayor from time to time. Each nominee shall be a resident of Boston at the time of such nomination. The panel shall strive to nominate individuals who reflect the ethnic, racial and socioeconomic diversity of the city of Boston and its public school population ... .

On the first Wednesday of October of every year the nominating panel shall convene to select not fewer than three but not more than five nominees for each office of school committee member that shall become vacant on the first day of the next municipal year. No later than the first Monday in December of each year, the panel shall present to the mayor a list containing the names and addresses of the said nominees for each term of office to commence on the first day of the next municipal year; provided, however, should the panel fail to present said list to the mayor by said first Monday in December, the mayor shall have the power to appoint any person he deems suitable to the office of school committee for the term to commence in the following January.

Upon notice provided by the city clerk that a vacancy exists in the office of any school committee member due to death or resignation, the panel shall convene within ten days of such notice and shall, within thirty days after so convening, select and present to the mayor a list containing the names and addresses of not fewer than three but not more than five nominees. Within fifteen days after such presentment, the mayor shall appoint a school committee member to serve the unexpired term of the vacant office; provided, however, should the panel fail to present said list within said thirty days, the mayor shall have the power to appoint any person he deems suitable to the vacant office to serve said unexpired term. [Acts of 1991, c. 108, s. 7]

# APPENDICES

## APPENDIX A
## BALLOT QUESTIONS -- 1909, 1948, 1996

### I.  Acts of 1909, c. 486, s. 35

SECTION 35:  At the state election on November second, nineteen hundred and nine, the then registered male voters of the city of Boston shall be entitled to vote upon the following plans, which shall be printed upon the official ballot in the following form.  The voters shall make a cross in the space at the right of the plan which he desires to have adopted.  No ballot shall be counted upon which the voter has made a cross in both spaces.

Plan No. 1.  The term of mayor to be two years; the city council to consist of one member from each ward (except wards twenty and twenty-four, which shall have two each) nominated in primaries and elected for two-year terms; nominations for school committee, mayor, and councilmen-at-large to be made by independent nominations and by delegates elected by the voters in the primaries.

Plan No. 2.  The term of mayor to be four years, subject to recall after two years by not less than a majority of all the voters in the city; the city council to consist of nine members elected at large for three-year terms; all nominations for a municipal election to be made by petition of not less than five thousand voters, without party designations on the ballot.

| Results | | November 2, 1909 | |
|---|---|---|---|
| Plan 1 | Plan 2 | Blanks | Total |
| 35,276 | 39,170 | 5,970 | 80,416 |
| | | | Registered Voters: 107,918 |

### II.  Acts of 1948, c. 452, s. 3

SECTION 3:  A petition, as hereinafter described, addressed to the board of election commissioners and signed by qualified voters of the city to a number equal at least to ten per cent of the registered voters at the state election next preceding the filing of the petition may be filed with the board of election commissioners not later than five o'clock of the afternoon of the first Wednesday in July next preceding the regular municipal election at which the question proposed by the petition is to be submitted to a vote of the voters, and such petition shall set forth any one of the following questions:

*Question One.*        "Shall the City of Boston adopt the form of government defined as Plan A under the provisions of an act passed by the General Court in the year nineteen hundred and forty-eight, and

consisting of a mayor, a city council of nine members elected at-large, and a school committee of five members elected at-large, with all candidates therefor being nominated by preliminary elections?"[6]

| Results | | | November 8, 1949 |
|---|---|---|---|
| Yes | No | | Total |
| 146,162 | 73,882 | | 220,044 |

*Question Two.*    "Shall the City of Boston adopt the form of government defined as Plan D under the provisions of an act passed by the General Court in the year nineteen hundred and forty-eight, and consisting of a city council of nine members elected at-large, including a mayor elected by and from its members, and a city manager appointed by it, and a school committee of five members elected at-large, with each voter having the right to vote for six members of the city council and three members of the school committee, and with all candidates for said elective offices being nominated by preliminary elections?"[7]

*Question Three.*    "Shall the City of Boston adopt the form of government defined as Plan E under the provisions of an act passed by the General Court in the year nineteen hundred and forty-eight, and consisting of a city council of nine members elected at-large, including a mayor elected by and from its members, a city manager appointed by it, and a school committee of five members elected at-large, with all said elective officers being elected by proportional representation?"  [Acts of 1948, c. 452, s. 3][8]

The petition shall be in the form of separate sheets; and each sheet of said petition shall be in substantially the following form:

---

[6] Plan A, as noted in the ballot question, is fully described in Acts of 1948, c. 452, ss. 10-20, 53-65, *et al.*, as amended.

[7] Plan D, as noted in the ballot question, is fully described in Acts of 1948, c. 452, ss. 21-22, 25-52, 53-65, *et al.*, as amended.

[8] Plan E, as noted in the ballot question, is fully described in Acts of 1948, c. 452, ss. 23-24, 25-52, 66-70, *et al.*, as amended.

To the Board of Election Commissioners, City of Boston:

We, the undersigned, qualified voters of the City of Boston, respectfully petition you to cause to be submitted to a vote of the voters of the City of Boston the following question: (*insert one of three questions as set forth above*).

| CHECK | SIGNATURES<br><br>(To be made in person with name as registered) | RESIDENCE ON JANUARY 1, 19 __<br><br>Street and Number, if any | W'd | P'ct | NOW LIVING AT<br>Street and Number, if any | W'd | P'ct |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.          Boston,          (*Date*), 19__

The undersigned, being the circulator or circulators of this paper, severally certify, under the pains and penalties of perjury, that the persons whose names are written upon the lines the numbers of which appear opposite our signatures below, signed the same in person.

| NAMES AND ADDESSES OF PERSONS CIRCULATING THIS PAPER | | Numbers of Lines Upon Which Appear Signatures as to Which Certification is Made Hereby |
|---|---|---|
| Name | Address | |
| | | |

The signature of any petitioner which is not so certified shall not be counted in determining the number of petitioners.

A separate typewritten sheet in substantially the aforesaid form, signed by at least ten and not more than fifteen qualified voters of the city, shall, not earlier than the first Wednesday of February next preceding the regular municipal election at which the question set forth on said typewritten sheet is to be submitted to a vote of the voters, be presented to the board of election commissioners. Within forty-eight hours after the presentation of said typewritten sheet said board shall certify thereon the number of signatures which are the names of qualified voters in the city; and if said typewritten sheet contain the signatures of at least ten qualified voters as aforesaid, said board shall within ten days after the presentation of said typewritten sheet provide blanks for the use of subsequent signers, sufficient in number to contain spaces for signatures equal at least to twenty times the number of signatures required as above provided, shall print at the top of each blank the question set forth on said typewritten sheet, together with the names and residences of the certified signers, and shall number each of said blanks consecutively. Said typewritten sheet shall upon presentation be photostated by said board and shall within ten days after presentation be returned by said board to the signers or any one of them, who shall offer said typewritten sheet for filing with the printed sheets as hereinafter provided. The petition shall consist solely of the typewritten sheet and of printed sheets provided by said board as aforesaid.

Such separate sheets, containing at least the required number of signatures of qualified voters as aforesaid, shall not be offered for filing separately but shall be offered as one petition, and when so filed, together the several papers shall be deemed to constitute the petition, and the name and address of the person presenting the same for filing shall be endorsed thereon. The board of election commissioners shall forthwith examine the petition and certify thereon the number of signatures which are the names of qualified voters in the city, except that said board need not certify a greater number of names than is equal in number to twelve per cent of the registered voters at the state election next preceding the filing of the petition, and said board shall attach thereon its certificate showing the results of such examination. The petition shall, when filed, be a matter of public record, but it shall not be open to public inspection until after certification of the signatures thereon. Not later than thirty days after the petition has been filed with them, said election commissioners shall complete such certification. The provisions of law relative to the signing and circulating of nomination papers of candidates for office in the city and to the identification and certification of names thereon and submission to the board of election commissioners therefor shall apply, so far as apt, to the signing of petitions hereunder.

Any petition certified by the board of election commissioners as not containing at least the required number of signatures as aforesaid, or found by the state ballot law commission, upon appeal as provided in section four, not to contain at least said required number of valid certified signatures as herein provided, shall be invalid and insufficient. The board of election commissioners and the state ballot law commission shall receipt in writing for the petition submitted to and received by them and shall deliver the petition only on receiving written receipt therefor.  [Acts of 1948, c. 452, s. 3]


### III.  Acts of 1991, c. 108

The elected School Committee was abolished and an appointed School Committee was established by St. 1991, c. 108 which was preceded by a nonbinding ballot question on November 7, 1989.

"Should the elected school committee structure be changed to a new seven member school board serving four year terms, appointed by the Mayor with the approval of the City Council from a list of Boston residents selected by a nominating panel comprised of community leaders, parents, educators, business and labor leaders; provided that within eight years after any such change is enacted, voters shall be given the opportunity to evaluate the new governance structure?"

| Question 2 Results | | November 7, 1989 | |
| --- | --- | --- | --- |
| Yes | No | | Total Ballots |
| 29,183 | 28,314 | | 57,497 |

St. 1991, c. 108 gained its final approval on July 5, 1991.  A subsequent ballot question was presented to the voters of the City of Boston on November 5, 1996:

"Shall an act passed in the General Court in 1991, entitled 'An Act Reorganizing the School Committee of the City of Boston' be repealed as of January 1998 and in place thereof the school committee structure as existing in 1991 be reconstituted after an election held in 1997?"

| Question 2 Results | | November 5, 1996 | |
| --- | --- | --- | --- |
| Yes | No | Blanks | Total Ballots |
| 41,070 | 94,200 | 39,689 | 174,959 |

## APPENDIX B
## STATEMENT OF CANDIDACY

### THE COMMONWEALTH OF MASSACHUSETTS
### CITY OF BOSTON
### STATEMENT OF CANDIDACY

A nomination petition shall be issued only to a person subscribing after the twenty-third Tuesday, and before the nineteenth Tuesday at 5:00 P.M., preceding the preliminary election, in a book kept for the purpose by the election commission, a statement of candidacy in substantially the following form:

### The Commonwealth of Massachusetts
### City of Boston
### Statement of Candidacy

I, (*name with first or middle name in full*), under the pains and penalties of perjury declare that I reside at (*street and number, if any*) in District (*number*) of the City of Boston; that I am a registered voter of said City duly qualified to vote for a candidate for the office hereinafter mentioned; that I am a candidate for nomination for the office of (*Mayor <u>or</u> City Councillor-at-Large <u>or</u> City Councillor representing District (number*)) ... ; that I request that my name be printed as such candidate on the official ballot to be used at the preliminary municipal election to be held on Tuesday,

, 19___, for the purpose of nominating candidates for election to such office; and that I also request that my nomination petition contain the following statement (*not exceeding eight words*) concerning the elective public offices now or formerly held by me:

_____

Signature of Candidate

[Acts of 1948, c. 452, s. 55 as amended by Acts of 1951, c. 376, s. 2.55 as further amended by Acts of 1983, c. 342, s. 3, as further amended by Acts of 2004, c. 476, ss. 3, 4]

# APPENDIX C
## NOMINATION PETITION

A nomination petition may consist of one or more sheets; but each sheet shall be in substantially the following form.

