UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-cv-10285-AK

SHANA MARIE COTTONE; DENICE BARRASSO;
JASON ANDREW DUNTON; NAOMI HASTINGS;
LAURA ANN LASDOW; SHANNON LUNDIN; KELLY
DIVER, individually and as Guardian of J.D.; YINETTE
FUERTES, individually and as Guardian of J.B.; GINA
CASTIELLO, JAYMES LEAVITT; JOANNE HALPIN;
JOEL GREENBERG; MIRIAM CARRASQUILLO;
SHAWN NELSON; KARINA DEMUCHYAN;
CATHERINE VITALE; JORGE MENDOZA; CARLES
GOMES; and SAVIEL COLON,

     Plaintiffs,

v.

CITY OF BOSTON; MAYOR MICHELLE WU OF THE
CITY OF BOSTON; in her Official and Personal
Capacities; BOSTON PUBLIC HEALTH COMMISSION
EXECUTIVE DIRECTOR DR. BISOLA OJIKUTU, M.D.,
MPH, in her Official and Personal Capacities; BOSTON
PUBLIC HEALTH COMMISSION,

     Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY OF BOSTON AND MAYOR
MICHELLE WU'S MOTION TO DISMISS**

In this action Plaintiffs challenge the constitutionality of the City's "B Together" COVID-19 vaccine requirement for certain indoor spaces. They claim that the vaccine requirement—which was in effect for approximately two months during the height of a global pandemic—violated their individual rights to equal protection and due process under the Fourteenth

Amendment and they challenge the City's authority to adopt such a requirement altogether.[1]  But

Plaintiffs here do not have standing because they have not been injured in a concrete and

particularized way that is traceable to the City's decision to adopt the temporary vaccine

requirement.  What is more, courts across the country have consistently found that these types of

challenges to public health orders fail as a matter of law because government action aimed at

protecting the public from deadly viruses passes constitutional muster.  For these reasons,

Plaintiffs' Second Amended Complaint ("Complaint") must be dismissed.

## I.    FACTS

The order at issue (the "Order"), entitled "Temporary Order Requiring COVID-19

Vaccination for Indoor Entertainment, Recreation, Dining, and Fitness Settings in the City of

Boston", was issued on December 20, 2021 and lifted on February 18, 2022.[2]  See Order, attached

hereto as Exhibit 1.[3]  The Order was issued by the Boston Public Health Commission ("BPHC")

---

[1] Count 4 of Plaintiffs' Complaint alleges that "[e]ach of the named Plaintiffs had at least one of their constitutional rights to equal protection, equal treatment, and due process of law violated by the Order[.]"  See ECF No. 5 at ¶ 62.  As the City is not aware of a constitutional right to "equal treatment", the City treats Plaintiffs' "equal treatment" claim as an equal protection claim.

[2] Plaintiffs state in their Complaint, filed on May 2, 2022, that they are no longer seeking injunctive relief.  See ECF No. 5 at p. 2.  This is appropriate given that any request for declaratory or injunctive relief would be moot since the Order was lifted on February 18, 2022.  See Am. Civil Liberties Union of Mass. V. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (holding that a lawsuit becomes moot and the federal court lacks jurisdiction "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"); United States v. Reid, 369 F.3d 619, 624-26 (1st Cir. 2004) (request for injunctive relief on constitutional claims rendered moot by expiration of the administrative order creating the basis for plaintiff's asserted constitutional deprivation).

[3] This Court may consider the Order on a motion to dismiss because it is "integral to or explicitly relied upon in the complaint, though not attached to the complaint."  Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000).  Additionally, the Order at issue is a "matter of public record" that is subject to judicial notice under Fed. R. Evid. 201.  See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).   Throughout the COVID-19 pandemic, "[c]ourts presiding over similar cases have taken judicial notice of Public Health Orders and scientific consensus regarding the coronavirus."  Legacy Church, Inc. v. Kunkel, 472 F. Supp. 3d 926, 1066-67 (D.N.M. 2020).

in response to the COVID-19 public health emergency and required patrons, full- or part-time employees, interns, volunteers, or on-site contractors to display proof of vaccination before entering certain indoor premises. Exhibit 1, p. 1. As justification for the Order, the BPHC stated that "vaccinated individuals are less likely to develop serious symptoms or spread COVID-19" and noted that the positivity rate in Boston had risen to 6.7% since a low of 0.4% in June 2021 and that the percentage of occupied ICU beds for adults had reached 94.5%, approaching the BPHC's 95% threshold of concern. Exhibit 1, p. 1. Per the terms of the Order, it was enacted "to prevent the spread of COVID-19 to the maximum extent possible" and "[f]ailure to comply with any of the provisions of this Order constitute[d] an imminent and immediate threat to public health." Exhibit 1, p. 2. The Director of the BPHC determined that these "temporary measures" relative to "certain indoor settings" were "necessary to prevent the spread and resurgence of COVID-19 in Boston". Exhibit 1, p. 2.

