**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 22-cv-10285-AK**

SHANA MARIE COTTONE; DENICE BARRASSO; JASON ANDREW DUNTON; NAOMI HASTINGS; LAURA ANN LASDOW; SHANNON LUNDIN; KELLY DIVER, individually and as Guardian of J.D.; YINETTE FUERTES, individually and as Guardian of J.B.; GINA CASTIELLO, JAYMES LEAVITT; JOANNE HALPIN; JOEL GREENBERG; MIRIAM CARRASQUILLO; SHAWN NELSON; KARINA DEMUCHYAN; CATHERINE VITALE; JORGE MENDOZA; CARLES GOMES; and SAVIEL COLON,

Plaintiffs,

v.

CITY OF BOSTON; MAYOR MICHELLE WU OF THE CITY OF BOSTON; in her Official and Personal Capacities; BOSTON PUBLIC HEALTH COMMISSION EXECUTIVE DIRECTOR DR. BISOLA OJIKUTU, M.D., MPH, in her Official and Personal Capacities; BOSTON PUBLIC HEALTH COMMISSION,

Defendants.

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS', BOSTON PUBLIC HEALTH COMMISSION AND DR. BISOLA OJIKUTU'S, MOTION TO DISMISS**

Plaintiffs' Opposition (the "Opposition") to Defendant Boston Public Health Commission and Dr. Bisola Ojikutu's ("BPHC") Motion to Dismiss (the "Motion") fails to address any of the arguments raised in the Motion, and therefore, the Motion should be treated as unopposed and granted in its entirety.

Plaintiffs first argue that municipalities are not immune from federal suits and Defendants Motion to Dismiss does not raise the issue of municipal immunity. It is true that municipalities may, at times, be subject to federal suit. Plaintiffs cite to two cases, neither of which are about municipal immunity, in support of this argument. They cite to Malley v. Briggs, 475 U.S. 335 (1986) and Anderson v. Cheighton, 483 U.S. 635 (1987). Both cases are about qualified or absolute immunity for police officers. In the present case, no police officer is being individually sued, and therefore, the issue of qualified immunity is irrelevant. Moreover, the issue of immunity, of any kind, was not raised in the Motion to Dismiss. Therefore, this argument need not be considered.

Next, Plaintiffs appear to argue that a law being unconstitutional is itself an injury for purposes of standing, but they do not offer any support for this argument based on controlling caselaw. Indeed, the case they do cite, Portland Bank v. Apthorp, 12 mass 252 (1815), is a Massachusetts state court case interpreting the state constitution of Massachusetts, not the federal constitution. Neither does Portland Bank stand for the principle that a plaintiff does not need an injury to have a live case in controversy. Id. In fact, that case has nothing to do with standing or injury, but concerns a bank suing to avoid taxation under a statute passed after its incorporation. Therefore, Plaintiffs failed to demonstrate that they have a live controversy in the instant action, or refute the Motion to Dismiss.

Plaintiffs repeatedly make new legal arguments, and allege new factual allegations, throughout the Opposition, which is impermissible, and these new allegations may not be considered in making a determination on a Motion to Dismiss based on Rule (12)(b)(6). "An opposition to a motion to dismiss is not the place for new factual allegations." Willitts v. Life Insurance Company of North, 2021 WL 735784 (US District Court, D. Massachusetts, 2021).

See attached for this Court's convenience as **Exhibit A**. Further, in deciding such a motion to dismiss, "the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)(internal citation omitted). The Opposition my not be used to hastily, and at a late stage, attempt to amend factually deficient pleadings. Willits at 4.

Most of the Opposition is dedicated to just such new factual allegations and theories, including allegations of fraud, (see Opposition at page 4) conflict of interest of the board and executive director, (Id. at 6), improper relationship with Boston Medical Center (Id. at 12), and conspiracy (Id. at 12). These allegations and theories, and all the multitudinous screenshots and hand-written annotations provided in the text, cannot be considered for purposes of deciding the Motion. Further, these allegations don't relate back to the arguments in the Motion to Dismiss, they are therefore totally irrelevant and must be ignored.

Plaintiffs argue that BPHC is not an independent body politic, but either a city agency, (Id. at 6) department, (Id. at 8) board, (Id. at 9) municipal corporation, (Id. at 6) or shell corporation (Id. at 12). The nomenclatures are irrelevant and do not bear on the Motion to Dismiss. This discussion is not relevant to any argument made by BPHC in its Motion. Perhaps the confusion on Plaintiffs' part comes from the fact that they have attached and continually reference the wrong complaint—specifically, they repeatedly reference the first filed complaint, filed February 18, 2022, rather than the current complaint, the second amended complaint, filed May 6, 2022. There is no reason given why categorizing BPHC using any of these words should have any legal significance in reviving the complaint's deficiencies.

