UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHANA MARIE COTTONE; DENICE
BARRASSO; JASON ANDREW DUNTON;
NAOMI HASTINGS; LAURA ANN LASDOW;
SHANNON LUNDIN; KELLY DIVER,
individually and as Guardian of J.D.;
YINETTE FUERTES, individually and as
Guardian of J.B.; GINA CASTIELLO; JAYMES
LEAVITT; JOANNE HALPIN; JOEL
GREENBERG; MIRIAM CARRASQUILLO;
SHAWN NELSON; KARINA DEMUCHYAN;
CATHERINE VITALE; JORGE MENDOZA;
CARLES GOMES; and SAVIEL COLON,

       Plaintiffs,

v.

CITY OF BOSTON;
MAYOR MICHELLE WU OF THE
CITY OF BOSTON, in her Official and
Personal Capacities;
BOSTON PUBLIC HEALTH COMMISSION
EXECUTIVE DIRECTOR
DR. BISOLA OJIKUTU, M.D., MPH,
in her Official and Personal Capacities; and
BOSTON PUBLIC HEALTH COMMISSION,

       Defendants.

**Civil Action No. 1:22-CV-10285-AK**

## <u>MEMORANDUM AND ORDER</u>

**A. KELLEY, D.J.**

On December 20, 2021, the Boston Public Health Commission issued a temporary order

requiring proof of COVID-19 vaccination to enter indoor entertainment, recreation, dining, and

fitness establishments in the City of Boston.  [Dkt. 9-1].  The Order remained in place until

February 18, 2022.  [Dkt. 9 ("Compl.") at 2].  Here, nineteen plaintiffs have filed this lawsuit alleging damages for the anxiety and emotional distress they experienced during the duration of the Order because of the restrictions placed on accessing covered establishments for those unable to show proof of COVID-19 vaccination.

Defendants Boston Public Health Commission ("BPHC") and Biosla Ojikutu, M.D., in her official capacity as Executive Director and in her personal capacity have moved to dismiss all claims under Fed. R. Civ. P. 12(b)(1) and (6).  [Dkt. 17].  Defendants City of Boston and Mayor Michelle Wu, in her official and personal capacity, have done the same.  [Dkt. 18].

Because Plaintiffs have failed to establish that they have standing to bring this action, Defendants' motions to dismiss [Dkts. 17, 18] are **GRANTED**.

## I.    BACKGROUND

From December 20th, 2021 until February 18th, 2022, the City of Boston had in place an order entitled "Temporary Order Requiring COVID-19 Vaccination for Indoor Entertainment, Recreation, Dining, and Fitness Settings in the City of Boston" ("the Order"). [Compl. at 2].  The Order was promulgated by the Boston Public Health Department ("BPHD") in response to the COVID-19 public health emergency.  [Dkt. 9-1 at 1].  In issuing the Order, the BPHD cited the fact that vaccinated individuals were less likely to develop serious illness from COVID-19 and were less likely to spread COVID-19 to those around them especially in indoor settings.  [Id.].

The Order directed covered entities not to permit patrons, employees, interns, volunteers, or contractors to enter without displaying proof of vaccination. [Id. at 2].  It defined covered premises as those used for indoor food services, indoor entertainment, and indoor gyms and fitness.  [Id. at 2-3].  Not included were buildings, such as residences, which were not open to the general public.  [Id. at 2].  The Order also included exemptions including for entering a covered

premise for a quick and limited purpose, such as to use the restroom or pick up an order, and for artists not regularly employed by the covered entity who could enter the covered premise to perform. [Id. at 2].

A violation of the Order occurred when a covered entity would fail to check an individual's vaccination status—not when an individual patron would refuse to provide their vaccination status.  [Id. at 3].  The Order would be enforced by the BPHC, with the help of the City of Boston who would take action against the covered entities through written warnings, outreach and education, fines of $300 for each violation, and orders by the BPHC to cease and desist.  [Id. at 4].

The nineteen Plaintiffs here bring suit either because of the Order's impact on their access to spaces covered by the Order or because of the Order's impact on businesses they own. [Compl. at ¶¶ 26-44].  The individual plaintiffs' specific claims will be addressed as needed in the Court's discussion.