Every nomination petition sheet shall, before issuance, be prepared by the election commission by printing or inserting thereon the matter required by the first two paragraphs of the [] form [contained in this Appendix].  Not more than three hundred nomination petition sheets shall be issued to any candidate for nomination to the office of mayor under Plan A and not more than one hundred and fifty such sheets shall be issued to any candidate for nomination to the office of city councillor-at-large ... .  Not more than twenty nomination sheets shall be issued to any candidate for nomination to the office of district city councillor ... .  No nomination petition sheet shall be received or be valid unless prepared and issued by the election commission; nor shall any such sheet be received to be valid unless the written acceptance of the candidate thereby nominated is endorsed thereon, anything in section three A of chapter fifty of the General Laws to the contrary notwithstanding.  [Acts of 1948, c. 452, s. 55, amended by Acts of 1951, c. 376, s. 2.55A, amended by Acts of 1983, c. 342, s. 4, and further amended by Acts of 2004, c. 476, ss. 5, 6]

FORM FOR NOMINATION PETITION

IS INCLUDED ON THE FOLLOWING PAGE

### THE COMMONWEALTH OF MASSACHUSETTS

### CITY OF BOSTON

### NOMINATION PETITION

Whereas (*name of candidate*) residing at (*street and number, if any*) in District (*number*) of the City of Boston, (*here insert any lawfully requested statement concerning the elective public offices held by candidate*) is a candidate for nomination for the office of (*Mayor or City Councillor-at-Large or District City Councillor* ...), the undersigned, registered voters of the City of Boston, duly qualified to vote for a candidate for said office, do hereby request that the name of said (*name of candidate*) as a candidate for nomination for said office be printed on the official ballot to be used at the preliminary municipal election to be held on Tuesday,                    , 19     .

Each of the undersigned does hereby certify that he or she has not subscribed (*if the petition relates to the office of mayor or district city councillor* ... . *here insert*: any other nomination petition for said office; *if the petition relates to the office of city councillor-at-large* ... , *here insert*: more than three other nomination petitions for said office).

In case the above-named candidate withdraws his name from nomination or is found to be ineligible or dies, we authorize (*names and residences of a committee of not less than five persons*) or a majority thereof as our representatives to fill the vacancy in the manner prescribed by law.

| SIGNATURE OF NOMINATOR (To be signed by the nominator in person with the nominator's name precisely as given when the nominator registered to vote) | CURRENT RESIDENCE (If the nominator's current residence is not the address at which the nominator is registered to vote then the nominator shall complete the column titled "Residence of Registration") | WARD | PRE-CINCT | RESIDENCE OF REGISTRATION (If the nominator is not registered to vote at the "Current Residence" then the nominator shall complete this column) |
|---|---|---|---|---|
|  |  |  |  |  |

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                        Boston,                              , 19      .

    The undersigned, being the circulator or circulators of this sheet, severally certify, under the pains and penalties of perjury, that the persons whose names are written upon the lines the number of which appear opposite our signatures below, signed the same in person.

| NAMES AND ADDESSES OF PERSONS CIRCULATING THIS SHEET | | NUMBERS OF LINES UPON WHICH APPEAR SIGNATURES AS TO WHICH CERTIFICATION IS MADE HEREBY |
|---|---|---|
| NAME | ADDRESS | |
| | | |

I hereby accept the nomination.

_____
Signature of Candidate

This nomination petition sheet filed by

_____
Signature of Filer

_____
Number, Street, City

## APPENDIX D
## FORM FOR ELECTION BALLOTS

On the day of the posting provided for by section [twenty-six C], or as soon thereafter as conveniently may be, the election commission shall draw by lot the position of the candidates on the ballot. Each candidate shall have an opportunity to be present at such drawing in person or by one representative. As soon as conveniently may be after such drawing, the election commission shall cause the ballots to be printed. Said ballots shall, in addition to the directions and numbers provided for by section [twenty-eight], contain, in the order drawn by the election commission, the names posted as aforesaid (except those of candidates deemed under section [twenty-six C] to have been nominated), and no others, with a designation of residence and district and the title and term of the office for which the person named is a candidate, and the statement, if any, contained in his nomination petition concerning the elective public officers held by him. Said ballots shall be official and no others shall be used at the preliminary election. Said ballots shall be headed as follows:

---

**OFFICIAL PRELIMINARY MUNICIPAL ELECTION BALLOT**

Candidates for nomination for the offices of                                                    in the

City of Boston at the preliminary municipal election to be held on Tuesday, _____, 19 __.

---

The heading of said ballots shall be varied in accordance with the offices for which nominations are to be made. [Acts of 1948, c. 452, s. 58, amended by Acts of 1951, c.376, s. 2.58, and further amended by Acts of 1983, c. 342, s. 8]

# Appendix E
## Certificate of Appointment for Heads of Departments

In making such appointments the mayor shall sign a certificate in the following form:

---

**Certificate of Appointment**

I appoint (*Name of Appointee*) to the position of (*Name of Office*) and I certify that in my opinion he is a recognized expert in the work which will devolve upon him, and that I make the appointment solely in the interest of the city.                                                                                      , Mayor.

---

Or in the following form, as the case may be:

---

**Certificate of Appointment**

I appoint (*Name of Appointee*) to the position of (*Name of Office*) and I certify that in my opinion he is a person specially fitted by education, training, or experience to perform the duties of said office, and that I make the appointment solely in the interest of the city.                          , Mayor

---

The certificate shall be filed with the city clerk, who shall thereupon forward a certified copy to the civil service commission.  The commission shall immediately make a careful inquiry into the qualifications of the nominee under such rules as they may, with the consent of the governor and council, establish, and, if they conclude that he is a competent person with the requisite qualifications, they shall file with the city clerk a certificate signed by at least a majority of the commission that they have made a careful inquiry into the qualifications of the appointee, and that in their opinion he is a recognized expert, or that he is qualified by education, training or experience for said office, as the case may be, and that they approve the appointment.  Upon the filing of this certificate the appointment shall become operative, subject however to all provisions of law or ordinance in regard to acceptance of office, oath of office, and the filing of bonds.  If the commission does not within thirty days after the receipt of such notice file said certificate with the city clerk the appointment shall be void.  [Acts of 1909, c.486, s. 10]

**APPENDIX F**
**ELECTORAL DISTRICTS IN THE CITY OF BOSTON**
**CBC 2-9.2**

### 2-9.2  Establishing Nine Electoral Districts.

The districts redrawn under authority of Chapter 605 of the Acts of 1982 as amended by Chapter 343 of the Acts of 1986 are hereby redrawn, as follows:

District One - Consisting of precincts numbered one through fourteen of Ward One; precincts numbered one through seven of Ward Two; and precincts numbered one through four, and six of Ward Three.

District Two - Consisting of precincts numbered seven and eight of Ward Three; precincts numbered one through three of Ward Four; the precinct numbered one of Ward Five; precincts numbered one through nine of Ward Six; precincts numbered one through nine of Ward Seven; precincts numbered one and two of Ward Eight; and precinct number one of Ward Nine.

District Three - Consisting of precinct numbered fifteen of Ward One; precincts numbered three, and six through ten of Ward Thirteen; precincts numbered one, three, four, and six through nine of Ward Fifteen; precincts numbered one through twelve of Ward Sixteen; and precincts numbered four, and twelve through fourteen of Ward Seventeen.

District Four - Consisting of precincts numbered one through fourteen of Ward Fourteen; precincts numbered four and five of Ward Fifteen; precincts numbered one through three, and five through eleven of Ward Seventeen; and precincts numbered one, two, and four of Ward Eighteen.

District Five - Consisting of precincts numbered three, and five through twenty-three of Ward Eighteen; precincts numbered ten, eleven, and thirteen of Ward Nineteen; and precincts numbered one, two, four, eight, and nine of Ward Twenty.

District Six - Consisting of precincts numbered six, seven and nine of Ward Ten; precincts numbered four, and six through ten of Ward Eleven; precincts numbered one through nine, and twelve of Ward Nineteen; and precincts numbered three, five through seven, and ten through twenty of Ward Twenty.

District Seven - Consisting of precincts numbered four, five, eight, and nine of Ward Four; precinct numbered ten of Ward Seven; precincts numbered three through seven of Ward Eight; precincts numbered two through five of Ward Nine; precincts numbered one through three, and five of Ward Eleven; precincts numbered one through nine of Ward Twelve; and precincts numbered one, two, four, and five of Ward Thirteen.

District Eight - Consisting of precinct numbered five of Ward Three; precincts numbered six, seven, and ten of Ward Four; precincts numbered two through eleven of Ward Five; precincts numbered one through five, and eight of Ward Ten; and precincts numbered one and two of Ward Twenty-One.

District Nine - Consisting of precincts numbered three through sixteen of Ward Twenty-One; and, precincts numbered one through thirteen of Ward Twenty-Two.

(Ord. 1983 c. 25, s. 1; Ord. 1987 c. 5, s. 1; Ord. 1993 c. 4; Ord. 2002 c. 7)

**APPENDIX G**
## MAP OF ELECTORAL DISTRICTS IN THE CITY OF BOSTON
### CBC 2-9.2



## APPENDIX H
## OFFICIAL SEAL, STANDARD, AND FLAG OF THE CITY OF BOSTON
## CBC 1-2



The City Seal was designed c. 1822, adopted in 1823, and slightly modified in 1827 by changing font, adding clouds, and re-formatting the motto.  It was designed by John R. Penniman (c.1782-1841), New England's most famous flag painter, and consists of a view of the City, including the Massachusetts State House, with ships in the harbor in the foreground.

Encircling the seal at the top is the motto "Sicut Patribus Sit Deus Nobis" which means "God be with us as He was with our fathers" and is found at 1 Kings, VIII, 57.  At the bottom is "Civitatis Regimine Donata A.D. 1822" which means "City-Status Granted by the Authority of the State in 1822."