The Order goes on to identify the indoor premises covered by the Order. Exhibit 1, p. 2. They include indoor food services, indoor entertainment, recreational and event venues, and indoor gyms and fitness settings. Exhibit 1, p. 2. The Order exempts individuals from displaying proof of vaccination prior to entry in a number of limited circumstances. Exhibit 1, p. 2. Relevant here, the Order exempts an individual from displaying proof of vaccination if the individual is "entering [a covered premises] for a quick and limited purpose (for example, using the restroom, placing or picking up an order or service, making a delivery, or performing necessary repairs)[.]" Exhibit 1, p. 2. Likewise, the Order does not require any "performing artist not regularly employed by the covered entity while they are in a covered premises for purposes of performing" to display proof of vaccination. Exhibit 1, p. 2.

The Order authorizes a fine of $300 for each violation.  Exhibit 1, p. 4.  The Order does

not mandate vaccination.  Exhibit 1.

## II.     STANDARD OF REVIEW

### A.      Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of constitutional standing is a challenge to the court's subject

matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  See Katz v. Pershing, LLC, 672 F.3d 64,

70 (1st Cir. 2012).  The party asserting federal jurisdiction has the burden of demonstrating its

existence.  See Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  Dismissal is appropriate

when the facts alleged in the complaint, taken as true and given all reasonable inferences, do not

support a finding of federal subject matter jurisdiction.  See Fothergill v. United States, 566 F.3d

248, 251 (1st Cir. 2009).  A challenge to the court's subject matter jurisdiction should ordinally be

addressed before addressing the merits of the case.  See Acosta-Ramírez v. Banco Popular de P.

R., 712 F.3d 14, 18 (1st Cir. 2013) (citing Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir.

2002)).

### B.      Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant

to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.

See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal

allegations.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions

are not entitled credit.  Id.  Second, the Court must "take the complaint's well-pled (i.e., non-

conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. If they do not, then dismissal is warranted. See Ocasio-Hernández v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## III.    ARGUMENT

As an initial matter, Plaintiffs' Complaint is, at its core, directed at the BPHC, not the City. The Order was issued by the BPHC, not the City. The Order was lifted by the BPHC, not the City. Other than alleging—incorrectly—that the BPHC was created by the Mayor of the City of Boston,[4] Plaintiffs' Complaint does not allege any facts against the City in particular and should be dismissed for this reason alone. See Fed. R. Civ. P. 8; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007) (explaining that the Rule 8 pleading standard does not require "detailed factual allegations" but it does demand more than an "unadorned, the-defendant-unlawfully-harmed me accusation" and "naked assertion[s]" devoid of "further factual enhancement" do not suffice). That said, even if Plaintiffs' allegations could be construed as alleging facts against the City, they still fail as a matter of law because 1) Plaintiffs do not have standing; and 2) Plaintiffs fail to state a claim for a constitutional violation.

### A.    Standing Pursuant to Fed. R. Civ. P. 12(b)(1).

To establish constitutional standing, plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [the City], and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

To establish "injury in fact", a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural

---

[4] The BPHC was created by statute, the Boston Public Health Act of 1995, St. 1995, c. 147.

or hypothetical". <u>Id</u>. The "concrete and particularized" element "demands that a plaintiff must have personally suffered some harm." <u>Katz</u>, 672 F.3d at 71. "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" <u>Id.</u> The "actual or imminent" element "ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time." <u>Katz</u>, 672 F.3d at 71.