Otherwise, Plaintiffs make no defense of their factually deficient Complaint. They do not even attempt to demonstrate how any single count of the complaint could be adequately

supported by the facts alleged included. They do not refute the Motion to Dismiss or defend any single count of the complaint.

Therefore, Plaintiffs' Opposition to BPHC's Motion to Dismiss fails to raise a single argument in opposition to the Motion to Dismiss. Regarding the arguments they have not addressed, the court should consider these to have been conceded. As a result, the Court should consider BPHC's Motion to be unopposed and grant the Motion to Dismiss in its entirety.

Date: September 7, 2022

Respectfully Submitted,
**BOSTON PUBLIC HEALTH COMMISSION**
by Its attorneys,

*/s/ Batool Raza*
*/s/ Whitney Pasternack*
Batool Raza (BBO #691173)
Whitney Pasternack (BBO #708677)
Boston Public Health Commission
Office of the General Counsel
1010 Massachusetts Avenue, 6th Floor
Boston, MA 02118
(617) 534-4651
braza@bphc.org
wpasternack@bphc.org

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 13, 2022.

*/s/ Batool Raza*
*/s/ Whitney Pasternack*

**EXHIBIT A**

THOMSON REUTERS WESTLAW EDGE
Exit fullscreen
Go
Notes
Quick Check

2010 WL 3245291

Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.

**Viktor Rolf KLEIN, Plaintiff,**
**v.**
**MHM CORRECTIONAL SERVICES, INC. and Matthew Talbot, Defendants.**

C.A. No. 08–11814–MLW.

Aug. 16, 2010.

## Attorneys and Law Firms

Viktor Rolf Klein, Winthrop, MA, pro se.

C. Raye Poole, Department of Correction, Stephen E. Hughes, Bonner, Kiernan, Trebach & Crociata, LLP, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

### I. INTRODUCTION

*1 Plaintiff Viktor Rolf Klein, an inmate appearing *pro* se, alleges violation of his constitutional right to medical privacy, his constitutional right to refuse medical treatment and observation, and his constitutional right to be free from retaliation, as well as violation of M.G.L. c. 112 § 135A, which protects confidential communications between a social worker and client from unauthorized disclosure. The complaint arises out of an alleged incident in which defendant Matthew Talbot, a social worker employed by defendant MHM Correctional Services, Inc. ("MHM") to provide services at Massachusetts Correctional Institution Norfolk ("MCI–Norfolk"), evaluated whether plaintiff intended to harm himself or others and made the results of the evaluation available to other personnel working in the prison. Talbot and MHM are moving to dismiss the complaint in its entirety (the "Motion to Dismiss"). For the reasons stated below, the Motion to Dismiss is being allowed, and plaintiff's motions to amend the complaint are being denied or found moot.

### II. PROCEDURAL HISTORY

Plaintiff filed the Complaint on October 16, 2008. [1] Prior to service, plaintiff twice moved to amend his complaint, first on October 27, 2008, and again on November 17, 2008. In a March 1, 2009 Order, the court allowed the October 27, 2008 motion

Back to top

to amend as a matter of course and allowed the November 17, 2008 motion to amend. The court directed that the November 17, 2008 proposed amended complaint be docketed as the Amended Complaint. The court also directed service of the Amended Complaint.

On April 27, 2009, plaintiff again moved to amend his complaint. The court allowed this motion to amend. The complaint appended to the April 27, 2009 motion to amend (the "Second Amended Complaint") is thus the operative pleading in this case. The Second Amended Complaint asserts five counts, four arising under 42 U.S.C. § 1983 and one arising under M.G.L. c. 112 § 135A.

In their Motion to Dismiss, defendants moved to dismiss the complaint in its entirety. Plaintiff filed an opposition to the Motion to Dismiss, defendants replied, and plaintiff moved for leave to file a surreply. Defendants moved that the court disregard new factual allegations included in the proposed surreply when deciding the Motion to Dismiss.

Additionally, plaintiff has filed three additional motions to amend his complaint, a motion to file two replies, and a motion to be allowed to attend any hearing on the pending motions.

## III. DISCUSSION

### a. *Motion for Habeas Corpus Attendance*

Plaintiff requests that the court make arrangements for him to attend the hearing on the pending motions in this case. Because the court finds it appropriate to decide the pending motions without a hearing, this motion (Docket No. 66) is moot.