## II.    LEGAL STANDARD

Federal courts are of limited jurisdiction, and on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), courts must ensure they have the constitutional and statutory authority to adjudicate.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  "The existence of subject-matter jurisdiction 'is never presumed.'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)). Federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," Esquilín–Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011)  A motion to dismiss for lack of constitutional standing is a challenge to the court's subject matter jurisdiction under Federal Rule of Civil Procedure

12(b)(1).   Review for dismissal for lack of subject matter jurisdiction under Federal Rule of

Civil Procedure 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim

pursuant to Fed.R.Civ.P.12(b)(6)."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

That is, when "a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's

well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor."

Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).  The party "invoking the jurisdiction

of a federal court carries the burden of proving its existence," and a "plaintiff cannot rest a

jurisdictional basis merely on unsupported conclusions or interpretations of law."  Johansen v.

United States, 506 F.3d 65, 68 (1st Cir. 2007) (internal quotation marks and citations omitted).

In other words, the party asserting federal jurisdiction is responsible for establishing that such

jurisdiction exists.  Kokkonen, 511 U.S. at 377; Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st

Cir. 2001).  The Court's subject matter jurisdiction "must be apparent from the face of the

plaintiffs' pleading."  Viqueira, 140 F.3d at 16.  The Court "must resolve questions pertaining to

its subject-matter jurisdiction before it may address the merits of a case," Donahue v. City of

Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523

U.S. 83, 101–02 (1998)).

## III.    DISCUSSION

The Constitution limits the jurisdiction of federal courts to actual cases or controversies.

U.S. Const. art. III, § 2, cl. 1.  Here, for a "case or controversy" to exist, the plaintiffs must be

able to demonstrate a "personal stake in the outcome of the controversy."  Katz v. Pershing, LLC,

672 F.3d 64, 71 (1st Cir. 2012) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  This

limitation helps "prevent the judicial process from being used to usurp the powers of political

branches" and "confines the federal courts to a properly judicial role."  Spokeo, Inc. v. Robins,

4

578 U.S. 330, 338 (2016) (citations omitted).  To meet the "constitutional minimum" standing requirements, all plaintiffs must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

### A.  Injury in Fact

For Plaintiffs here to establish an injury in fact, they must show they suffered an "invasion of a legally protected interest" that was "concrete and particularized" and "actual or imminent not conjectural or hypothetical."  Id. at 339 (quoting Lujan, 504 U.S. at 560).  The particularity requirement demands that Plaintiffs personally suffered some harm, while the actual or imminent injury requirement "ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time."  Katz, 672 F.3d at 71.  Plaintiffs must show that their claims are based on a violation of their own individual legal rights.  Id. at 72.  A "generalized grievance" is not enough, id (quoting Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006), and a "mere interest in an event," no matter how passionate or "charged with public import," is not sufficient to provide an actual injury. United States v. AVX Corp., 962 F.2d 108, 114 (1st Cir. 1992).

Since the advent of the COVID-19 pandemic, challenges to similar temporary public-health measures have failed because of the plaintiffs' inability to establish an injury in fact.  See, e.g., Remauro v. Adams, 2022 WL 1525482, at *5 (E.D.N.Y. 2022) (rejecting a challenge, similar to that brought here, against vaccine requirements for accessing designated indoor areas in part because of the plaintiffs' failure to plead an "injury in fact").  In one case in the Eastern District of New York, the plaintiffs' injury claims were insufficient because the

plaintiffs failed to allege that they had "suffered a personal or injury beyond [their] generalized grievance." Id. (citation omitted).

A court in this District similarly rejected a challenge to a Massachusetts order that required masks in public settings for the same reason. See Bechade v. Baker, 2020 WL 5665554 (D. Mass. 2020). In Bechade, the plaintiff's injury was insufficient because she failed to allege that she had "*personally* been forced to wear a mask … on any occasion." Id. at *2. The court also disregarded the threat of fines as a sufficient injury because "[e]very resident of Massachusetts faces this same general threat of enforcement," and the plaintiff had failed to plead any "individual desire or intention to violate the mask requirement which might distinguish her from other residents." Id. at *3.