The City Standard and the City Flag are made of silk, but the Flag may be made of bunting for outdoor display.  Their body is "continental blue" with the white/blue seal in center with some "buff" highlights (continental blue, white, and buff are colors of the Revolutionary War uniforms of Boston soldiers). The Standard has fringe of buff, but the flag is without fringe.  The reverse of the Standard has a representation of the Trimountain, but the Flag has no reverse except that the seal shall show through the bunting.  The design for the Standard and Flag was proposed by the Columbus Day Committee in 1913, but the ordinance for the design and use of the flag/standard was not introduced into the City Council until January 16, 1914.  After official action on June 22, 1914, June 29, 1914, and September 28, 1914, the ordinance was finally adopted by Council on January 29, 1917.

# APPENDIX I
# PLAIN LANGUAGE VERSION OF THE BOSTON CITY CHARTER

### Boston City Charter -- Plain Language

Table of Contents

General Provisions................................................................................................57

*Section 1*    Definitions..................................................................
*Section 2*    Possible Types of Government .....................................
*Section 3*    How a New Plan of Government is Chosen ....................
*Section 4*    Reserved......................................................................
*Section 5*    Reserved......................................................................
*Section 6*    Minimum Length of Plan..............................................
*Section 7*    Other Requirements for a New Plan ..............................
*Section 8*    End of Term for Current Officials .................................
*Section 9*    Beginning and End of Fiscal and Municipal Years .........

Form of Government: Modified Plan A ............................................57

*Section 10*   Plan A..........................................................................
*Section 11*   Definitions of Mayor, City Council, and School Committee .........
*Section 11A*  Requirement to Take an Oath ......................................
*Section 11B*  When the Mayor's Office is Vacant ..............................

General Powers of Mayor and City Council ....................................58

*Section 12*   How Long Mayor Serves ..............................................
*Section 13*   Special Election for New Mayor....................................
*Section 13A*  Salary of the Mayor .....................................................
*Section 14*   City Councillors ...........................................................
*Section 15*   When a City Councillor-at-Large's Office is Vacant ......
*Section 15A*  When a District City Councillor's Office is Vacant ........
*Section 15B*  Rules and Exceptions for Special Elections...................
*Section 16*   Salary of City Councillors ............................................
*Section 17*   Electing a City Council President .................................
*Section 17A*  The Mayor May Summon a Meeting of City Council .....
*Section 17B*  City Council's Control over Offices ...............................
*Section 17C*  How the City Council Votes in Elections .......................
*Section 17D*  Mayor's Approval of City Council Actions.....................
*Section 17E*  Ordinances and Loan Orders .......................................
*Section 17F*  City Council's Requests for Specific Information ...........
*Section 17G*  Contracts Made by City Councillors..............................
*Section 17H*  City Councillors Holding Other Offices ........................
*Section 17I*  Summons and Subpoena Powers ..................................

City Districts  ........................................................................................62

*Section 18*   Boundaries for City Council Districts............................................................

*Section 19*   No Wards .............................................................................................................

*Section 20*   City Councillors Must Live in Their District..............................................

Procedures Relating to Elections ...............................................................62

*Section 21*   City Elections......................................................................................................

*Section 22*   Different Kinds of Elections ............................................................................

*Section 23*   Qualifications for Candidates .........................................................................

*Section 24*   Statement of Candidacy/Signing the Book ....................................................

*Section 24A* Nomination Petitions ........................................................................................

*Section 25*   Signature Requirements for Nomination .......................................................

*Section 26*   Counting the Signatures ...................................................................................

*Section 26A* How Voters Can Try to Stop a Nomination Petition ....................................

*Section 26B* Quitting and Substituting for Non-Mayoral Candidates ................................

*Section 26C* Informing Voters about the Candidates ..........................................................

*Section 27*   Printing of Preliminary Ballots .......................................................................

*Section 28*   Description of Ballot and Ballot Position Drawing ........................................

*Section 29*   Counting of Preliminary Ballots ......................................................................

*Section 30*   Who Wins a Preliminary Election ...................................................................

*Section 31*   Printing of Names on General Election Ballots ..............................................

*Section 32*   No References to Political Parties on Ballots .................................................

*Section 33*   Write-In Votes ...................................................................................................

Organization of City Departments............................................................65

*Section 34*   Changing Departments and Agencies ............................................................

*Section 35*   Appointments by the Mayor .............................................................................

*Section 36*   Making Sure that Mayoral Appointments are Qualified.................................

*Section 37*   Expenses of the Civil Service Commission .....................................................

*Section 38*   What Happens When a Department Head's Office is Vacant...........................

*Section 39*   How Long Members of Boards and Department Heads Serve........................

*Section 40*   Removing Heads of Departments .....................................................................

*Section 41*   Exceptions to Civil Service Laws .....................................................................

*Section 42*   Officials May Not Spend More Money than is Allocated ...............................

*Section 42A* Renewing Contracts Prior to Approval of the Budget ....................................

The Finance Commission............................................................................67

*Section 43*   Creation of a Finance Commission...................................................................

*Section 44*   Investigations and Reports ..............................................................................

*Section 45*   Commencing an Investigation .........................................................................

*Section 46*   Commission Funds............................................................................................

*Section 47*   Powers of the Finance Commission..................................................................

Public Spending...........................................................................................68

*Section 48*   Creation and Approval of the Municipal Budget.............................................

*Section 49*   Spending Money before the New Budget is Passed ........................................

*Section 50*   Moving Money...................................................................................................

*Section 51*    Acceptance, Receipt, and Expenditure of Grants/Gifts ....................................

# The City Clerk and the City Auditor....................................................................69
*Section 52*    How Long the City Clerk Serves ................................................................
*Section 53*    Duties of City Auditor ................................................................................
*Section 54*    When Too Little or Too Much is Spent ........................................................
*Section 55*    Double Checking the City's Finances by an Audit Committee.......................

# Fiscal Responsibilities .........................................................................................69
*Section 56*    Emergency (Reserve) Fund.........................................................................
*Section 57*    Employee Spending and Moving Money .....................................................
*Section 58*    Guarantees for the Hospitalization and Insurance Account............................

# Public Facilities Commission and Surplus Property .......................................70
*Section 59*    Acquiring/Taking Land for Municipal Purposes ...........................................
*Section 60*    Changing the Use of Land ..........................................................................
*Section 61*    Leasing or Selling Surplus Land (not Parks and Playgrounds) .......................
*Section 62*    Money from the Sale of Land .....................................................................
*Section 63*    Off-Street Parking Structures as Extra Property.............................................

# Miscellaneous Provisions.....................................................................................71
*Section 64*    Loans Made by the City of Boston ...............................................................
*Section 65*    List of Department Employees ....................................................................
*Section 66*    Powers of the Board of Street Commissioners ..............................................
*Section 67*    Contents and Publication of the City Record.................................................
*Section 68*    Making Certain Contracts and Publishing Proposals......................................
*Section 69*    Requirements of Contracts (Sureties) ...........................................................

# The School Committee and Superintendent.....................................................72
*Section 70*    Creating a School Committee ......................................................................
*Section 71*    How Long Members Serve -- Election of President.......................................
*Section 72*    Appointing a Superintendent's and Duties of Superintendent........................
*Section 73*    Superintendent's Authority to Hire, Fire, and Promote...................................
*Section 74*    Budget and Contracts ..................................................................................
*Section 75*    Getting and Spending School Department Money ..........................................
*Section 76*    Assistant to the President of the School Committee........................................
*Section 77*    Nominating Panel........................................................................................
*Section 78*    Choosing Nominees for the School Committee...............................................

## Boston City Charter -- Plain English

# GENERAL PROVISIONS

SECTION 1.  DEFINITIONS.
- City -- The city of Boston.
- Board of election commissioners -- The board of election commissioners of the city of Boston.
- Preliminary election -- The election held for the purpose of nominating candidates whose names shall appear on the official ballot at a municipal election.
- Proportional representation -- Any proportional representation method of election authorized by chapter 54A of the General Laws.
- Present form of city government -- The form of city government in effect in the city when it first adopts one of the three optional plans of government provided in this act.

SECTION 2.  PERMISSIBLE TYPES OF GOVERNMENT.
- If the city wishes to adopt a new form of government then it may adopt any of the plans in this act at a regular election.
- If a new plan is adopted, old laws consistent with the new plan shall remain in effect.
- Choosing a new plan does not alter any rights, responsibilities, or powers of the city as a municipal corporation.

SECTION 3.  HOW A NEW PLAN OF GOVERNMENT IS CHOSEN.
- 10% of voters registered for the next state election must sign a petition asking for a new government plan.
- The petition must be filed by 5:00 p.m. on the 1st Wednesday in July before the election.
- *See* Appendix A for descriptions of different potential plans.

SECTION 4.  Reserved.

SECTION 5.  Reserved.

SECTION 6.  MINIMUM DURATION OF PLAN.
- A new plan must last for at least 4 years.
- No petition for a new plan may be filed before 3 years have passed under the current plan.
- This period begins when the officials under the new plan take office.

SECTION 7.  OTHER REQUIREMENTS FOR A NEW PLAN.
- The procedures for proposing and adopting a new plan must come from the City Charter (this act).

SECTION 8.  END OF TERM FOR CURRENT OFFICIALS.
- When a new plan is chosen, the current elected officers and the city manager must leave office by 10:00 a.m. on the 1st Monday of the 2nd January under the new plan.

SECTION 9.  BEGINNING AND END OF FISCAL AND MUNICIPAL YEARS.
- Fiscal Year – July 1 through June 30.
- Municipal Year – The first Monday in January through the first Monday in the next January.

# FORM OF GOVERNMENT: MODIFIED PLAN A
## Government by Mayor, City Council, and School Committee,
### Elected at-large with Preliminary Elections

*Boston's governmental structure is <u>not</u> a Plan A form of government as delineated under the Massachusetts General Laws Chapter 43 because Boston's government pre-dated the modern*

*M.G.L. choices and Boston's Plan A is derived from the choices articulated in Acts of 1948, chapter 452 which offered voters act-specific Plan A, Plan D, or Plan E.*

SECTION 10.  PLAN A.
- Boston's form of government is called Plan A.
- This is *not* the Plan A form of government delineated in Massachusetts General Laws.

SECTION 11.  DEFINITIONS OF MAYOR, CITY COUNCIL, AND SCHOOL COMMITTEE.
- Mayor – Chief Executive Officer, enforces the laws.
- City Council – legislative body, 13 council members make the laws.
- School Committee – Makes and spends budget for public schools of Boston (*see* Sections 70 – 78).