Since the outbreak of COVID-19 courts have had occasion to consider "injury in fact" standing arguments in the context of challenges to public health orders that mandate vaccination, masking, or proof of vaccination prior to entry in certain spaces. The Eastern District of New York's decision in <u>Remauro v. Adams</u>, No. 21-CV-4553 (ARR) (TAM), 2022 WL 1525482 (E.D.N.Y. May 13, 2022), is particularly instructive. There, several plaintiffs filed suit because they objected to New York City's requirement that they provide proof of vaccination prior to entry in certain indoor spaces. <u>Id.</u> at *5. When New York City challenged plaintiffs' standing, the court agreed and concluded that plaintiffs failed to allege that they had been personally injured by the requirement—by, for example, "being asked to show proof of vaccination or being fined for refusing to do so." <u>Id.</u> (citing <u>Bechade v. Baker</u>, No. 20-CV-11122 (RGS), 2020 WL 5665554, at *2-3 (D. Mass. Sep. 23, 2020) (concluding that a plaintiff challenging Massachusetts' mask mandate did not have standing because she had not alleged that she was personally forced to wear a mask on any occasion)). The court reasoned that while plaintiffs may be "deeply committed to their belief that these requirements are unlawful, their objections do not show that they suffered a personal and individual injury beyond their generalized grievance." <u>Remauro</u>, at *5; <u>see also</u> <u>United States v. AVX Corp.</u>, 962 F.2d 108, 114 (1st Cir. 1992) ("[a] mere interest in an event— no matter how passionate or sincere the interest and no matter how charged with public import the

event—will not substitute for an actual injury").  Put another way, being <u>subject</u> to a mandate is

not akin to being <u>injured</u> by a mandate.  <u>See</u> <u>Bechade</u>, 2020 WL 5665554, at *2-3.

    Here, the following Plaintiffs do not have standing because they have not alleged a personal

injury that moves beyond a generalized grievance:

- **Cottone.**  She alleges that, in defiance of the Order, she entered a pizza establishment and police had to be called.  ECF No. 5 at ¶ 26.  By her own allegations, then, Cottone was not prevented from entering a covered premises and did not suffer an injury because of the Order.

- **Barrasso**.  She alleges that she "was unable to visit establishments covered by the order, either alone or with family members."  ECF No. 5 at ¶ 26(c).  There are no allegations that she attempted to go to any of these establishments.

- **Lasdow**.  She alleges that she had to travel outside of Boston to have a "night out" with her husband or go to the gym.  ECF No. 5 at ¶¶ 30(a-c).  There are no allegations that she attempted to have a "night out" or go to the gym in Boston.

- **Diver.**  She alleges she could not take her son to certain exhibits at the zoo, as well as a number of "other establishments", because of the Order.  ECF No. 5, ¶ 32.  There are no allegations she attempted to gain access to these indoor exhibits or establishments.

- **Fuertes**.  She alleges that she could not take her daughter to Boston's museums and restaurants.  ECF No. 5 at ¶ 33(a).  There are no allegations that she attempted to go to Boston's museums and restaurants.

- **Castiello**.  She alleges she could not go to "any of the covered establishments, which she had previously done."  ECF No. 5 at ¶ 34(b).  There are no allegations that she attempted to go to any of the covered establishments.

- **Greenberg**.  He alleges that he "was unable to stop for [food] breaks in Boston[.]"  ECF No. 5 at ¶ 37(c).  There are no allegations that he attempted to stop for breaks in Boston.[5]

- **Carrasquillo**.  She alleges that she was afraid she might lose "income, benefits, and health insurance" as a result of the Order.  ECF No. 5 at ¶ 38(c).  There are no allegations that she actually did lose her income, benefits, or health insurance.

- **Nelson**.  He alleges that he was "unable to enter any of the covered entities."  ECF No. 5 at ¶ 39(b).  There are no allegations that he attempted to enter any of these entities.

---

[5] What is more, Greenberg would have been exempted from the Order had he attempted to pick up a take-out order.  <u>See</u> <u>Exhibit 1</u>, p. 2 (permitting individuals to pick up an order without displaying proof of vaccination).  There are no allegations he attempted to place a take-out order.

- **Demurchyan.** He alleges he had to "restrict where to meet clients" and "forego important meetings with clients in Boston." ECF No. 5, ¶ 40(b-c). There are no allegations that his business suffered in any way because of these missed meetings.

- **Vitale.** She alleges she defied the Order and refused to show proof of vaccination in a Boston restaurant. When police were called to the scene, she left of her own volition because she was embarrassed. ECF No. 5, ¶ 41. There are no allegations that anyone forced her to leave the restaurant.