### b. *Motion for Leave to File Two Replies*

Plaintiff requests to file replies relating to his Motion for Enlargement of Time to Respond Defendants' Reply (Docket No. 60) and his Motion for Leave to Correct Obvious Error in the Complaint (Docket No. 58).

*2 As to plaintiff's Motion for Enlargement of Time, the court allowed this motion in a October 13, 2009 Order. Plaintiff's request to file a reply regarding this motion is, therefore, moot.

As to plaintiff's Motion for Leave to Correct Obvious Error in the Complaint (construed by the court as one of the pending motions for leave to amend), the issues raised by the motion are not complex, and the court is in a position to decide the motion now without further argument. Plaintiff's request to file a reply regarding this motion is, therefore, being denied.

### c. *Motions Relating to Plaintiff's Surreply to the Opposition to the Motion to Dismiss*

Plaintiff seeks leave to file a surreply regarding the Motion to Dismiss. Because defendants' reply arguably incorporated new arguments related to exhibits to the Second Amended Complaint, a surreply is appropriate. This motion (Docket No. 65) is, therefore, being allowed.

Defendants request that the court disregard new facts alleged in plaintiff's surreply. For the purposes of deciding whether a plaintiff's factual allegations are sufficient in the context of a motion to dismiss under Rule 12(b)(6), the court may not look beyond the complaint to facts alleged solely in a plaintiff's moving papers. *See Schneider v. California Dep't of Corrections,* 151 F.3d 1194, 1198 n. 1 (9th Cir.1998); *Miller v. Suffolk County House of Correction,* C.A. No. 01-11331, 2002 WL 31194866, at *2 n. 1 (D.Mass. Sept.27, 2002) (Woodlock, J.) (collecting cases and declining to consider new allegation of fact made in a *pro* se plaintiff's opposition to a motion to dismiss); *see also Rivera v. Centro Medico de Turabo, Inc.,* 575 F.3d 10, 15 (1st Cir.2009). Defendants' motion (Docket No. 68) is, therefore, being allowed.

Notes

Quick Check

d. *Motion to Dismiss*

1. *Legal Standard for Motion to Dismiss*

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "take all factual allegations as true and [ ] draw all *reasonable* inferences in favor of the plaintiff." *Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 96 (1st Cir.2007); *see also Maldonado v. Fontanes,* 568 F.3d 263, 266 (1st Cir.2009). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Rodriguez-Ortiz,* 490 F.3d at 95-96 (applying the *Bell Atl.* standard to a claim under the Private Securities Litigation Reform Act); *MoralesTanon v. Puerto Rico Elec. Power Authority,* 524 F.3d 15, 18 (1st Cir.2008) (applying the *Bell Atl.* standard to a claim under 42 U.S.C. § 1983).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions ..., and a formulaic recitation of the elements of a cause of action will not do .... " *Bell Atl.,* 550 U.S. at 555. A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Citigroup, Inc.,* 535 F.3d 45, 52 (1st Cir.2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (emphasis added). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atl.,* 550 U.S. at 557).

*3 "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint." [2] *Rivera,* 575 F.3d at 15 (internal quotation marks omitted); *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). From this rule, the First Circuit makes "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents

sufficiently referred to in the complaint." *Watterson,* 987 F.2d at 3–4; *Beddal v. State Street Bank and Trust, Co.,* 137 F.3d 12, 16–17 (1st Cir.1998) (When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged) that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

2. *Facts Alleged*

Defendant MHM is a corporation that provides mental health services to inmates through a contract with the Department of Corrections ("DOC").

Defendant Talbot is a social worker licensed to practice in Massachusetts and was, at all relevant times, an employee of MHM assigned to provide mental health services to inmates at MCI–Norfolk.

Plaintiff was an inmate at MCI–Norfolk. In August, 2006, slightly less than two years prior to the events forming the basis of this action, he had met with Talbot to discuss difficulty sleeping.

Plaintiff complained about harassment by a corrections officer at some point and, on March 31, 2008, attended an administrative hearing at which the alleged harassment was discussed. On or about April 10, 2008, when plaintiff was within weeks of his scheduled parole eligibility date, a corrections officer searched plaintiff's belongings and claimed to have found a razor blade. Plaintiff was charged with prison offenses and was ordered to be placed in the Special Management Unit ("SMU"), where he would be segregated from the prison population.