The fact that Plaintiffs here were subject to by a mandate is not the same as being injured by it. See id. Plaintiffs, who were affected by the limitations of the Order may have been inconvenienced, but this is not the same as suffering a personal injury. Furthermore, the Order was directed at entities operating indoor food services, entertainment, and gyms. [Dkt. 9-1 at 2]. None of the Plaintiffs, aside from those who owned businesses, would have been subject to the order's enforcement mechanism. [Id.]. Moreover, none of the plaintiffs who did own businesses covered by the Order allege being fined or subjected to any enforcement action proscribed in the order. [Compl. at ¶¶ 35, 42-43].

Here the facts, as provided by Plaintiffs, fail to establish that the below named plaintiffs have alleged a personal injury that moves beyond a generalized grievance.

### 1. Cottone

Plaintiff Cottone, a Boston Police officer, alleges she was refused service on two occasions for food at two separate Boston pizza establishments and consequently suffered

emotional distress.  [Compl. at ¶ 26].  She further alleges that following the incidents, Boston police launched an investigation into her conduct.  [Id.]  Cottone concedes that she was able to enter the covered premises. [See id.].  While Cottone alleges that she has a medical need to quickly access food, the Order itself exempts those who enter an establishment for a brief purpose such as to pick up food.  [Id.]; [Dkt. 9-1 at 2].  The embarrassment and distress Cottone suffered at the pizza establishments are not tied to any action taken by Defendants.  Neither are the consequences Officer Cottone suffered as a result of actions undertaken independently by the Boston Police Department.

### 2. Barrasso

Plaintiff Barrasso alleges that she refrained from going to public places that required proof of vaccination and suffered mental anguish as a result.  [Compl. at ¶ 27].  Barrasso also alleges that she was assaulted at a store over a dispute related to COVID-19 restrictions.  [Id.]. There are no allegations that Barasso made any concrete plans or attempts to go to any of the covered establishments and was refused entry.  The fact that Barasso may have been assaulted in a store by a third party not subject to this action is not sufficient to plead injury here, because there are no factual allegations for the Court to conclude that the defendants' actions caused the assault.  The alleged assault would not have been related to the Order's enforcement, which outlined its own enforcement provisions.  [Dkt. 9-1 at 4].

### 3. Lasdow, Diver, Fuertes, Castiello, Nelson, and Colon

These six plaintiffs each allege that they could not go to certain covered establishments. Plaintiff Lasdow alleges that she could not use her gym or continue dining out with her family without traveling outside of Boston.  [Compl. at ¶ 30].  Plaintiff Diver alleges she was unable to use her membership to the zoo and other establishments.  [Id. at ¶ 32].  Plaintiff Fuertes alleges

she could not take her daughter to restaurants, museums, and other establishments.  [Id. at ¶ 33].

Plaintiff Castiello alleges she was unable to go to certain establishments that she previously did.

[Id. at ¶ 34].  Plaintiff Nelson alleges that he was unable to enter any of the covered entities and

provides no other details.  [Id. at ¶ 39].  Plaintiff Colon claims that he was injured because he

was not able to go to restaurants, museums, and zoos with his family.  [Id. at ¶ 44].  None of

these plaintiffs sufficiently plead an actual injury because none allege that they made any

attempts or concrete plans to go to any of these establishments at any particular time, nor do they

allege they were denied entry on any particular occasion.  Their general concerns that they could

not go to certain establishments does not, without more, establish standing.

### 4.  Greenberg

Plaintiff Joel Greenberg is a Lyft driver who needs to frequently stop for food in order to

maintain safe blood glucose levels.  [Id. at ¶ 37].  According to Greenberg, this meant that he

was unable to stop for breaks in Boston and had to drive for Lyft in the suburbs, where there was

lower demand for drivers and thus lower pay.  [Id.].  Greenberg, however, does not provide any

allegations that he stopped for breaks in Boston and attempted to enter any establishments

covered by the order.  Furthermore, the Order itself exempts those who enter an establishment

briefly such as to pick up food.  [Dkt. 9-1].  As such, Greenberg has not pleaded an injury in fact.

### 5.  Carrasquillo

Plaintiff Carrasquillo was on medical leave from the Boston Public Library for cancer

treatment. She is unvaccinated and alleges she endured stress and anxiety for fear of losing her

job and benefits. [Compl. at ¶ 38].  She does not allege that she actually did lose her job or

benefits.  Such allegations are insufficient to confer standing.