SECTION 11A.  REQUIREMENT TO TAKE AN OATH.
- Every mayor, city councillor, and school committee member must take an:
  - Oath of Allegiance
  - Oath of Office
  - Oath to Support the United States Constitution
- Persons qualified to give these oaths to the mayor:
  - A justice of the Supreme Judicial Court
  - A judge of a court of record in the city
  - A justice of the peace
- Persons qualified to give these oaths to a city councillor or school committee member:
  - A justice of the Supreme Judicial Court
  - A judge of a court of record in the city
  - A justice of the peace
  - The mayor
- *See* Appendix J.

SECTION 11B.  WHAT HAPPENS WHEN THE MAYOR'S OFFICE IS VACANT.
- When the mayor is unable to perform his duties, the president of the city council will perform them.
- If the president of the city council cannot perform the duties of mayor then the city council shall choose a member to do so.
- This "acting mayor" may only perform urgent tasks, cannot make permanent appointments, and only holds office until either the city council president or the mayor returns.

# GENERAL POWERS OF MAYOR AND CITY COUNCIL

SECTION 12.  HOW LONG THE MAYOR SERVES.
- The mayor serves for 4 years.
- There are no term limits for mayor.

SECTION 13.  SPECIAL ELECTION FOR NEW MAYOR.
- A special election for mayor occurs when:
  - The mayor's office becomes vacant less than 16 weeks before a regular election, EXCEPT when it is a mayoral election
  - The mayor's office becomes vacant less than 16 months after a regular election
  - There is a failure to elect a mayor
  - The person elected mayor quits or dies before taking office
- The city council must immediately call for this election.
- This election must occur on a Tuesday between 120 and 140 days after the city council calls for the election.
- If the new mayor is elected in a special election then he/she only serves the rest of the old mayor's term.
- If the mayor's office becomes vacant at any other time then a new mayor will be elected at the next regular election and serves a regular term.

SECTION 13A.  SALARY OF THE MAYOR.
- The mayor's annual salary is set by ordinance.
- The mayor may not receive any other money for either working as mayor or working at any other city job.

SECTION 14.  CITY COUNCILLORS.
- There are 9 districts in Boston with 1 councillor elected from each district.
- There are 4 councillors elected by the entire city called city councillors at-large.
- Every councillor holds office for 2 years.
- There are no term limits for city councillors.

SECTION 15.  WHAT HAPPENS WHEN A COUNCILLOR-AT-LARGE'S OFFICE IS VACANT.
- The city clerk has 21 days to tell the city council that a city councillor-at-large's office is vacant.
- The councillors then have 15 days to select a replacement.
- To choose a new city councillor-at-large:
   - If the candidate with the second highest number of votes for that seat at the last election is able and willing to take the office then the council must offer the office to him/her
   - If no such person exists then the city council must choose a resident who is registered to vote in Boston
   - If the city council does not choose in 15 days then the mayor or acting mayor makes the choice

SECTION 15A.  WHAT HAPPENS WHEN A DISTRICT CITY COUNCILLOR'S OFFICE IS VACANT.
- If, more than 180 days before an election, a district city councillor's office becomes vacant then the city clerk must immediately notify the city council.
- At its next meeting, the city council must then order a special election for choosing nominees (preliminary election).
- This election must occur on a Tuesday between 62 and 76 days after the meeting.
- The 2 candidates with the most votes in the preliminary election then run against each other in a special election which occurs 28 days after the preliminary election.

SECTION 15B.  RULES AND EXCEPTIONS FOR SPECIAL ELECTIONS.
- The city council calls for a special election.  The mayor's permission is not required.
- All special elections must follow the rules listed in the Boston City Charter EXCEPT:
   - A statement of candidacy must be signed within 10 days of the city council calling for an election to occur
   - The election commission must wait at least 7 days after the city council calls the election to issue a nomination petition
   - Candidates have 15 days after the city council calls the election to file nomination petitions with the election commission, and these must be filed before 5 p.m.
   - The election commission has 14 days from the end of the nomination petition period to certify the signatures on all petitions
   - Registered voters have 3 business days to object to any signature on a nomination petition after it has been certified (objection period)
   - If any candidate for district city councillor changes his/her mind about running then he/she has until the last day of the objection period to remove his/her name
   - No candidate may run in place of another candidate
   - After the nominees have been selected, anyone wishing to request a recount of the vote has 3 days to file a petition with the election commission, and this must be filed before 5 p.m.

SECTION 16.  SALARY OF CITY COUNCILLOR.
- Every city councillor is paid an annual salary and receives no other money for personal expenses from the city treasury.
- That salary is determined by city council ordinance.
- A city councillor may also work and be paid as an instructor at a city college.
- A councillor may choose to receive the same salary as a city employee instead of receiving a city councillor's salary.

SECTION 17.  ELECTING A CITY COUNCIL PRESIDENT.
- The city council chooses its president by majority vote.

- The president establishes rules for city council proceedings.
- The eldest council member acts as president whenever there is no president or the president is absent.

SECTION 17A.  THE MAYOR MAY SUMMON A MEETING OF CITY COUNCIL.
- The mayor may require the city council to meet whenever he/she thinks it is necessary by giving notice in writing.

SECTION 17B.  CITY COUNCIL'S CONTROL OVER OFFICES.
- With the mayor's approval, the city council may create offices/positions necessary for the city council to function.
- The council determines how much the new officer is paid from the city treasury.
- Without the mayor's approval, the city council may eliminate offices, change the salaries of officers, and hire or fire employees for offices.
- The city council cannot create a clerk's office since it uses the city clerk as its clerk.

SECTION 17C.  HOW THE CITY COUNCIL VOTES.
- All city council elections/votes are held by voice vote.  When each councillor's name is called, he/she will say the name of his/her choice or verbally decline to vote.
- The city clerk shall record the votes.

SECTION 17D.  MAYOR'S APPROVAL OF CITY COUNCIL ACTIONS.
- Every action the city council takes must be approved by the mayor EXCEPT for:
  - Creation of special city elections
  - Actions related solely to the city council's internal affairs.
  - Resolutions that do not affect legal rights
  - Election of officials
  - Confirmation of appointments by the mayor
- If the mayor approves the city council's action then it becomes the law as soon as the mayor signs it.
- If he/she does not approve it then he/she tells the city clerk in writing why he/she does not approve it.
- The city clerk then returns the mayor's reasons for disapproval to the city council, and those reasons must be entered into council's records.
- Nothing else can be done if the mayor says no to an action involving money.
- The city council must look at all other returned actions again.
- If the issue involves a loan, expenditure, or appropriation of money then the mayor's objection terminates the action.
- For all other issues, the votes of 2/3 of the city council are necessary to override the mayor's objection.  The city council must wait at least 7 days after recording the mayor's objections to take this vote.
- If, after 15 days, the mayor has not said yes or no to an action then the action becomes law.
- The mayor must approve or object to the action as a whole, EXCEPT:
  - If the action deals with a loan or budget then the mayor may approve or object to any part of it
  - In such circumstances, the mayor's decision is final

SECTION 17E.  ORDINANCES AND LOAN ORDERS.
- The mayor makes recommendations to the city council are in the form of new laws (ordinances) or permission to borrow money (loan orders).
- The city council must consider these recommendations and adopt or reject them within 60 days.  If the council rejects then the mayor may present it to them again.
- If the city council does nothing within 60 days then it will become law unless the mayor withdraws it.
- The city council may:
  - Write their own ordinances and loan orders
  - Reduce or reject any item in a loan
  - Change an ordinance, if the mayor approves
- All sales of land other than school lands, all monies budgeted for the purchase of land, and all loans voted by the city council REQUIRE:
  - Two separate readings
  - Two separate votes
  - At least 2/3 of the city council voting yes at each vote

- o The second set of readings and votes must happen within 14 days of the first set, EXCEPT for temporary loan votes that are taken just before taxes are collected, where the second set must occur within 24 hours of the first set
- o No increases in the amount of or change in the distribution of monies are allowed at the second reading and vote
- 3 city councillors can sign a petition to speed up the vote on a loan order that was presented by the mayor. They must wait at least 14 days from receiving the order before filing the petition. The council then votes on the order at the next meeting. If a vote on the order has already occurred then the second vote happens as described above in this section.

SECTION 17F.  CITY COUNCIL'S REQUESTS FOR SPECIFIC INFORMATION.
- The city council may ask the mayor to either give them information on a specific city matter or to appear and answer questions on that matter.
- The city council must give the mayor the questions, in writing, one week before the meeting occurs.
- The mayor, a department head, or a board member will publicly answer only questions related to the previously specified matter.
- The mayor can talk to the city council at any time about any subject either in person or through a department head or board member.

SECTION 17G.  CONTRACTS MADE BY CITY COUNCILLORS.
- Neither the city council nor any of its members may participate in the making of any kind of any labor contract or in the spending of public money, EXCEPT as necessary for the operation of the council.
- Violation of this section shall lead to imprisonment or a fine or both.
- The mayor and city council must approve any contract for public lighting or garbage removal lasting longer than 1 year, after the city council holds a hearing that they advertised for 7 days in the City Record.
- City and county employees, including the mayor and city councillors, cannot receive money from contracts made with the city or county, EXCEPT:
  - o From an employment contract
  - o When the employee has the potential to receive money from a contract and the mayor, city council, and finance commission know about this interest and the employee does no city or county work relating to the contract
  - o When the employee owns less than 5% of the stock in a business making the contract with the city, and the city employee is not an officer or acting specifically on behalf of the business
- If an employee has a personal interest in a contract then the mayor must assign another employee to make the contract.
- If the mayor has a personal interest in a contract then the city clerk must make the contract.
- The city council's powers over state or military aid and soldiers' relief will remain the same.
- The city or county may void any contract that breaks these rules.
- Anyone breaking these rules will receive a fine of up to $1,000 or imprisonment of up to 1 year or both.

SECTION 17H.  CITY COUNCILLORS HOLDING OTHER OFFICES.
- While a city councillor, the only city government offices that the person may hold are that of city councillor and other offices that arise from being a city councillor (e.g. city council president).
- If the governor appoints a city councillor to a different office then the councillor may resign and take that office.

SECTION 17I.  SUMMONS AND SUBPOENA POWERS.
- The city council, licensing board, police commissioner, or election commissioners can force witnesses to give them information, either in persons or through books and papers, about subjects on which the witness has expertise.
- They must call and pay the witnesses the same way as a civil court calls and pays witnesses.
- If witnesses do not respond then they will receive the same penalty as in civil cases.
- The presiding officer at a hearing may give oaths to witnesses that appear.

# CITY DISTRICTS

SECTION 18.  BOUNDARIES FOR CITY COUNCIL DISTRICTS.
- Each district will have approximately the same number of residents, based on the most recent state census.
- The city council will try not to split up existing neighborhoods when drawing district lines.
- The council must redraw the districts every 10 years on or before August 1st.
- The city council and the school committee have the same district lines.