At most, these allegations establish that these Plaintiffs were subject to the Order—not that they were injured by the Order. In the absence of an "injury in fact" these Plaintiffs do not have standing. See Remauro at *5; Bechade, 2020 WL 5665554, at *2-3; Strong v. Zucker, No. 21-CV-6532L, 2022 WL 896525, at *3 (W.D.N.Y. Mar. 28, 2022) (noting that refraining from going to places that require proof of vaccination is not an injury for purposes of Article III standing).

Turning next to the "traceability" element. The "traceability" element "requires the plaintiff to show a sufficiently direct causal connection between the challenged conduct and the identified harm." Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020) (quoting Katz, 672 F.3d at 71). The causal connection between the injury and the conduct complained of has to be "fairly…trace[able] to the challenged action of the defendant, and not [the] result [of] the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (citing Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 41-42 (1976)). "Although an indirect causal relationship is not prima facie fatal, an injury is less likely to satisfy this requirement where the causal chain between the defendant's action and the alleged harm depends on actions of a third party." Delaney v. Baker, 511 F. Supp. 3d 55, 68 (D. Mass. 2021). Where, as here, the plaintiff's asserted injury arises from the government's regulation of someone else (in this case, certain indoor spaces), constitutional standing is "'substantially more difficult to

8

establish.'"   Lawrence v. Polis, 505 F. Supp. 3d 1136, 1149 (D. Colo. 2020) (citing Lujan, 504

U.S. at 562).

Here, Plaintiffs seem to suggest—though do not specifically allege—that had the Order not

issued 1) the indoor spaces covered by the Order would have permitted them to enter without proof

of vaccination; and 2) those Plaintiffs who either lost business or their jobs would have kept them.

But Plaintiffs do not allege any facts in support of these inferences and, in line with the cases that

have emerged regarding "traceability" in the context of COVID-19 mandates, this is fatal to their

ability to establish standing.   In Delaney, for example, the plaintiff alleged that a state-wide

executive order regarding masks in places of worship caused his church to institute a mask mandate

(which, in turn, was infringing upon his constitutional rights).    Delaney, 511 F. Supp. 3d at 70.

The court found plaintiff lacked standing because there was no evidence his church would operate

differently in the absence of the order, and plaintiff ultimately bears the burden to "adduce facts

showing that those choices have been or will be made in such a manner as to produce causation

and permit redressability of injury."   Id. (citing Lujan, 504 U.S. at 562).

In addition to the Plaintiffs identified above who necessarily cannot prove traceability

because they cannot establish an injury in fact, the following Plaintiffs cannot establish

traceability:

- **Hastings.**  She alleges she was barred from working as a carpenter in certain locations because they were entities covered by the Order.  ECF No. 5, at ¶ 29(a).

- **Duntin.**  A gym owner, he alleges he experienced a 30% drop in business once the Order became effective.  ECF No. 5, at ¶ 28(c).

- **Lundin.**  She alleges she was terminated from her employment at Massachusetts General Hospital because of the Order.  ECF No. 5, at ¶ 31(b).  But as an employee of Massachusetts General Hospital Lundin was subject to the hospital's own internal mandatory vaccination policy.  See Together Employees v. Mass General Brigham Incorporated, Civil Action No. 21-11686-FDS, 2021 WL 5234394, at *2 (D. Mass. Nov. 10, 2021).

- **Leavitt.**  A part-time musician, he alleges he was "unable to perform with the band" at a number of covered establishments who required proof of vaccination.  ECF No. 5, ¶ 35.  But the Order specifically exempted Leavitt from providing proof of vaccination under these circumstances (see Exhibit 1, p. 2), so any requirement that he do so must have been imposed by the third-party establishments.

- **Halpin.**  She alleges she lost her job at a Boston hotel because the Order did not allow for exemptions to the vaccination requirement.  ECF No. 5, ¶ 36.  But hotels are not identified as covered premises under the Order, so any requirement that she provide proof of vaccination must have been imposed by her third-party employer.

- **Colon.**  A police officer, he alleges he could not work because of the Order.[6]  ECF No. 5, ¶ 44.  But, as an employee of the City, Colon was subject to mandatory vaccination pursuant to a separate City mandate that is not part of this litigation.[7]

- **Mendoza.**  A restaurant owner, he alleges he lost business and customers because of the Order.  ECF No. 5, ¶ 42.