Prison procedures required that, prior to placement in the SMU, plaintiff receive a mental health assessment by a medical professional to determine such placement was safe. Corrections officers thus escorted plaintiff to the Health Services Unit ("HSU") for evaluation. The corrections officers escorting plaintiff verbally and physically provoked plaintiff, including calling him a "fucking rat" and requiring him to walk quickly while wearing leg restraints. Plaintiff was upset and responded by yelling obscenities and by claiming that he had been "set up."

After arriving at the HSU, plaintiff was placed in an empty holding cell in the out-patient department ("OPD"). Talbot arrived at the holding cell and attempted to conduct the mental health assessment in accordance with the applicable DOC regulations. Plaintiff, who was still upset by the way he had been treated by the corrections officers, interrupted Talbot and refused the remainder of the assessment. Talbot continued to ask plaintiff questions. Plaintiff refused the assessment multiple times and eventually said, "Get the fuck away from me. Now." Talbot informed the corrections officers that plaintiff refused the assessment.

*4 Plaintiff was then escorted to an SMU holding cell. While plaintiff was being escorted, Talbot followed and continued to assess and evaluate plaintiff. Talbot





involved a corrections officer in the assessment. Ultimately, Talbot cleared plaintiff for placement in the SMU because plaintiff had not voiced an intent to harm himself or others and was not an open mental health case. Talbot wrote a progress note (the "progress note"), exhibit 25 to the complaint, in which he described plaintiff's conduct and analyzed whether plaintiff suffered from mental illness. [3]

Two days later, on April 12, 2008, Talbot posted an electronic incident report on the Inmate Management System (the "IMS report"), a computer network used by the DOC and its corrections officers. Although Talbot could have entered the IMS report in a manner that would restrict access to users cleared to receive confidential inmate health information, he did not do so. Donna Geer, MCI–Norfolk's Institutional Disciplinary Officer, accessed the IMS report and incorporated it into the pending disciplinary proceedings against plaintiff. As reflected in exhibit two to the complaint, the IMS report read in its entirety:

> 20080410: On this date, this writer was called to assess IM Viktor Klein, W86067 as he was being lugged to segregation. This writer observed IM being escorted to OPD 1st floor and appeared uncooperative and combative with security staff. Multiple officers were present and secured IM in holding cell due to his inability to maintain behavioral control. This writer heard him yell multiple obscenities towards officers (unknown to whom these were directed specifically) and was uncooperative with a MH assessment. He repeatedly told this writer "Get the fuck away from me now." He continued yelling at officers and staff and was then moved to SMU1 holding cell. This writer followed and with the assistance of Lt. James Roberts, was able to assess IM's not being of risk as he voiced no intent to harm himself or others. He still continued to be uncooperative with direct orders from Capt. Brian Flaven and Lt. Roberts. This writer cleared IM for segregation. EOR.

Plaintiff does not allege Talbot falsified or fabricated the contents of the IMS Report.

3. *Count I: Right of Medical Privacy*

Plaintiff alleges that MHM is liable under § 1983 for deprivation of plaintiff's constitutional right of privacy of confidential communications and medical health records. [4] The court understands this claim to refer to the distribution of information to prison personnel via the IMS report.

In 1977, in *Whalen v. Roe,* the Supreme Court examined whether a constitutional right of privacy protects the individual's interest in avoiding disclosure of personal medical information. *See* 429 U.S. 589, 599–604, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (holding a right to privacy was not invaded by the statute at issue). The court held that the statute at issue, which required collection by the state of medical data relating to prescription medications, did not violate any constitutional right. *Id.* at 606; *see Seaton v. Mayberg,* No. 05–56894, 2010 WL 2600553, at *4 (9th Cir. Jun.30, 2010) ("The closest *Whalen* comes to recognizing

Back to top

any constitutional right to privacy of medical information is its acknowledgment that the accumulation of vast amounts of personal information by the government is typically accompanied by a statutory or regulatory duty to avoid unwarranted disclosures, and that duty arguably has some constitutional basis." (internal quotation marks omitted)); *Borucki v. Ryan,* 827 F.2d 836, 842 (1st Cir.1987) (stating the Court in *Whalen* "explicitly refrained from deciding whether the right of privacy would be implicated if, after collection of the prescription information, that data was publicly disclosed."). Thus, while *Whalen* "provides little guidance regarding the nature of the confidentiality branch of the right of privacy," it does "indicate[ ] that not every government action which affects the confidentiality of medical records will impose a constitutionally cognizable burden on the right of privacy." *Borucki,* 827 F.2d at 841 (holding, in a qualified immunity analysis, that no clearly established right of privacy protected a former defendant's court-ordered psychiatric report from disclosure at a press conference by the prosecutor after the criminal case had been dismissed).