### 6.  Demurchyan

Plaintiff Demurchyan alleges that he was unable to eat at any covered entities and had to restrict where he could meet with business clients or friends in Boston and missed certain meetings.  [Id. at ¶ 40].  He does not, however, allege that he made any concrete plans to meet anyone in Boston and was denied from doing so.  Nor does he allege that his business suffered as a result of missing meetings or scheduling them elsewhere.

### 7. **Vitale**

Plaintiff Vitale alleges she was refused service at several Boston restaurants after refusing to show proof of vaccination.  [Id. at ¶ 41].  In one such incident at Regina's Pizzeria, police were called, and Vitale was embarrassed and left the restaurant on her own volition.  [Id.].  Vitale's alleged injury is insufficient to establish standing because she does not allege any actions were taken against her by any of the named Defendants and there are no allegations anyone forced her to leave the restaurant.

In sum, these allegations demonstrate only that the above-named Plaintiffs were subject to the order, not that they suffered concrete and particularized injuries that were actual or imminent.  The Plaintiffs' claims fail because they have not met the actual injury requirement. See [Compl. at ¶¶ 26-27, 32-34, 37-38, 40-41, 44].

### B. **Traceability**

Even if some of the Plaintiffs were able to establish an injury in fact, none of the Plaintiffs can meet the traceability requirement.  A plaintiff must show "a sufficiently direct causal connection between the challenged action" of the defendant "and the identified harm" to establish standing.  Dantzler, Inc. v. Empresas Berrios Inventory and Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020) (citations omitted).  This connection cannot be "overly attenuated" and cannot stem from the independent action of a third party.  Id.  "Although an indirect causal

relationship is not prima facie fatal, an injury is less likely to satisfy this requirement where the causal chain between the defendant's action and the alleged harm depends on actions of a third party." Delaney v. Baker, 511 F. Supp. 3d 55, 68 (D. Mass. 2021).

In Delaney, the District Judge found that the plaintiff's challenge to Massachusetts' indoor mask mandate failed because the plaintiffs did not establish an injury in fact and traceability. Id. at 69-70. The plaintiff there challenged occupancy and mask requirements imposed on the church he attended, but he did not allege he was ever denied access to his church. Id. at 69. As relevant to the traceability inquiry, the plaintiff's challenge to the masking requirements also failed because he failed to provide any evidence that the church instituted masking only because of the state's mandate. Id. at 70.

The facts provided by Plaintiffs here fail to establish that any personal injury suffered is traceable to the challenged order.[1]

### 1. Dunton, Mendoza, and Gomes

Each of these plaintiffs claim that their businesses lost revenue as a result of the order. Plaintiff Dunton alleges his gym saw a 30% drop in business and that he believed he had to hire staff to check gym goers' vaccination status. [Compl. at ¶ 28]. Plaintiff Mendoza alleges he had to dedicate resources to checking patrons' vaccination status and that he had to let go of staff. [Compl. at ¶ 42]. Plaintiff Gomes alleges two of the restaurants he owns saw a drop in business after the Order and that some customers resented being questioned and refused to eat at his restaurant even if vaccinated. [Compl. at ¶ 43].

---

[1] As explained, Cottone and Vitale failed to plead an injury in fact. However, even if the Court found that the refusal of service at the pizzerias constituted an injury in fact, their claims would still fail because the actions of those restaurants could not be fairly traced to Defendants' order. The pizzerias may have asked them to leave for a variety of reasons, including Plaintiff's conduct or the pizzerias independent requirements for COVID-19 vaccination. There are no allegations that the pizzerias acted as they did only because of the Order. Both Cottone and Vitale fail to allege that they would have been allowed service despite any of the restaurant's own independent safety requirements. See Delaney, 511 F. Supp. 3d at 68.

These injuries are not fairly traceable to the defendants' actions because causation is too speculative.  Plaintiffs do not allege that had the Order not been in place, their businesses would not have suffered anyway.  Customers may have independently decided not to frequent Plaintiffs' gym or restaurants for any number of reasons, including in order to avoid crowded indoor spaces due to public health concerns regarding COVID-19 transmission.  Mendoza and Dunton also fail to allege that the staffing changes they made caused them any harm.  While Dunton also alleges he believes he was required to hire additional staff to check the vaccination status of patrons, this does not suffice to establish causation, as he does not allege any specific details about his hiring or incurred costs, only that he believes this was the case.  See [Compl. at ¶ 28].  Additionally, the Order did not require covered premises from making any staffing changes. See [Dkt. 9-1].