SECTION 19.  NO WARDS.
- The city does not need to divide its territory into wards.

SECTION 20.  CITY COUNCILLORS MUST LIVE IN THEIR DISTRICT.
- A district city councillor must have lived in his/her district for at least 1 year before being elected and must live in that district during the councillor's entire term of office.

# PROCEDURES RELATING TO ELECTIONS

SECTION 21.  CITY ELECTIONS.
- Regular city elections occur every 2 years on the Tuesday after the 1st Monday in November.
- *See* Appendix K.

SECTION 22.  DIFFERENT KINDS OF ELECTIONS.
- Every at-large city officer must be nominated at a preliminary election and then elected at a regular or special city election.
- Preliminary elections will occur on the 6th Tuesday before the regular election.

SECTION 23.  QUALIFICATIONS FOR CANDIDATES.
- A resident can only receive a nomination for office if he/she is a registered voter who can vote for that office.
- Candidates for nomination must follow all stated nomination rules.

SECTION 24.  STATEMENT OF CANDIDACY/SIGNING THE BOOK.
- In order to receive a nomination petition, a candidate must sign a statement of candidacy in the election commission's book.
- Every candidate must do this between the 23rd and 19th Tuesday before the preliminary election by 5 p.m.
- *See* Appendix B for the statement of candidacy form.

SECTION 24A.  NOMINATION PETITIONS.
- The election commission has 2 working days to issue the nomination petition after receiving the statement of candidacy.
- 1 candidate per petition, per office.
- A nominating candidate must list, in 8 words or less, the title and status of each elected position they hold or have held in Massachusetts or representing Massachusetts.
- *See* Appendix C for required nomination petition sheet format.
- Petitions can be no longer than:
  - 300 nomination sheets for a mayoral candidate
  - 150 sheets for a city councillor-at-large candidate
  - 20 sheets for a district councillor candidate
- Each sheet must include a signed statement of written acceptance by the candidate.

SECTION 25.  SIGNATURE REQUIREMENTS FOR NOMINATION.
- The city council determines the number of signatures required for nominations of candidates for district city councillor or school committee.  The ordinance must require at least 200 signatures and the number of signatures

required may not be more than 2% of the number of votes cast in the candidate's district during the last mayoral election.  If 2% of that vote is less than 200 then the number of signatures required must be equal to 2% of that vote.
- For a mayoral candidate: 3,000 registered voters must sign the registration petition.
- For a councillor-at-large candidate: 500 registered voters must sign the registration petition.
- Any voter who wishes to sign a nomination petition must:
  - Sign the petition in person, EXCEPT for physically disabled persons, who may have another sign for him/her
  - Sign with his/her name as registered
  - Sign with the address he/she used on January 1st of the current year if he/she registered to vote before the current year or with the address he/she gave at the time of registration if he/she registered in the current year
  - Sign with his/her current address if it differs from his/her registered address
  - Sign only 1 mayoral and only 1 district city council nomination petition
  - Sign no more than 4 city councillor-at-large nomination petitions
  - Sign each petition only once
- The election commission will only count the voter's name the first time (or the first 4 times for city councillors-at-large) it appears on any petition for any particular office.
- The person who files the nomination petition must file it with the election commission before 5 p.m. on the 18th Tuesday before the preliminary election.
- Any person who files a petition must sign each sheet.  If that person is not the candidate then he/she must also include his or her address on each sheet and provide identification to the election commission.
- The names of candidates are a matter of public record.  However, the public may not inspect the nomination sheets until the election commission certifies the signatures on every petition filed for that office.

SECTION 26.  COUNTING THE SIGNATURES.
- The election commission counts the number of registered voters' signatures on each petition and this process is known as certification.
- The commission must only certify the minimum number of signatures required, plus an extra 20%.
- Only certified signatures count towards the number needed for nomination.
- Valid nomination petitions must have the required number of signatures.
- The election commission must finish certifying by 5 p.m. on the 13th Tuesday before the preliminary election.

SECTION 26A.  HOW VOTERS CAN STOP A NOMINATION PETITION.
- A nomination petition that seems legal is valid unless a registered voter challenges it.
- To challenge the petition, a registered voter must file a written objection with the election commission before 5 p.m. on the 12th Tuesday before the primary election, even if the commission has already certified the petition.
- The election commission must immediately send all objections to the Boston ballot law commission.

SECTION 26B.  QUITTING AND SUBSTITUTING FOR NON-MAYORAL CANDIDATES.
- A candidate may quit the election by filing a request with the election commission before 5 p.m. on the 12th Tuesday prior to the preliminary election.
- A candidate may list a committee of 5 or fewer people on his/her nomination petition who will choose his/her replacement if he/she cannot or will not run.
- This committee must file its new candidate's information with the election commission by 5 p.m. on the day following the 12th Tuesday before the preliminary election.

FINDING A NEW CANDIDATE WHEN A CANDIDATE FOR MAYOR DIES.
- The due date for filing the new candidate for mayor's information with the election commission depends on when the candidate for mayor dies but must always be filed before 5 p.m. on the day as follows:
  - If death occurs on or before the 2nd Friday before the preliminary election then filing must occur on the 1st Tuesday before the preliminary election
  - If death occurs after the 2nd Friday before the preliminary election and before the closing of the polls then filing must occur on the 1st Friday following the preliminary election
  - If death occurs after the closing of the preliminary election polls and on or before the 2nd Friday before the regular election then filing must occur on the Tuesday before the regular election

- o  If death occurs after the 2nd Friday before the regular election but before the closing of the polls then filing must occur on the 1st Friday following the regular election
    - ▪  If, in this case, the new candidate has a nomination committee and it does not file his/her information by 5 p.m. on the 1st Tuesday before the election then the election commission must postpone the mayoral election for 4 weeks.
- After the preliminary election has occurred, a nomination committee may only offer substitutes for candidates still in the race.

    NAMES ON THE BALLOT.
- If filing of the new candidate's information occurs before 5 p.m. on the 1st Tuesday before the preliminary election then:
    - o  The preliminary election ballots will have the name, residence, and ward of the new candidate
    - o  The voting machine ballot labels will also have the new candidate's information
- If filing of the new candidate's information occurs between 5 p.m. on the 1st Tuesday before the preliminary election and the closing of the polls at the preliminary election then:
    - o  The former candidate's information will appear on the ballot, but any vote for that candidate will count as a vote for the new candidate
- If filing of the new candidate's information occurs before 5 p.m. on the 1st Tuesday before the regular election then:
    - o  The election commission will place the new candidate's information on regular ballots
    - o  On absentee ballots, the election commission will try to ensure that the new candidate's information is entered but, failing this, a vote for the old candidate will count as a vote for the new candidate
    - o  The voting machine ballot labels will also have the new candidate's information

    REQUIREMENTS FOR THE FILING OF ALL SUBSTITUTE CANDIDATES.
- The nomination committee must provide:
    - o  New candidate's name
    - o  New candidate's street address and district or ward
    - o  Office the new candidate seeks
    - o  Old candidate's name
    - o  Reasons why the old candidate is no longer running
    - o  How the nomination committee chose the new candidate
    - o  Oaths and signatures about the truth of the information it is submitting from the chairman and secretary of the nomination committee
    - o  New candidate's written acceptance of his or her nomination

SECTION 26C.  INFORMING VOTERS ABOUT THE CANDIDATES.
- On the 1st working day after the election commission has finalized the nominations, it must post the names, residences, and districts of the candidates for mayor and city councillor in city hall.
- The election commission must group these names by district number.
- In a public building in each district the election commission must post the information related to elections in that district.
- The election commission will not hold preliminary elections if there are 2 or fewer candidates running for either mayor or district city councillor or 8 or fewer candidates for city-councillor-at-large.

SECTION 27.  PRINTING OF THE PRELIMINARY (I.E. PRIMARY) BALLOTS.
- The election commission must select the position of candidates on the ballot at random, by a drawing of names, to select the position of the candidates on the ballot on the day of public posting of the names or very soon afterwards.
- The election commission must print the ballots as soon as possible after the posting of the names.
- These official preliminary election ballots must contain:
    - o  The names of the nominees
    - o  The addresses of the nominees
    - o  The office that each nominee seeks
    - o  A statement regarding the elected public offices the nominee currently holds or has held
    - o  An official heading (*See* Appendix D)

SECTION 28.  DESCRIPTION OF BALLOT AND BALLOT POSITION DRAWING.
- In every election, each voter may vote for only 1 mayoral candidate, only 1 district city councillor, and up to 4 city councillors-at-large.
- The ballot must instruct voters about this restriction.
- Each candidate, in person or through a representative, may be present when the election commission randomly selects the names for positioning on the ballot.
- Before randomly selecting the positions, the election commission places each candidate's information on a card and reads that card out loud before putting all cards in alphabetical order.
- The election commission randomly picks cards that determine the positions on the ballot, first for mayor then for city councillor.
- The mayoral cards have the candidate's name and address.
- The city councillor cards have the candidate's name and district number.

SECTION 29.  COUNTING THE PRELIMINARY BALLOTS.
- When the polls close, the election officers count the ballots and return them to the election commission and they report the number of votes.
- The election commission determines the winners and puts the results in newspapers and posts notice at city hall.

SECTION 30.  WHO WINS A PRELIMINARY (I.E. PRIMARY) ELECTION.
- The 2 people who receive the highest number of votes in mayoral and district city councillor elections win a place on the regular election ballot.
- The 8 people who receive the highest number of votes in city councillor-at-large elections win a place on the regular election ballot.
- If, because of a tie, there are a greater number of candidates who should win a place on the regular election ballot than the rules would allow then all such candidates win a place on the ballot for the regular election (e.g. if there is a tie between second and third place in a mayoral preliminary election then both the second and third-place candidates would win a spot on the regular election ballot).

SECTION 31.  PRINTING OF NAMES ON GENERAL ELECTION BALLOT.
- Shortly after the 6th Tuesday before the regular election, the election commission determines the position of each candidate on the regular election ballot by holding a random drawing for which the candidate or a representative may be present.
- These official regular election ballots contain:
  - The names of the nominees
  - The addresses of the nominees and their districts
  - The office and the term of the office that the nominee seeks
  - A statement regarding the elective public offices the nominee holds or has held

SECTION 32.  NO REFERENCES TO POLITICAL PARTIES ON BALLOTS.
- Ballots may not contain references to candidates' political views or affiliations.

SECTION 33.  WRITE-IN VOTES.
- Ballots for mayor and district city councillor must have 1 blank space and ballots for city councillor-at-large must have 4 blank spaces so that voters may write in the names of anyone they wish.