- **Gomes.**  A restaurant owner, he alleges he lost business and customers because of the Order.  ECF No. 5, ¶ 43.

The injuries these Plaintiffs allege are too tenuous to be "fairly traceable" to any action by the City.

The Plaintiffs' claims that they lost business because of the Order are too speculative to give rise

to standing; patrons could have decided not to frequent the Plaintiffs' restaurants or gyms for any

number of reasons, including general unease about being in a crowded, public space in the midst

of a pandemic.  The same holds true for the Plaintiffs who claim to have lost their jobs because of

the Order.  These third-parties could have terminated Plaintiffs for any number of reasons,

including their own internal policies regarding vaccination.

---

[6] He also alleges he could not go to zoos or museums with his family but, like the Plaintiffs identified above, he fails to state an injury in fact because there are no allegations he actually attempted to visit these zoos or museums.

[7] Colon has challenged the City's mandatory vaccination policy for employees in a separate matter that is currently pending before the Equal Employment Opportunity Commission (Docket No. EEOC 523-2022-00971).

Because the Plaintiffs have failed to allege that they were injured by the Order in a way that is fairly traceable to the City, the Plaintiffs have failed to establish constitutional standing and their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### B.      Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs' Complaint asserts four claims.  Only three are advanced against the City.[8]  The claims against Mayor Wu in her official capacity are the equivalent of claims against the City and should be dismissed for the reasons described below.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).

### 1.      Count I Must Be Dismissed Because The City Does Not Enact State Statutes And Plaintiffs Fail To Satisfy The Rule 8 Pleading Standard.

Count I alleges that the state statute that enables local boards of health to issue reasonable health regulations is unconstitutional both on its face and as applied in this case because it "enabled the Defendants to make an unreasonable Order[.]"  Putting aside the fact that the Supreme Court has explicitly found that "the state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety", see Jacobson v. Massachusetts, 197 U.S. 11, 25 (1905), the City is not part of the legislative process for enacting statutes in Massachusetts and has no ability to address the constitutionality of a state statute.  Count I should be dismissed against the City for this reason alone.  But even if Plaintiffs could demonstrate that the City has standing to address the constitutionality of a state statute, Plaintiffs fail to satisfy the Rule 8 pleading standard because they do not allege any facts that are entitled to the presumption of truth in support of their claim.

---

[8] Plaintiffs' Complaint does not delineate which claims are advanced against which defendants. During the parties' 7.1 conference, Plaintiffs' counsel indicated that Counts I, II and IV were directed towards the City, while Count III was not.  To that end, the merits of Count III have not been addressed in the City's motion.

While Plaintiffs insist that "showing proof of vaccination has no, or little, effect on stopping the spread of COVID-19", in light of overwhelming scientific proof to the contrary,[9] Plaintiffs' allegations amount to nothing more than "unsubstantiated conclusions" that this Court need not credit on a motion to dismiss.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).  In the absence of any facts as to how the Order was unreasonable or how the City would be responsible for the enabling statute, Count I must be dismissed.

### 2.      Count II Must Be Dismissed Because The BPHC Was Created By Statute.

Count II alleges that the BPHC was unconstitutionally created by the City's Mayor.  This is simply inaccurate.  The BPHC was created by statute.  See Boston Public Health Act of 1995, St. 1995, c. 147.  As such, Count II fails to state a claim against the City and must be dismissed.

### 3.      Count IV Must Be Dismissed Because Plaintiffs Fail To State A Claim For An Equal Protection Or Due Process Violation.

In Count IV Plaintiffs allege that the Order violated their constitutional rights to equal protection and due process.  But Plaintiffs fail to state a claim for these constitutional violations as a matter of law.