*5 Here, assuming prisoners enjoy a constitutional right of privacy with respect to medical information, and assuming such a right could be implicated by disclosure of information only to other prison personnel and not to other prisoners or the public, [5] plaintiff has failed to allege facts showing a plausible entitlement to relief. Where courts have constitutionalized medical privacy in the prison context, they have done so "[w]ithin narrow parameters." *See Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999). To fall within the protection of a prisoner's constitutional right of privacy, the medical information disclosed must be intensely personal. *See Moore v. Prevo,* No. 09–1307, 2010 WL 1849208, *2–3 (6th Cir. May 6, 2010) (HIV-positive status, which is "sensitive" medical information); *Doe v. Delie,* 257 F.3d 309, 317 (3d Cir.2001) (HIV-positive status, which is "information of the most personal kind"); *Powell,* 175 F.3d at 111–12 (transsexualism, which is "excruciatingly private and intimate"); *A.L.A. v. West Valley City,* 26 F.3d 989, 990 (10th Cir.1994) (HIVpositive status); *see also Whalen,* 429 U.S. at 593 (alluding to possible right to restrict disclosure of name, address, and age of patients taking "the most dangerous of the legitimate drugs," the use of which was thought to suggest drug addiction); *Borucki,* 827 F.2d at 837, 845, 849 (holding it was not even clearly established that the right of privacy was implicated by disclosure the contents of a defendant's psychiatric report).

Consequently, the right is not implicated here, because the IMS Report contains no such information. *See Cortes v. Johnson,* 114 F.Supp.2d 182, 185 (W.D.N.Y.2000) (holding inmate did not have a privacy right with respect to medical information that "do[es] not compel the same heightened confidentiality as information concerning an inmate's HIV positive status or transsexualism"). Beyond its summary of plaintiff's undeniably public conduct, the IMS Report merely documents that plaintiff, an inmate, was profane and uncooperative when questioned by a member of the prison's medical staff, was assessed to be unlikely to harm himself or others, and was cleared for placement in the SMU. It does not

Back to top

document information relating to an individual's therapeutic treatment, but rather relates information obtained during an institutional safety assessment. Other than the command "Get the fuck away from me now," the IMS Report does not report any specific communications between plaintiff and Talbot. Nor does it include any opinion or diagnosis regarding plaintiff's mental status or the existence of mental or physical illness, other than the curt assessment that plaintiff had trouble controlling his behavior at a particular time but could safely be placed in segregation because he had not voiced an intent to harm himself or others.

Because the information within the IMS Report thus falls outside the narrow parameters of the class of confidential medical information subject to constitutional safeguards in the prison context, the complaint fails to state a claim of violation of the constitutional right of privacy. The Motion to Dismiss is, therefore, being allowed as to this count. [6]

**4. *Count III: Right to Refuse Treatment***

*6 Plaintiff alleges that MHM Corporation and Talbot are liable under § 1983 for deprivation of plaintiff's constitutional right to refuse medical treatment and observation. [7] The court understands this claim to refer to Talbot's asking plaintiff questions and following plaintiff to the SMU despite plaintiff's refusal to participate in the mental health assessment.

As a general matter, "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Director of Missouri Dept. of Health,* 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). In the prison context, this interest extends at least as far as refusing the unwanted administration of antipsychotic drugs. *See Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Massey v. Rufo,* 14 F.3d 44, at *1 (1st Cir.1994) (table). However, an allegation of infringement of an inmate's interest in refusing medical treatment will fail if the challenged treatment is reasonably related to legitimate penological interest. *Harper,* 494 U.S. at 223; *see Martinez v. Cui,* 608 F.3d 54, 66 (1st Cir.2010) (citing *Harper* for the proposition that a person's interest in bodily integrity must be balanced against the government's competing interests); *Street v. Maloney,* 991 F.2d 786, at *2 (1st Cir.1993) (table) ( "Prison restrictions that implicate constitutional rights are judged by the reasonableness standard."). In other words, "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *White v. Napoleon,* 897 F.2d 103, 113 (3d Cir.1990).

Here, it is far from clear that Talbot's asking questions and observing plaintiff's behavior, while not consensual, could constitute "medical treatment" within the meaning of *Cruzan* and *Harper. See Starks v. Couch,* C.A. No. 08–407, 2009 WL 331357, *2 (S.D.Ill. Feb. 11, 2009) (holding inmates have no constitutional right to avoid being placed on suicide watch). However, assuming that Talbot's actions

Back to top

constituted medical treatment, they reasonably advanced valid penological objectives, namely ensuring the safety of plaintiff and others in the prison. *See Harper,* 494 U.S. at 226 (holding prison personnel have a legitimate interest in ensuring the safety of prisoners and prison staff). Plaintiff has thus failed to state a claim of violation of the right to refuse medical treatment, and the Motion to Dismiss is being allowed as to this count.