### 2. Hastings and Leavitt

Each of these plaintiffs claim that they were barred from working in certain locations because of their vaccination status.  Plaintiff Hastings claims she was barred from working as a carpenter at certain work sites and received less pay as a result.  [Compl. at ¶ 29].  Plaintiff Leavitt, a photographer and part-time musician, claims he was unable to perform with his band at a number of venues and was unable to conduct his photography business.  [Id. at ¶ 35].  Neither alleges that had it not been for the Order, the entities they sought to work at would have allowed them to work.  Those entities could have declined to work with Hastings and Leavitt for any number of reasons. They may have independently required those working for them to provide proof of vaccination because of the public health concerns regarding COVID-19 spread.  Neither plaintiff alleges that there were any work opportunities they attempted to do and were denied from doing so.  Furthermore, Leavitt, as a performer, was already exempted from the order's

vaccination requirements and therefore any additional restrictions would have been imposed on him by third parties—not the defendants.  [Dkt. 9-1 at 2].

### 3.  Lundin and Halpin

Both of these plaintiffs' claims that they lost their job because of the order.  However, both were subject to separate vaccination mandates, not those challenged in this litigation. Plaintiff Lundin alleges that she was terminated from her position at Massachusetts General Hospital after the Order was put in place.  [Compl. at ¶ 31].  However, Lundin was subject to the hospital's own internal vaccination mandate, which applied to all of Massachusetts General Hospital's employees.  See Together Employees v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 423 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022).  As such, her termination cannot be traced to the Order or Defendants' actions.  Plaintiff Halpin alleges that she was terminated by her employer, a Boston hotel, because she could not show proof of vaccination.  [Compl. at ¶ 36].  Hotels, however, were not covered entities under the order, so any vaccination mandate and resulting adverse consequences, cannot be traced to Defendants here, as they would have come from Halpin's employer, who is not a part of this litigation. See [Dkt. 9-1].

The injuries alleged by each plaintiff are too tenuous to be fairly traced to the Defendants' actions.  Therefore, the plaintiffs have failed to establish constitutional standing. The Court does not proceed to the analysis under 12(b)(6), because of its obligation to first address whether the plaintiff's met the requirements for standing.[2]  Donahue, 304 F.3d at 117. Here, the plaintiffs do not have standing.

---

[2] Even if plaintiffs were able to establish standing, the Court would likely dismiss their remaining claims.  Plaintiffs claim at Count II that the BPHC was unconstitutionally created because it was created by the City of Boston's Mayor is plainly false. [Compl. at ¶¶ 54-58].  The BPHC was created by statute. Mass. Gen. Laws ch. 111 § 2-3. Plaintiffs remaining claims which challenge the constitutionality of Defendants' actions would likely fail given that the Supreme Court has authorized states to create local bodies, like the BPHC, to take actions to protect the public's health and given deference in judicial review of those action.  Jacobson v. Massachusetts, 197 U.S. 11, 25 (1905) ("the state may invest local bodies … for purposes of local administration with authority in some appropriate way to

## IV.     CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss [Dkts. 17, 18] are

**GRANTED**, and this action is **DISMISSED**.

**SO ORDERED.**

Dated: January 11, 2023                              /s/ Angel Kelley
                                                     Hon. Angel Kelley
                                                     United States District Judge

---

safeguard the public health and the public safety."); see also S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (internal quotation marks and citations omitted) ("When those officials undertake to act in areas fraught with medical and scientific uncertainties their latitude must be especially broad . . . Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary which lacks the background, competence, and expertise to assess public health and is not accountable to the people"); Harris v. U. of Massachusetts, Lowell, 557 F. Supp. 3d 304, 313 (D. Mass. 2021), appeal dismissed, 43 F.4th 187 (1st Cir. 2022)(citing Roman Cath. Diocese v. Cuomo, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (Jacobson is "essentially…rational basis review").