# ORGANIZATION OF CITY DEPARTMENTS

SECTION 34.  CHANGING DEPARTMENTS AND AGENCIES.
- The city council with the approval of the mayor may:
  - Create new departments or agencies
  - Eliminate all or part of any department or agency
  - Reorganize all or a part of any department or agency
  - Increase any department or agency's duties or powers
  - Move the powers, duties, and funding within a department or agency

- o Move duties, powers, and funds between departments or agencies
- o Change, create, or eliminate the salary of any department or agency head
- The mayor, without city council's approval, must appoint the head of any department or agency created in this way.
- The term of any such department or agency head ends:
  - o On the 1st Monday of January after the next regularly scheduled mayoral election that follows the appointment
  - o According to the rules of the particular board they serve on if:
    - They are unpaid
    - They serve on a board of appeals
    - They serve on a board of examiners
- If the city council eliminates a position under this section then the person who worked in that position shall be given another job in a similar office or of a similar status.  That person does not have to retake the civil service exam, and he/she retains any pension benefits previously accrued.
- This section does not apply to:
  - o The school committee
  - o The board of commissioners of school buildings
  - o The superintendent of construction
  - o The board of trustees of the teachers' retirement fund
  - o The board of trustees of the permanent school pension fund
  - o The Boston retirement board
  - o The city clerk
  - o The board of election commissioners
  - o The Boston traffic commission
  - o Any board member or officer appointed by the governor

SECTION 35.  APPOINTMENTS BY THE MAYOR.
- Except for the school committee and officers the governor appoints, the mayor appoints all heads of departments and members of city boards without approval from the city council.
- Appointees must be recognized experts in or have special training for the work they will perform in committees, except for election commissioners.
- The mayor may not consider political party or residence when making appointments.

SECTION 36.  MAKING SURE THAT MAYORAL APPOINTMENTS ARE QUALIFIED.
- The mayor must sign and file a certificate with the city clerk when appointing heads of departments.  (*See* Appendix E for certificate form)
- The city clerk then gives the certification to the civil service commission who then makes sure that the nominee has the skills required for the job.
- If he/she does have the required qualifications then a majority of the commission signs a certificate and files it with the city clerk.  If civil service commission does nothing within 30 days then the nominee shall be considered unqualified.
- If and when the nominee accepts the office, takes all necessary oaths, and files a bond then the appointment is complete.

SECTION 37.  EXPENSES OF THE CIVIL SERVICE COMMISSION.
- The governor and city council must approve a reasonable budget for the civil service commission.
- Massachusetts gives the commission this money and may ask Boston to repay this money.

SECTION 38.  WHAT HAPPENS WHEN A DEPARTMENT HEAD'S OFFICE IS VACANT.
- Until the mayor can appoint a permanent replacement, he/she must temporarily fill any vacant department head position with the head of another department or a member of a board.

SECTION 39.  HOW LONG MEMBERS OF BOARDS AND DEPARTMENT HEADS SERVE.
- Members of boards keep their jobs for as long as the law allows.
- Heads of departments keep their jobs for 4 years beginning May 1st of their appointment year but may work for longer if the mayor wishes.

SECTION 40.  REMOVING HEADS OF DEPARTMENTS.
- The mayor can remove any head of a department or member of a board by filing a written statement of reasons for removal with the city clerk.
- The person removed receives a copy of the mayor's statement and may file a reply, which shall not affect the removal.
- This section does not apply to:
  - Election commissioners
  - The school committee
  - The public facilities commission
  - Any official appointed by the governor

SECTION 41.  EXCEPTIONS TO CIVIL SERVICE LAWS.
- The mayor may remove his secretaries, stenographers, clerks, telephone operators, and messengers without a hearing or statement of cause.

SECTION 42.  OFFICIALS MAY NOT SPEND MORE MONEY THAN IS ALLOCATED.
- Boston officials may not spend more money or make a contract to spend more money than they are given to spend in any fiscal year, except in cases of extreme emergency.
- If an official intentionally spends too much money then the city shall attempt to recover the extra money spent and the official must pay any amount that the city cannot recover.
- The city may bring these claims to court.
- Anyone breaking these rules will be fined $1,000 or less or imprisoned for a term of 1 year or less or both.

SECTION 42A.  RENEWING CONTRACTS PRIOR TO APPROVAL OF THE BUDGET.
- City and county officers that are allowed to spend money, as well as the school committee, may renew or enter into contracts that they do not currently have money for.
- These contracts:
  - May last for no more than the first 3 months of the new fiscal year
  - Must have the same or better terms as the prior contract or a similar contract
  - Must not spend more than the average of the last 9 months of similar contracts

# THE FINANCE COMMISSION

SECTION 43.  CREATION OF A FINANCE COMMISSION.
- The governor appoints the finance commission with the advice and consent of the [governor's] council.
- The commission consists of 5 qualified voters of Boston who have lived in the city for at least 3 years prior to their appointment.
- Each commission member serves for a term of 5 years, but the governor may remove a member at any time with consent of the governor's council.
- The governor chooses the chairman of the commission, to whom the city shall pay a salary.  The other members of the commission shall serve without pay.

SECTION 44.  INVESTIGATIONS AND REPORTS.
- The finance commission must investigate financial matters regarding Boston or Suffolk county when the commission sees fit and report its investigative findings regarding Boston or Suffolk county's financial matters to the mayor, city council, governor, or state legislature.
- The commission must present an annual report to the state legislature each January.

SECTION 45.  COMMENCING AN INVESTIGATION.
- If the mayor, city auditor, or city treasurer receives a request for money that he/she thinks is false then he/she must tell the finance commission not to pay it.
- The commission then investigates and reports its investigative findings.

SECTION 46.  COMMISSION FUNDING.
- The city must appropriate to the commission no less than the amount of the salary of the chairman plus a minimum of $25,000 for all expenses.
- The commission may spend money before it has been given to them.

SECTION 47.  POWERS OF THE FINANCE COMMISSION.
- Chapter 562 of the Acts of 1908 lists the powers of the finance commission: (i) to investigate all matters pertaining to the finances of the said city, (ii) to require the attendance and testimony of witnesses and the production of all material books, papers, contracts, and documents, (iii) to administer oaths (the chairman), (iv) to apply to a justice of the supreme judicial court or of the superior court for an order requiring a person to appear (any failure to obey such order of the court is punishable as contempt, (v) for refusal to comply with orders, the commission may impose a fine not exceeding fifty dollars or imprisonment for not more than thirty days or both.
- Chapter 562 of the Acts of 1908 lists the powers of the finance commission, EXCEPT:
  - Counsel for any witness at any public hearing may ask him any relevant question and may offer relevant evidence through other witnesses subject to cross-examination by the commission and its counsel.

# PUBLIC SPENDING

SECTION 48.  CREATION AND APPROVAL OF THE MUNICIPAL BUDGET.
- The mayor's office disburses all money for the operations of the city EXCEPT money for schools and money from loans.  The mayor can disburse this money at any time.
- City and county officials, when asked, must tell the mayor how much they think their department will spend in the next fiscal year.  The city council then receives these estimates.
- The mayor must give the city council the annual budget by the 2nd Wednesday in April.
- The city council may reduce or reject an item in the budget, but it may not create or increase items in the budget.
- The city council MUST:
  - Vote on any new funding order within 60 days after the mayor's office files it -- if they do nothing then the order is approved
  - Vote on the annual budget by the 2nd Wednesday in June -- if they do nothing then the budget is approved.
- The budget must give the mayor and city council at least as much money as each received in the prior year.

SECTION 49.  SPENDING MONEY BEFORE THE NEW BUDGET IS PASSED.
- If there is a delay in the budget process and city departments have not yet been given any money for the new fiscal year then any city official allowed to spend money may continue to spend money EXCEPT:
  - No city official may spend more in 1 month than the monthly average of the past 3 months
  - No city official may spend more money per month on a specific type of item or service than was spent on the same item or service in any month during the previous fiscal year
  - When funding a new board or office, no city official may spend more than 1/12 of the amount of money he/she thinks it would take to run that board or office in the current fiscal year
  - No city official may spend more on snow removal than the average amount spent on snow removal over the last 5 years
- First assistant assessors may continue to be paid from the treasury for their regular duties.  This money will be taken out of the next fiscal year's funding.

SECTION 50.  MOVING MONEY.
- The mayor and 2/3 of the city council must approve any transfer of funds from one department to another.
- With approval from the mayor, the city auditor may move money around within a department, as long as it is not for the auditor's personal services.
- In order to close out accounts at the end of the fiscal year, the city auditor may, with the mayor's approval, spend or move any leftover money.
- The city auditor must report any money he/she has moved around, as well as why he/she made each move, to the city council and the city clerk within 70 days of the end of the fiscal year.

SECTION 51.  ACCEPTANCE, RECEIPT, AND EXPENDITURE OF GRANTS/GIFTS.

- The city of Boston may accept grants or gifts of funds.
- In the case of any grant or gift given for educational purposes, the city of Boston may spend those funds for the intended purposes of such grant or gift with the approval of the school committee, and in the case of any other grant or gift, may spend such funds for the purposes of such grant or gift with the approval of the mayor and city council.
- Amounts so received shall be deposited with the treasurer and held in a separate account and may be spent by the officer or department receiving the grant or gift without further appropriation.

# THE CITY CLERK AND THE CITY AUDITOR

SECTION 52.  HOW LONG THE CITY CLERK SERVES.
- After a majority of the city council elects the city clerk, he/she serves for 3 years.
- The city clerk works until the 1st Monday in February of the 3rd year of the appointment or longer if the council has not chosen a replacement.

SECTION 53.  DUTIES OF CITY AUDITOR.
- The city auditor oversees all of Boston's accounts and all of Suffolk County's accounts.
- If anyone claims that the city or county owes him/her money then the auditor may require him/her to take an oath that the claim is truthful.
- The auditor may refuse to pay any claim believed to be unlawful but must file a written statement explaining the reasons for refusal.

SECTION 54.  UNSPENT BALANCES.
- The city auditor gives the head of each department a monthly statement of how much money the department was given but has not spent.
- The auditor gives the same statement to the mayor and city council.
- The auditor gives the city council a statement every 3 months showing money that the mayor or city council spent on contingent expenses.