### a.  *Overarching principles in addressing challenges to the government's exercise of emergency authority during a public health crisis.*

The Supreme Court has explained that "judicial review of claims challenging the exercise of emergency authority during a public health crisis, such as the COVID-19 pandemic, is only

---

[9] According to the Centers for Disease Control and Prevention ("CDC"), getting vaccinated is the best way to slow the spread of COVID-19.   See https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.    Throughout the COVID-19 pandemic, courts presiding over similar cases have taken judicial notice of information from the CDC which is "not subject to reasonable dispute."  See Gent v. CUNA Mutual Insurance Society, 611 F.3d 79 (1st Cir. 2010); see also Fortuna v. Town of Winslow, No. 1:21-cv-00248-JAW, 2022 WL 2117717 (D. Me. Jun. 13, 2022).

available in limited circumstances." Kozlov v. City of Chicago, No. 21 C 6904, 2022 WL 602221, at *3 (N.D. Ill. Feb. 28, 2022) (citing S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613-14 (2020)).  This is because "[o]ur Constitution entrusts '[t]he safety and the health of the people' to the politically accountable officials to the States 'to guard and protect.'" Id. at 1613 (quoting Jacobson, 197 U.S. at 38).  To that end, more than a century ago during the smallpox epidemic the Supreme Court developed a framework by which to evaluate a State's exercise of its emergency authority during a public health crisis.  See generally Jacobson, 197 U.S. at 27.  At that time the Supreme Court explained that "[u]pon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members."  Id.  The Supreme Court affirmed these principles during the COVID-19 pandemic in 2020, noting that a state's emergency decisions during a public health crisis "should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people."  S. Bay, 140 S. Ct. at 1613-14 (Roberts, C.J., concurring).

As a result, if a state implements emergency measures during an epidemic that curtail individual rights, courts uphold such measures unless they have "no real or substantial relation" to public health or are "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." [10]  Jacobson, 197 U.S. at 31; see also Harris v. Univ. of Mass., 557 F. Supp. 3d 304, 313 (2021) (citing Roman Cath. Diocese v. Cuomo, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (explaining that Jacobson is "essentially…rational basis review").

---

[10] This test articulated by the Jacobson court in 1905 has been filtered through the lens of subsequent Supreme Court jurisprudence but remains good law.  That said, even if this Court were to find that the Jacboson test is no longer appropriate, the Order still passes rational basis review.

b. *Equal Protection.*

The Equal Protection clause requires that government treat all similarly situated people alike.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  Where, as here, the order at issue does not burden a fundamental right or implicate classifications subject to heightened scrutiny,[11] to pass constitutional scrutiny courts consider whether the order is rationally related to a legitimate government interest.  See World Gym, Inc. v. Baker, 474 F. Supp. 3d 426, 432 (D. Mass. 2020) (citing Dickerson v. Latessa, 872 F.2d 1116, 1119 (1st Cir. 1989)).  The "rational-basis review" is a "highly deferential" review which presumes the order is constitutional.  See Romer v. Evans, 517 U.S. 620, 631 (1996).  The Supreme Court has held that "[s]temming the spread of COVID-19 is unquestionably a compelling interest" rather than merely a legitimate one.  Roman Catholic Diocese, 141 S. Ct. at 67.  In accordance with that precedent this Circuit has found that "few interests are more compelling than protecting public health against a deadly virus."  Does 1-6 v. Mills, 16 F.4th 20, 32 (1st Cir. 2021).  A regulation will be considered rationally related to a legitimate government interest and upheld against an equal protection challenge so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification between the persons."  F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).  Where "plausible reasons" exist for government action, the Court's "inquiry is at an end."  Id. at 313-14.  To that end, where government has regulated in efforts to curb the COVID-19 virus and protect its healthcare system, courts across the country have consistently found those regulations to be rationally related to a legitimate

---

[11] In their Complaint Plaintiffs do not identify any suspect class or classification that would be subject to heightened scrutiny.  At most, Plaintiffs seem to suggest that the Order treats unvaccinated people differently than vaccinated people.  But unvaccinated people do not constitute a suspect or "quasi-suspect" class for purposes of equal protection analysis.  See Zucker, 2022 WL 896525 at *4.

14

government interest.  See e.g. Mills, 16 F.4th at 32; Lloyd v. Sch. Bd. of Palm Beach Cty., 570 F.

Supp. 3d 1165, 1184-85 (S.D. Fla. 2021); Sczesny v. New Jersey, Civ. No. 22-2314, 2022 WL

2047135, *11 (D.N.J. Jun. 7, 2022); Talleywhacker, Inc. v. Cooper, 465 F. Supp. 3d 523, 538-39

(E.D.N.C. 2020).