5. ***Count IV: Right to Be Free from Retaliation***

Plaintiff alleges that MHM Corporation and Talbot are liable under § 1983 for deprivation of plaintiff's constitutional right to be free from retaliation for the refusal of medical treatment and observation. The court understands this claim to refer to Talbot's filing of the IMS Report, allegedly in retaliation for plaintiff's refusing the mental health assessment.

*7 "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001) (internal quotation marks omitted). A prisoner litigating a retaliation claim must therefore prove (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) the prisoner suffered an adverse action at the hands of prison officials; and (3) there is a causal link between the exercise of the constitutional right and the adverse action, such that the constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Rauser,* 241 F.3d at 333.

Here, plaintiff has failed to allege the first element because, as the court has already ruled, plaintiff's refusal of the mental health assessment was not constitutionally protected. *See Rauser,* 241 F.3d at 333; Part III(d)(4), *supra.*

Additionally, the second element is not adequately pled. Plaintiff asserts that the adverse action in this case was Talbot's filing of the IMS Report in a format that was accessible to prison disciplinary personnel. To be "adverse," the action in question must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Rauser,* 241 F.3d at 333. In the prison context, such action must, therefore, impose a meaningful hardship on the inmate. *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003) (disciplinary confinement); *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir.2002) (confinement in restrictive housing unit); *Rauser,* 241 F.3d at 333 (denial of parole, transfer to a prison far from family, and financial penalty); *Cook v. Maloney,* No. 03–12138, 2010 WL 1381731, at *2 (D.Mass. Mar.30, 2010) (transfer from medium security prison to maximum security prison); *Cook v. Maloney,* 03–12138, 2010 WL 1381859, *3 (D.Mass. Mar.30, 2010) (confiscation and destruction of personal property and legal materials). Actions which fail to impose such a hardship are not adverse. *See Starr v. Dube,* 334 Fed. App'x 341, at *2 (1st Cir.2009) (holding mere "filing of a disciplinary charge carrying potentially severe sanctions" was not adverse where no sanctions were actually imposed and where contesting charges was not futile); *Moore v.*



*Sergent,* 22 Fed. App'x 472, 474 (6th Cir.2001) (holding modest restrictions on a prisoner's right to file grievances were not adverse); *Klein v. Tocci,* No. 09–11248, 2010 WL 2643414, at *3 (D.Mass. July 1, 2010) (holding temporary grievance suspension was not adverse); *Garcia v. Watts,* No. 08–7778, 2009 WL 2777085, at *10–11 (S.D.N.Y. Sept.1, 2009) (holding cell search and threat to issue incident report were not adverse, but actual placement in disciplinary confinement could be adverse).

Notes
Quick Check

Here, the court concludes Talbot's action was not adverse because it did not impose a meaningful hardship. Initiating disciplinary charges is not generally adverse action; rather, any meaningful hardship generally arises out of the punishment imposed. [8] *See Starr,* 334 Fed. App'x at *2. *But see Brown v. Crowley,* 312 F.3d 782, 789 (6th Cir.2002). Here, it is not alleged that Talbot imposed any punishment. It is not even alleged that he initiated the disciplinary charges. Rather, he is alleged to have disseminated a truthful incident report that was later appended as evidence in a preexisting disciplinary proceeding. [9] Moreover, in this case, corrections officers were already aware of virtually all the behavior documented by Talbot in the IMS Report because it either occurred in front of them or because Talbot informed them at the time that plaintiff was not cooperating with the mental health assessment. [10] A person of reasonable firmness would not be deterred from refusing the mental health assessment by the fact that, after disciplinary procedures were already in progress, a social worker in Talbot's position made available to prison disciplinary personnel accurate information which was already available to them through the observations of corrections officers. *Cf. Starr,* 334 Fed. App'x at *2. Accordingly, plaintiff has failed to state a claim of retaliation, and the Motion to Dismiss is being allowed as to this count.

6. *Count V: Deliberate Indifference*

*8 Plaintiff alleges that MHM is liable under § 1983 for deliberate indifference to the constitutional violations alleged elsewhere in the Second Amended Complaint. Because the court has ruled that the Second Amended Complaint fails to allege any constitutional violations, and because this count is wholly dependent on the existence of such violations, the Motion to Dismiss is being allowed as to this count.