SECTION 55.  DOUBLE-CHECKING THE CITY'S FINANCE BY AN AUDIT COMMITTEE.
- The mayor appoints and the city council confirms a 5-member audit committee.
- The city shall hire an independent, certified public accounting firm to audit the city once a year.
- Audit committee members:
  - Are residents of Boston
  - Are unpaid
  - Classify as special city employees
  - Serve for 5 years
- The audit committee:
  - Monitors the outside accounting firm's work
  - Meets with the outside accounting firm at least 4 times a year
  - Reviews the recommendations of the outside accounting firm
  - Makes its own recommendations to the mayor and the city council

# FISCAL RESPONSIBILITIES

SECTION 56.  EMERGENCY (RESERVE) FUND.
- The city must annually set up a fund that is at least 2.5% of the previous year's budget (not counting the school department's budget) minus any money left over in the previous year's reserve fund.
- After the city council receives and approves a written request and explanation, the mayor can take money out of the reserve fund during the last month of the fiscal year.
- If there is no money in the reserve fund and the city spends more money than it has been appropriated in a given year then 50% more money (not counting the school department's budget) shall be put into the reserve fund for the next year.

- Within 10 days of the approval of the school department's budget, the department must create a reserve fund of at least 1% of its current budget.
- With the mayor and city council's approval, money can be removed from this fund after May 1st of that fiscal year.
- If there is no money in the reserve fund and the school department spends more money than it has available in a year then 50% more money shall be put into the reserve fund the next year.

SECTION 57.  EMPLOYEE SPENDING AND MOVING MONEY.
- Before the later of August 1st or within 10 days of the city budget's approval, each department head must give the department's budget for personnel (employees) to the city auditor.
- The school department may not spend more than 20% of its budget for personnel in the first two quarters of the fiscal year and it may not spend more than 30% in each of the remaining two quarters.
- All other departments may not spend more than 30% of the employee budget in the first two quarters of the fiscal year and may not spend less than 21% during the last two quarters.
- Whenever the city auditor finds that any department has no more personnel funds to spend in a quarter, he/she must notify the head of that department, the mayor, and the city council in writing.
- Whenever the city auditor makes this notification:
  - The mayor must, within 7 days, decide whether or not to stop the department from spending any more funds on personnel for that quarter
  - If the department has run out of money and the mayor orders a stop to further personnel spending then the city does not have to pay back any money the department spends in excess of the amount it has budgeted for that quarter
  - If the mayor does not stop employee spending then the department may continue current employee spending by taking money saved for future quarters and reducing the budget for those quarters by the amount taken; however, the department must get the mayor's approval for all such spending EXCEPT for spending needed to make prior wage corrections
  - The department and mayor must report all such actions to the city council within 7 days
- All collective bargaining agreements entered into by the city must have this section incorporated into them.
- The mayor cannot transfer more than $3 million of non-personnel funds from one place within a department to another EXCEPT for the school department.
- Unless 2/3 of the city council approves, the mayor may not take money for employee spending and give it to non-employee projects in a department if this movement would result in the firing of permanent appointees.
- No reallocation under this section may be made after April 15th.
- The city auditor will explain all movements of money and the reasons for those movements to the city council by April 30th every year.

SECTION 58.  GUARANTEES FOR THE HOSPITALIZATION AND INSURANCE ACCOUNT.
- The hospitalization and insurance account must be given at least as much money as was actually spent on it, on average, over the last 3 years.
- At least 10 working days before the proposed tax rate is submitted for approval, the city auditor notifies the board of assessors that there is enough money to pay insurance and healthcare benefits in collective bargaining agreements entered into by the City.

# PUBLIC FACILITIES COMMISSION AND SURPLUS PROPERTY

SECTION 59.  ACQUIRING/TAKING LAND FOR MUNICIPAL PURPOSES.
- The Public Facilities Commission may purchase any interest in land within the city or may take, by eminent domain, any interest in land within the city, EXCEPT for parks, playgrounds, and land belonging to:
  - The United States of America
  - The Commonwealth of Massachusetts
  - The Boston Housing Authority
  - The Boston Redevelopment Authority
- If the purchase price of the land is more than 25% higher than its average assessed value over the past 3 years then the city must take the land by eminent domain.

- No land may be taken until money for the project that will be undertaken on the land has been appropriated by the mayor and 2/3 of the city council.
- None of this affects the real property board or the public improvement commission.

SECTION 60.  CHANGING THE USE OF LAND.
- The public facilities commission may change the use and management of city lands with the permission of the mayor.  This provision specifically applies to school land.  This provision does not apply to parks and playgrounds.

SECTION 61.  LEASING OR SELLING SURPLUS LAND (EXCEPT PARKS AND PLAYGROUNDS).
- With the mayor's consent, the public facilities commission may lease or sell any surplus land to the federal government (including any agency thereof) or the state government (including any authority or political subdivision).
- With the mayor's permission, the public facilities commission may lease or sell any surplus land to a private party if the commission publishes notice in the City Record once a week for 2 weeks.

SECTION 62.  MONEY FROM THE SALE OF LAND.
- When the city sells a piece of land (except land acquired through tax title foreclosures) the money is spent as follows:
  - The amount of money that the city has spent to either buy or improve the property goes to the Surplus Property Disposition Fund and, from there, may only be spent on projects for which the city has permission to go into debt for ten years or more
  - Any proceeds remaining after that go to the capital fund, or, if a majority of the city council and the mayor approve, to the general fund

SECTION 63.  OFF-STREET PARKING STRUCTURES AS EXTRA PROPERTY.
- The Public Facilities Commission may sell off-street parking structures, as surplus discussed above, if a majority of the city council votes to give the structures to the Commission.

# MISCELLANEOUS PROVISIONS

SECTION 64.  LOANS MADE BY THE CITY OF BOSTON.
- All loans Boston issues must be repaid in annual payments according to the laws of Massachusetts.
- Any party paying back a loan to Boston cannot solely pay the interest during the loan term and repay the entire principal at the end of the loan term.
- When Boston issues bonds to raise money, it may only issue the amount in bonds up to the amount of funds that the city needs to raise.
- If a bank or trust company has an officer, director, or agent who is also a member of the sinking fund commissions board then that bank or trust may not receive any city or county money.

SECTION 65.  LIST OF DEPARTMENT EMPLOYEES.
- Between February 1st and February 6th each year, every department head must give the city auditor a list of its current employees.
- The list has must include each employee's:
  - Name
  - Street and ward
  - Title
  - Salary
  - Date of hiring and start date
- The auditor, after receiving the list, must:
  - Match the list with pay rolls
  - Open the list up for public inspection
  - Publish in the City Record, by April 10th, a table comparing the number of employees in each department for the past 10 years

SECTION 66.  POWERS OF THE BOARD OF STREET COMMISSIONERS.
- The board of street commissioners, with the mayor's approval, may:
  - Name the streets
  - Plant and remove trees in public places
  - Issue permits or licenses for:
    - Coasting
    - Storing gas, oil, flammable substances, or explosive compounds
    - Use of public ways for obstruction or projection for conduits, poles, and posts
- The mayor and city council shall determine the prices for these permits and licenses.

SECTION 67.  CONTENTS AND PUBLICATION OF THE CITY RECORD.
- The mayor's office must distribute the City Record at least once per week on terms fixed by the mayor and the city council.
- The City Record has notices for:
  - Sales of property because of non-payment of taxes
  - Public purchases and takings of land
  - Contracts for work, materials, or supplies
  - Sales of municipal bonds
  - A list of all contracts that the city has awarded, worth more than $1,000, with the names of bidders and amounts of bids
  - Appointments by the mayor
  - Changes in number and salary of employees in each department
  - Proceedings of the city council and the school committee with communications from the mayor (N.B. this section prohibits the publication of the substance of debates by and among the City Council if such publication is at the expense of the City of Boston)
- Failure to obey the mayor's order of publication does not cancel any purchase, contract, or sale made by the city.

SECTION 68.  MAKING CERTAIN CONTRACTS AND PUBLISHING PROPOSALS.
- When a city employee is authorized to build a new building, or make structural changes to an existing building with city funds, he/she cannot make more than 5 contracts and the mayor must agree to each contract before that contract can take effect.
- When the work costs more than $10,000, unless the mayor says otherwise in writing, the City Record shall publish requests for proposals, and such requests for proposals shall state the time and place for looking at the proposals and explain that an officer or board can reject any proposal.
- If the mayor says that the City Record does not need to ask for proposals then the City Record must publish an explanation from the department head as to why not.

SECTION 69.  REQUIREMENTS OF CONTRACTS (SURETIES).
- All contracts made for Boston or the county of Suffolk that are for more than $10,000 and will be paid entirely from the city treasury must be in writing.
- All such contracts need:
  - Approval of the mayor
  - Auditor certification that there is enough money to pay for the contract
  - Bond or deposit left with the city auditor
- No contract may change unless there is written agreement, with mayoral approval, between:
  - The contractor
  - The people who promise to pay for the contractor if he/she cannot pay
  - The officer, board, or official making the contract

## THE SCHOOL COMMITTEE AND SUPERINTENDENT

SECTION 70.  CREATING A SCHOOL COMMITTEE.
- The mayor appoints the 7-member school committee of Boston residents and should strive to appoint a committee that represents the ethnic, racial, and socioeconomic diversity of the public school population.

SECTION 71.  SCHOOL COMMITTEE TERMS AND ELECTION OF PRESIDENT.
- School committee members serve for 4 years, starting on the 1st Monday in January, unless the nominating panel re-nominates any members and the mayor grants the member(s) another term.
- The school committee elects its president at the 1st meeting of the year.

SECTION 72.  APPOINTING A SUPERINTENDENT AND DUTIES OF SUPERINTENDENT.
- A majority of the school committee elects and hires a resident of the city to serve as superintendent for 6 years or less and they may remove him/her by 3/5 vote after finding good cause for removal, giving proper notice, and holding a public hearing.
- The school committee decides the superintendent's salary.
- The superintendent enforces and enacts all school committee decisions and must give a recommendation before the school committee can act.
- The superintendent's recommendation must include an estimate of how much more or less a project will cost when compared to similar projects and its source of funding.
- The superintendent can present his recommendation:
  - At a meeting where the school committee raises an issue needing his recommendation
  - At the next regularly-scheduled school committee meeting
- If the superintendent fails to make a recommendation in the required time period then the school committee can act without a recommendation from the superintendent.
- Soon after his or her appointment or re-appointment, the superintendent must give the school committee a plan for enacting and enforcing the school committee's decisions.
- The school committee has until September 1st to accept the superintendent's plan by a 2/3 vote.