Here, the Order was enacted for the explicit purpose of preventing the spread of COVID-

19 based on concerns over the growing number of cases in Boston and the stress on its hospitals'

intensive care units.  As noted by the Order, "COVID-19 continues to cause serious harm to the

public health of the City of Boston", the positive test rate "[had] reached 6.7%, up from a low of

0.4% in late June 2021 and above the Commission's 5% threshold of concern", and "the percentage

of occupied adult non-surge ICU beds has reached 94.5%, approaching the Commission's 95%

threshold of concern." Exhibit 1, p. 1.  The Order goes on to state that "vaccinated individuals are

less likely to develop serious symptoms or spread COVID-19 to those near them, particularly in

indoor settings where social distancing is not possible, where eating and drinking require the

removal of face coverings, and where physical exercise and exertion are taking place[.]" Exhibit

1, p. 1.  In line with precedent across the country, this Order was rationally related to the City's

legitimate interest in preventing the spread of a deadly virus.  As a result, Plaintiffs' equal

protection claim fails as a matter of law.

### c.  Due Process.

The Due Process Clause prohibits a state from depriving a person of "life, liberty, or

property, without due process of law." U.S. Const. amend. XIV § 1.  The Due Process Clause has

a substantive and procedural component.  See Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006).

The substantive component "functions to protect individuals from particularly offensive actions

on the part of government officials even when the government employs facially neutral procedures

in carrying out those actions."   Id.   The procedural component protects against deprivation of

protected liberty or property interests without a "constitutionally adequate process."   González-

Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Aponte-Torres v. Univ. of P.R.,

445 F.3d 50, 56 (1st Cir. 2006)).   Plaintiffs do not specify whether their due process claim is

procedural or substantive in nature.   Regardless, both fail as a matter of law.

To proceed on a procedural due process claim, Plaintiffs must "identify a protected liberty

or property interest and allege that the defendants, acting under of state law, deprived [them] of

that interest without constitutionally adequate process."   García-González v. Puig-Morales, 761

F.3d 81, 88 (1st Cir. 2014 (quoting González-Droz, 660 F.3d at 13).   A property interest exists

when one has a legitimate claim of entitlement to a right arising from such sources as state statutes,

local ordinances, and employment contracts.   See Bd. of Regents of State Colls. v. Roth, 408 U.S.

564, 576 (1972).   Here, any procedural due process claim necessarily fails because 1) Plaintiffs do

not allege any protected liberty or property interest;[12] and 2) the Order is a prospective rule of

general application that is not subject to the notice and hearing requirements of the Due Process

Clause.[13]

_____

[12] No Plaintiff alleges that he or she had an entitlement to their job or business by way of a state
statute, local ordinance, or employment contract.
[13] In the context of a procedural due process claim, the Supreme Court has long distinguished
between "proceedings for the purpose of promulgating policy-type rules or standards, on the one
hand, and proceedings designed to adjudicate disputed facts in a particular case, on the other."
United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 245 (1973).   While the latter are subject to
the notice and hearing requirements of the due process clause, the former are not.   See Bi-Metallic
Investment Co. v. State Board of Equalization, 239 U.S. 441, 445-46 (1915).   Here, the Order is
best categorized as forward-looking government action that applies to the general public and not
the facts of a specific case.   To that end, it is not subject to the notice and hearing requirements of
the due process clause.   See id.; see also Interport Pilots Agency Inc. v. Sammis, 14 F.3d 133, 142
(2d Cir. 1994) ("Official action that is legislative in nature is not subject to the notice and hearing
requirements of the due process clause").

Plaintiffs likewise fail to state a claim for a violation of substantive due process.  The protections of substantive due process attach only to 1) conduct that "shocks the conscience"; and 2) conduct that violates a fundamental right—a right implicit in the concept of ordered liberty.  See United States v. Salerno, 481 U.S. 739, 746 (1987).  In the context of COVID-19 courts have found that orders intended to curb the spread of disease—like the Order here—are not the type of "arbitrary action" or "egregious official conduct" intended to injure in some way unjustifiable by any government interest that can be said to "shock the conscience".  See Everest Foods Inc. v. Cuomo, No. 21 Civ. 6316 (AKH), 2022 WL 355553, at *8 (S.D.N.Y. Feb. 7, 2022) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  Plaintiffs also have not identified a fundamental right protected by the Due Process Clause.  To that end, rational basis review applies and the Plaintiffs would need to show that the Order was not rationally related to a legitimate government interest in order to prove their claim.  As described above, the Supreme Court demands a deferential standard for analyzing Fourteenth Amendment challenges to public health measures like the one enacted in this case.  Under that standard, courts may not overturn a public-health measure adopted in a health crisis unless those measures lack a "real or substantial relation" to public health and safety or are "beyond all question, a plain palpable invasion of rights secured by the fundamental law."  Jacobson, 197 U.S at 31.