7. *Count II: Violation of M.G.L. c. 112 § 135A*

Because all federal claims have been dismissed, the court declines to exercise supplemental jurisdiction over this state-law claim. *See Parker v. Hurley,* 474 F.Supp.2d 261, 278 (D.Mass.2007) (describing standard). The Motion to Dismiss is being allowed as to this count to the extent that it is being dismissed without prejudice.

e. *Motions to Amend the Complaint*

1. *Legal Standard*

A party may amend its pleading once as a matter of course within 21 days after serving it or, if a responsive pleading is required, within 21 days after service of a

Back to top

responsive pleading or of a motion under Rule 12(b), (e), or (f). Fed.R.Civ.P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed.R.Civ.P. 15(a) (2). The court should freely give leave when justice so requires. *Id.; O'Connell v. Hyatt Hotels of P.R.,* 357 F.3d 152, 154 (1st Cir.2004) (discussing "liberal" amendment policy).

However, a district court does not abuse its discretion when it refuses to allow an amendment that would be futile because it does not state a claim. *Chiang v. Skeirik,* 582 F.3d 238, 244 (1st Cir.2009); *United States ex rel. Gagne v. City of Worcester,* 565 F.3d 40, 48 (1st Cir.2009) ("Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment."). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed.R.Civ.P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.,* 443 F.3d 122, 126 (1st Cir.2006).

2. *June 26, 2009 Motion for Leave to Amend*

The proposed amended complaint makes substantially similar allegations and does not cure the deficiencies which require dismissal of the Second Amended Complaint. Leave to amend is, therefore, being denied because amendment as proposed would be futile.

3. *August 31, 2009 Motion for Leave to Amend*

Similarly, this proposed amended complaint does not cure the deficiencies discussed above. Leave to amend is, therefore, being denied because amendment as proposed would be futile.

4. *February 5, 2010 Motion for Leave to Amend*

This motion seeks to amend the complaint by incorporating exhibits 1–28. Because the court has considered these exhibits at part of the Second Amended Complaint, the operative pleading in this case, this motion is moot.

f. *Motion to Stay*

*9 On July 29, 2010, as the court was preparing to issue this order, petitioner moved to stay this proceeding because he has been paroled and presently lacks the resources to litigate the action. Defendants oppose the motion. District courts have broad discretion to stay cases, provided that the length of the stay is reasonable and accounts for the competing interests of the parties. *See Clinton v. Jones,* 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citing *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

Presently, there are no pending deadlines in this case, all motions before the court have been fully briefed, and the court is not directing any additional action by the plaintiff because the case is being dismissed. Although plaintiff may elect to pursue his state-law claim in state court, the tolling of the statute of limitations by 28 U.S.C. 1367(d) suggests that immediate action will not be required. Accordingly, a stay is not necessary or appropriate to prevent prejudice to plaintiff or promote orderly disposition of his claims. This motion is, therefore, being denied.

IV. CONCLUSION

The court is sensitive to the fact that plaintiff alleges mistreatment by corrections officers. However, the court finds no viable federal claim against MHM and Talbot. To the extent plaintiff alleges a viable state-law claim against MHM and Talbot, he is free to pursue that claim in state court.

Accordingly, for the foregoing reasons, it is hereby ORDERED that:

1. Plaintiff's Motion to File a Surreply (Docket No. 65) is ALLOWED.

2. Defendants' Motion to Exclude New Facts Alleged in the Surreply from Consideration (Docket No. 68) is ALLOWED.

3. Defendants' Motion to Dismiss (Docket No. 40) is ALLOWED. Counts I, III, IV, and V are DISMISSED. Count II is DISMISSED without prejudice.

4. Plaintiff's June 26, 2009 Motion to Amend (Docket No. 45)and August 31, 2009 Motion to Amend (Docket No. 58) are DENIED. Plaintiff's February 5, 2010 Motion to Amend (Docket No. 72) is MOOT.

5. Plaintiff's Motion for Leave to File Two Replies (Docket No. 63) is MOOT with respect to plaintiff's Motion for Enlargement of Time and is DENIED with respect to plaintiff's Motion for Leave to Correct Obvious Error in the Complaint.