SECTION 73.  SUPERINTENDENT'S AUTHORITY TO HIRE, FIRE, AND PROMOTE.
- Anyone paid from the school department's budget for providing service to the school department is considered a school department employee for this section.
- Only the superintendent may hire and promote school department employees EXCEPT for:
  - The community superintendent
  - School committee chairman
  - School committee secretary
  - School committee treasurer
  - School committee administrative assistants
  - Special assistant corporation counsel
- When hiring or promoting a community superintendent:
  - The superintendent must give a recommendation for the position to the school committee at a regularly scheduled meeting
  - The appointment is deemed to be approved unless the majority of the school committee votes to object within 5 working days and then the appointment can only be approved if a majority of school committee members vote to overcome the objection
  - If the committee does not object then the community superintendent action is automatically approved on the 6th working day after the meeting
- The superintendent decides how much school department employees are paid EXCEPT for members of the school committee or as otherwise directed by a collective bargaining agreement.  When making this decision, the superintendent must follow the terms of collective bargaining agreements entered into by the city and he or she must follow the laws of Massachusetts.
- The school committee decides how much its administrative assistants are paid.
- The superintendent may suspend, lay-off, demote, remove, or dismiss any school department employee except for school committee members and their administrative assistants.
- When the superintendent is taking one of the actions described above, these actions shall be considered actions of the school committee and he/she shall have both the powers and obligations/limitations of the school committee.
- In taking one of the employment actions listed above, the superintendent must provide notice and a hearing if one would otherwise be required.
- This section shall not affect the rights of teachers under M.G.L. c. 71, ss. 42, 43a, and 43b.

SECTION 74.  BUDGET AND CONTRACTS.
- The school committee may allow the superintendent to accept and spend gifts of money for the school department.
- Every 3 months the superintendent tells the school committee, city auditor, and city office of budget and program evaluation where the money came from, where it needs to be spent, and how much money is left.
- The superintendent may not hire anyone for which there is not the money to hire.
- Every year the superintendent gives the school department's budget to the school committee before the 1st Wednesday in February.
- The school committee may make changes or final decisions (it may adopt, reject, reduce, or increase any item) on any item in the budget, but if it fails to vote yes or no on the entire budget before the 4th Wednesday in March then the budget is automatically approved.
- After the mayor gets the budget and accepts or reduces the total amount by the 2nd Wednesday in May, he/she must then submit that budget to the city council to set aside the necessary funds.
- Only the superintendent has the power to make contracts for the school committee, except for collective bargaining agreements and contracts for the transportation of students, and to make sure that all contracts made are followed.

SECTION 75.  GETTING AND SPENDING SCHOOL DEPARTMENT MONEY.
- The city shall give the public schools enough money to operate but is not required to give more than is allocated to the public schools.
- Only the school committee decides where the money in the budget goes, but the city auditor may restrict the movement of school money if he/she thinks the committee will spend more money on a specific purpose than they are given for that purpose.
- If the school committee wishes to start a program it does not currently have money for after the 4th Wednesday in March then it must amend the current budget by taking enough money to pay for the new program away from other programs unless there is enough money for the new program in the next year's budget.
- The superintendent must give a monthly report to the school committee, the city auditor, and the city office of budget and program evaluation on how much money the school department has spent so far and how much it plans to spend in the future.
- The superintendent may make contracts for buying books for the next fiscal year after the 4th Wednesday in March as long as the amount of those contracts is not more than the amount of the last fiscal year's book contracts and as long as he/she asks for enough money to cover the new contracts in the next fiscal year's budget.

SECTION 76.  ADMINISTRATIVE ASSISTANT TO THE SCHOOL COMMITTEE.
- Members of the school committee do not have authority to hire personal staff but the school committee president can hire a paid administrative assistant.

SECTION 77.  NOMINATING PANEL.
- The city has a 13-person panel that nominates candidates for the school committee.
- The panel must consist of:
  - 4 parents of children in Boston public schools:
    - 1 selected by the citywide parents council
    - 1 selected by the citywide educational coalition
    - 1 selected by the Boston special needs parent advisory council
    - 1 selected by the bilingual education citywide parent advisory council
  - 1 teacher from the Boston public school system who is a member of and selected by the teacher's union
  - 1 headmaster or principal in the Boston public school system who is a member of and selected by the Boston association of school administrators and supervisors
  - 1 president of a public or private college or university selected by the Massachusetts chancellor of higher education
  - The Massachusetts commissioner of education
  - 4 people appointed by the mayor
  - 1 seat, filled by 1 of the following three 3 people, each serving for 1 year, in a fixed 3 year rotation:
    - 1 person who is a member of and selected by the private industry council
    - 1 person who is a member of and selected by the Boston municipal research bureau
    - 1 person who is a member of and selected by the Boston chamber of commerce
- Members are appointed before September 30th and each serves for 2 years.

- If a member cannot complete a term then whomever selected that member selects the replacement.

SECTION 78.  CHOOSING NOMINEES FOR THE SCHOOL COMMITTEE.
- Each year the panel selects a chairman who gives a list of the members of the panel to the city clerk.
- The panel meets in public on the 1st Wednesday in October to select 3 to 5 nominees for each school committee member office that will become vacant on the 1st day of the next year.
- The panel must give this list to the mayor by the 1st Monday in December.  If the panel does not present this list then the mayor may appoint anyone he/she wishes to the school committee.
- If an unexpected vacancy occurs in the school committee then the panel meets within 10 days of notice of the vacancy and gives a list of 3 to 5 nominees to the mayor within 30 days of the meeting.  If they do not give the mayor a list then he/she may appoint anyone he/she chooses.
- The mayor must select a replacement within 15 days of getting this list.

## APPENDIX J
## OATH OF MAYOR/CITY COUNCILLOR

I, <NAME OF MAYOR/COUNCILLOR>, do solemnly swear, that I will bear true faith and allegiance to the Commonwealth of Massachusetts, and will support the Constitution thereof, so help me God.

I, <NAME OF MAYOR/COUNCILLOR>, do solemnly swear that I will faithfully and impartially discharge and perform all the duties incumbent on me as <a member of the City Council // or // Mayor> of the City of Boston, according to the best of my abilities and understanding, agreeably to the rules and regulations of the Constitution and the laws of the Commonwealth, so help me God.

I, <NAME OF MAYOR/COUNCILLOR>, do solemnly swear that I will support the Constitution of the United States, so help me God.

**APPENDIX K**
**CALENDAR FOR ELECTION CYCLE**

| | |
|---|---|
| First hour and day for filing a statement of candidacy/making application for a nomination petition with the Boston Election Commission at the Boston Election Department. | 9:00 a.m. on the day following the 23rd Tuesday preceding the preliminary election. |
| First hour and day for issuance of a nomination petition by the Boston Election Commission at the Boston Election Department. | 9:00 a.m. on the 21st Tuesday preceding the preliminary election. |
| Last hour and day for filing a statement of candidacy/making application for a nomination petition with the Boston Election Commission at the Boston Election Department. | 5:00 p.m. on the 19th Tuesday preceding the preliminary election. |
| Last hour and day for issuance of a nomination petition by the Boston Election Commission at the Boston Election Department. | 5:00 p.m. on the 19th Tuesday preceding the preliminary election. |
| Last hour and day for filing the nomination petition with the Boston Election Commission at the Boston Election Department. | 5:00 p.m. on the 18th Tuesday preceding the preliminary election. |
| Last hour and day for the Boston Election Commission to complete its certification of signatures on the nomination papers. | 5:00 p.m. on the 13th Tuesday preceding the preliminary election. |
| Last hour and day for filing a withdrawal from nomination and/or an objection to the validity of a nomination petition with the Boston Election Commission at the Boston Election Department. | 5:00 p.m. on the 12th Tuesday preceding the preliminary election. |
| Last hour and day for filing a certificate of substitution with the Boston Election Commission at the Boston Election Department. | 5:00 p.m. on the day following the 12th Tuesday preceding the preliminary election. |
| Day of the preliminary municipal election. | The 6th Tuesday preceding the biennial municipal election. |
| Day of the biennial municipal election. | The first Tuesday after the first Monday in November. |

[*See* Sections 21, 22, 23, 24, 24A, 25, 26, 26A, 26B of the Boston City Charter]

# TABLE OF AUTHORITIES

**Selected Acts and Resolves of Massachusetts
Affecting the City of Boston**

| | |
|---|---|
| Acts of 1822, c. 110 | Acts of 1955, c. 60 |
| Acts of 1854, c. 448 | Acts of 1956, c. 665 |
| Acts of 1890, c. 418 | Acts of 1957, c. 150 |
| Acts of 1906, c. 231 | Acts of 1966, c. 642 |
| Acts of 1908, c. 562 | Acts of 1970, c. 583 |
| Acts of 1909, c. 486 | Acts of 1972, c. 150 |
| Acts of 1914, c. 730 | Acts of 1974, c. 276 |
| Acts of 1919, c. 222 | Acts of 1976, c. 78 |
| Acts of 1919, c. 269 | Acts of 1982, c. 190 |
| Acts of 1921, c. 288 | Acts of 1982, c. 605 |
| Acts of 1924, c. 479 | Acts of 1983, c. 342 |
| Acts of 1934, c. 185 | Acts of 1983, c. 643 |
| Acts of 1934, c. 227 | Acts of 1986, c. 343 |
| Acts of 1936, c. 152 | Acts of 1986, c. 701 |
| Acts of 1936, c. 224 | Acts of 1987, c. 613 |
| Acts of 1938, c. 263 | Acts of 1989, c. 596 |
| Acts of 1939, c. 156 | Acts of 1991, c. 108 |
| Acts of 1941, c. 604 | Acts of 1992, c. 272 |
| Acts of 1947, c. 120 | Acts of 1992, c. 373 |
| Acts of 1947, c. 447 | Acts of 1993, c. 233 |
| Acts of 1948, c. 452 | Acts of 1993, c. 341 |
| Acts of 1949, c. 222 | Acts of 1995, c. 147 |
| Acts of 1951, c. 111 | Acts of 1996, c. 328 |
| Acts of 1951, c. 182 | Acts of 1998, c. 262 |
| Acts of 1951, c. 376 | Acts of 2001, c. 170 |
| Acts of 1952, c. 190 | Acts of 2004, c. 476 |
| Acts of 1953, c. 473 | Acts of 2006, c. 111 |
| Acts of 1954, c. 24 | |

| **City of Boston Code** | **Massachusetts General Laws** |
|---|---|
| CBC 2-7.11 | M.G.L. c. 39 |
| CBC 2-8.1 | M.G.L. c. 44, s. 53A |
| CBC 2-9.1/CBC 2-9.2 | M.G.L. c. 59, s. 21C (Prop. 2½) |

> N.B.  Numerous other General Laws, Special Laws, and Ordinances affect the powers and duties of the City of Boston.  This publication has been limited to the Form of Government and the broadest and most fundamental operations of the government of the City of Boston.