The Supreme Court has emphasized that the "liberty secured by the Constitution…does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint."  Id. at 26.  It explained that it was not the judiciary's role to determine the most effective method to protect the public against disease.  Id. at 30.  Instead, "[t]hat was for the legislative department to determine in the light of all the information it had or could obtain."  Id.  So long as a regulation has a real and substantial relation to the protection of public health and

17

safety, it is constitutional.  See id. at 30-32.  Such is the case here.  Even if the Order restrained the Plaintiffs' ability to enter certain indoor premises for two months, because that restraint was rationally related to the City's legitimate interest in curbing the spread of COVID-19, it passes constitutional muster and cannot support a substantive due process violation.  See County of Lewis, 523 U.S. at 847 n. 8.  Accordingly, Plaintiffs' due process claims fail as a matter of law.

### d.  *Claims against Mayor Wu in her individual capacity.*

According to the case caption, Mayor Wu is being sued in her individual capacity as well. But the Complaint is completely devoid of any allegations as to how Mayor Wu, individually, violated Plaintiffs' constitutional rights.  A state official "may be found liable [under section 1983] only on the basis of [her] own acts or omissions."  Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989).  However, in such cases, "qualified immunity will protect a public official from personal liability if that official acted in good faith."  Stratton v. City of Boston, 731 F. Supp. 42, 48 (D. Mass. 1989).  The "good faith standard" shields officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In order to defeat the defense of qualified immunity, the plaintiff, before commencing suit, must be prepared with a prima facie case of defendant's knowledge of impropriety, actual or constructive."  Stratton, 731 F. Supp. at 49 (quoting Krohn v. United States, 742 F.2d 24, 31 (1st Cir. 1984)).  "The salient question is whether the state of the law at the time gave a defendant clear notice that what he was doing was unconstitutional."  Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (quoting Decotiis v. Whittemore, 635 F.3d 22, 36 (1st Cir. 2011)).  Here, even if Plaintiffs had alleged facts as to how Mayor Wu, individually, violated Plaintiffs' constitutional rights (which, again, they have not), Mayor Wu would be entitled to qualified immunity because

it was not clearly established that she could not adopt an Order promulgated by the BPHC for the purpose of protecting public safety.  To the contrary, the law was clearly established that she <u>could</u> adopt such an order during a public health emergency.  Because there are no allegations that Mayor Wu violated Plaintiffs' constitutional rights and, even if there were, she would be entitled to qualified immunity, Plaintiffs' claims against Mayor Wu in her individual capacity must be dismissed.

Because Plaintiffs have failed to state a claim for a constitutional claim against the City or Mayor Wu, their Complaint must be dismissed in its entirety.

## IV.    <u>CONCLUSION</u>

WHEREFORE, for the reasons discussed above, the City and Mayor Michelle Wu respectfully request that Plaintiffs' Complaint be dismissed against them in its entirety.

Dated:  July 18, 2022

Respectfully submitted:

**DEFENDANTS, CITY OF BOSTON, MAYOR MICHELLE WU**

By their attorney:

Adam N. Cederbaum
Corporation Counsel


*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Senior Assistant Corporation Counsel
Randall F. Maas (BBO#684832)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4042 (Maas)
Nicole.OConnor@boston.gov
Randall.Maas@boston.gov

## 7.1 CERTIFICATION

I, Nicole M. O'Connor, hereby certify that I conferred with counsel for Plaintiff, Richard Chambers, via telephone conference on July 13, 2022 in an attempt to resolve or narrow the scope of the issues raised in this motion.  The parties were unable to resolve or narrow the issues.

Dated: July 18, 2022                                          */s/ Nicole M. O'Connor*
                                                                      Nicole M. O'Connor


## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document upon all parties of record via this court's electronic filing system and upon those non-registered participants via first class mail.


Dated:  July 18, 2022                                          */s/ Nicole M. O'Connor*
                                                                      Nicole M. O'Connor