6. Plaintiff's Motion for Habeas Corpus Attendance (Docket No. 66) is MOOT.

7. Plaintiff's Motion to Stay (Docket No. 75) is DENIED.

## All Citations

Not Reported in F.Supp.2d, 2010 WL 3245291

### Footnotes

1 In addition to MHM and Talbot, plaintiff initially named six officials of the Massachusetts Department of Corrections as defendants (the "DOC Defendants"). In a March 4, 2010 Order, the court permitted plaintiff to drop the DOC defendants pursuant to Fed.R.Civ.P. 21.

2 In this case, the court considers plaintiff's exhibits 1–28 (Docket Nos. 12 & 38) as part of and incorporated into the Second Amended Complaint. Defendants, as well, treat these exhibits as incorporated into the Second Amended Complaint for the purposes of their Motion to Dismiss. *See* Reply to Opp. to Mot. to Dismiss at 2.

3 There is no allegation that this progress note was improperly distributed.

4 Although there is some discussion in defendants' moving papers of a possible claim under the Mental Health Bill of Rights, 42 U.S.C. § 9501, the court does not understand plaintiff to assert such a claim. In any event, such a claim would fail because the statute does not create privately enforceable rights. *See Croft v. Harder,* 730 F.Supp. 342, 350–51

9/7/22, 3:34 PM Klein v. MHM Correctional Services, Inc. | Cases | Massachusetts | Westlaw Edge

(D.Kan.1989), *aff'd on other grounds,* 927 F.2d 1163 (10th Cir.1991); *cf. Mondhan v. Dorchester Counseling Center, Inc.,* 961 F.2d 987, 994 (1st Cir.1992) (interpreting nearly identical provision of 42 U.S.C. § 10841 to preclude creation of privately enforceable right).

5 *See Moore v. Prevo,* No. 09–1307, 2010 WL 1849208, *2 & n. 4 (6th Cir. May 6, 2010) (distinguishing between disclosures to prison officials, which cannot implicate an inmate's right to privacy, and disclosures to other inmates, which can implicate the right); *Borucki,* 827 F.2d at 840 (noting *Whalen* distinguished between public disclosures and disclosures to the state itself).

6 Because plaintiff does not allege the progress note was disclosed, the court need not reach any conclusion regarding the constitutional implications of such a disclosure.

7 Although the complaint alleges that this count arises out of constitutional violations actionable under § 1983, the parties' moving papers discuss violations of prison regulations and M.G.L. c. 111 § 70E. In plaintiff's Second Amended Complaint, these causes of action are not raised in this count, which alleges only deprivation of plaintiff's "constitutional right to refuse treatment and/or observation, without due process of law."

8 Some courts have concluded that the filing of a disciplinary report is adverse if it is false and results in charges. *See Smith v. Mensinger,* 293 F.3d 641, 654 (3d Cir.2002) (indicating false misconduct reports resulting in charges are adverse); *Dixon v. Brown,* 38 F.3d 379, 379 (8th Cir.1994); *Le Doux v. Superintendent, Rockingham County House of Corrections,* C.A. No. 06–268, 2007 WL 539135, at *6 (D.N.H. Feb. 14, 2007) (false disciplinary report resulting in charges). Plaintiff does not allege that Talbot lied in the IMS Report.

9 *See* Ex. 5 to Second Amended Complaint (showing date of Disciplinary Report 130829 as April 10, 2008, two days prior to the entry of the IMS Report).

10 Arguably, because plaintiff has not alleged that corrections officers were present in the holding cell when Talbot initiated the mental health assessment, corrections officers may not have been aware that used the exact words "Get the fuck away from me now" when communicating with Talbot. However, the court does not view this possibility as material, as plaintiff alleges he was using profanity throughout most of the incident.

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.

## Related documents

Selected topics Secondary Sources Briefs Trial Court Documents

Privileged Communications and Confidentiality
Attorney-client Privilege
Confidence of Attorney-Client Relationship

Contact us · Live chat · Training and support · Improve Westlaw Edge · Transfer My Data · Pricing guide · Sign out · Back to top

https://1.next.westlaw.com/Link/Document/FullText?findType=Y&serNum=2022791995&pubNum=0000999&originatingDoc=I19dfbb60780311ebae4… 12/13

9/7/22, 3:34 PM Klein v. MHM Correctional Services, Inc. | Cases | Massachusetts | Westlaw Edge

1-800-REF-ATTY (1-800-733-2889)

Westlaw Edge. © 2022 Thomson Reuters Accessibility · Privacy · Supplier terms

*Thomson Reuters is not providing professional advice*

Notes
Quick Check

Back to top

https://1.next.westlaw.com/Link/Document/FullText?findType=Y&serNum=2022791995&pubNum=0000999&originatingDoc=I19dfbb60780311ebae4… 13/13